Robert T. Bell
Reep, Bell, Laird & Jasper
PO Box 16960
2955 Stockyard Road
Missoula, MT 59808
Facsimile: 406-541-4101
Telephone: 406-541-4100
bell@westernmontanalaw.com
*Attorney for Defendant-Intervenor-Applicants*
*Safari Club International and*
*National Rifle Association of America*



**FILED**

NOV 16 2017

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CROW INDIAN TRIBE, *et al.*, | CV 17-00089-DLC-JCL |
| Plaintiffs, | |
| vs. | |
| UNITED STATES OF AMERICA, *et al.*, | BRIEF IN SUPPORT OF MOTION TO INTERVENE BY SAFARI CLUB INTERNATIONAL AND THE NATIONAL RIFLE ASSOCIATION OF AMERICA |
| Defendants, | |
| SAFARI CLUB INTERNATIONAL and NATIONAL RIFLE ASSOCIATION OF AMERICA, | |
| Defendant-Intervenor Applicants. | |

i

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................ivv

INDEX OF EXHIBITS .................................................................................................viiii

I.  INTRODUCTION.......................................................................................... 1

II.  PROCEDURAL HISTORY OF THE CASE ................................................. 2

III.  FACTUAL BACKGROUND........................................................................ 2

IV.  ARGUMENT ................................................................................................ 4

    A.    Safari Club/NRA Should Be Granted Intervention as of
          Right Under Federal Rule of Civil Procedure 24(a)............................. 4

          1.    The Motion to Intervene Is Timely ............................................ 6

          2.    Safari Club/NRA Have Significant Protectable Interests
               in the Subject Matter of this Litigation ...................................... 7

          3.    Safari Club/NRA Are so Situated that Disposition of this
               Proceeding May, as a Practical Matter, Impair or Impede
               Their Ability to Protect Their Interests ..................................... 12

          4.    The Existing Parties Do Not Adequately Represent the
               Interests of Safari Club/NRA .................................................. 13

               a.    Standards for Determining Adequacy of
                    Representation................................................................. 13

               b.    The Relevant Factors Demonstrate that Existing
                    Parties Do Not Represent Safari Club/NRA's
                    Interests ......................................................................... 14

    B.    Safari Club/NRA Also Satisfy Rule 24(b) Permissive Intervention
          Criteria ............................................................................................ 19

    C.    Amici Status.................................................................................... 21

IV.  CONCLUSION ............................................................................................ 22

CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION ..................... 24

CERTIFICATE OF SERVICE ................................. **Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Cases**

*Aland v. U.S. Dept. of the Interior et al.,*
  Case No. 17-6501 .................................................................. 15

*Alliance for the Wild Rockies v. Salazar,*
  672 F.3d 1170 (9th Cir. 2012) ............................................. 16

*Arakaki v. Cayetano,*
  324 F.3d 1078 (9th Cir. 2003) ............................................. 14

*Cal. ex rel. Lockyer v. United States,*
  450 F.3d 436 (9th Cir. 2006) ................................................. 5

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,*
  152 F.3d 1184 (9th Cir. 1998) .......................................... 5, 18

*Cary v. Hall,*
  2006 WL 6198349 (N.D. Cal. Sept. 30, 2006) ..................... 16

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
  647 F.3d 893 (9th Cir. 2011) .......................................... 14, 17

*County of Fresno v Andrus,*
  622 F.2d 436 (9th Cir. 1980) ................................................. 7

*Defenders of Wildlife v. Hall,*
  565 F. Supp. 2d 1160 (D. Mont. 2008) ................................. 16

*Defenders of Wildlife v. Secretary, U.S. Dep't of the Interior,*
  354 F. Supp. 2d 1156 (D. Or. 2005) ..................................... 16

*Forest Conservation Council v. U.S. Forest Serv.,*
  66 F.3d 1489 (9th Cir. 1995) ............................................... 18

*Gonzales v. Arizona,*
  485 F.3d 1041 (9th Cir. 2007) ............................................... 5

*Greater Yellowstone Coal., Inc. v. Servheen,*
  2008 WL 11348731 (D. Mont. Apr. 25, 2008) ...................... 16

*Greater Yellowstone Coal., Inc. v. Servheen,*
  672 F. Supp. 2d 1105 (D. Mont. 2009) .................................................. 21

*Humane Soc'y of the United States v. Jewell,*
  76 F. Supp. 3d 69 (D.D.C. 2014) ......................................................... 21

*In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.,*
  794 F. Supp. 2d 65 (D.D.C. 2011) ....................................................... 16

*Kootenai Tribe of Idaho v. Veneman,*
  313 F.3d 1094 (9th Cir. 2002) ............................................................. 20

*NAACP v. New York,*
  413 U.S. 345 (1973) .............................................................................. 6

*Prete v. Bradbury,*
  438 F.3d 949 (9th Cir. 2006) ............................................................... 13

*Scotts Valley Band of Pomo Indians v. United States,*
  921 F.2d 924 (9th Cir. 1990) ................................................................. 5

*Sw. Ctr. for Biological Diversity v. Berg,*
  268 F.3d 810 (9th Cir. 2001) ........................................................... 5, 12

*Trbovich v. United Mine Workers,*
  404 U.S. 528 (1972) ............................................................................ 13

*United States ex rel. McGough v. Covington Tech. Co.,*
  967 F.2d 1391 (9th Cir. 1992) ............................................................... 6

*United States v. City of Los Angeles,*
  288 F.3d 391 (9th Cir. 2002) ........................................................... 7, 8

*United States v. Oregon,*
  745 F.2d 550 (9th Cir. 1984) ................................................................. 6

**Federal Statutes**

16 U.S.C. § 1538(a)(1)(B) ........................................................................ 12

## Rules

Fed. R. Civ. P. 24(a) .................................................................................. 20

Fed. R. Civ. P. 24(a)(2) ................................................................................ 5

Fed. R. Civ. P. 24(b).................................................................................. 20

## Regulations

50 C.F.R. § 17.31(a) ................................................................................. 12

## Federal Register

82 Fed. Reg. 30502 (June 30, 2017)....................................... 2, 3, 4, 8, 12

## State Statutes

Idaho Code Ann. § 36-409(a)...................................................................... 8

Idaho Code Ann. § 36-409(b)...................................................................... 8

Mont. Code Ann. § 87-2-101 ...................................................................... 8

Mont. Code Ann. § 87-2-101(4)................................................................... 8

Mont. Code Ann. § 87-5-302(2)................................................................... 8

Wyo. Stat. Ann. § 23-1-101(a)(i) ............................................................... 8

Wyo. Stat. Ann. § 23-1-101(a)(xii) ............................................................ 8

Wyo. Stat. Ann. § 23-2-101(j)(xxviii-xxix) .............................................. 8

# INDEX OF EXHIBITS

John Atcheson Decl. ..........................................................................................Exh. 1

Thomas Lavelle Decl. .......................................................................................Exh. 2

Edwin Johnson Decl. ........................................................................................Exh. 3

William Hoese Decl. .........................................................................................Exh. 4

Anthony Hafla Decl. .........................................................................................Exh. 5

Rew Goodenow Decl. .......................................................................................Exh. 6

Chris Cox Decl. ................................................................................................Exh. 7

# I.    INTRODUCTION

Safari Club International and the National Rifle Association of America ("Safari Club/NRA") seek to participate as Defendant-Intervenors in this matter to defend the U.S. Fish and Wildlife Service's ("Service") decision to delist the Greater Yellowstone Ecosystem ("GYE") population of grizzly bears (Ursus arctos horribilis).  Safari Club/NRA move to participate as parties to represent their own interests and the interests of their members who seek to hunt grizzly bears in the GYE once authorized by the states and who will benefit by other wildlife management efforts that are possible now that the grizzlies are delisted in this area. Safari Club has participated defendant-intervenor in past litigation regarding the delisting of the GYE grizzlies and filed numerous comments with the Service regarding the delisting.

Safari Club/NRA should be granted intervention as of right because (1) this motion is timely and will not cause prejudice or delay to any of the parties; (2) Safari Club/NRA and their members have significant protectable interests in the subject matter of this litigation; (3) these interests would be harmed if Plaintiffs Crow Indian Tribe, *et al.* ("Crow Tribe") prevail in this legal challenge; and (4) Safari Club/NRA's interests cannot be adequately represented by Federal Defendants or State of Wyoming.  If this Court does not grant Safari Club/NRA intervention as of right, it should grant Safari Club/NRA permissive intervenor

1

status, because Safari Club/NRA's defenses and the main action have questions of law and fact in common. Finally, if this Court grants neither intervention as of right or permissive intervention, Safari Club/NRA should be granted leave to participate as amici curiae.

## II. PROCEDURAL HISTORY OF THE CASE

Crow Tribe filed their original complaint on June 30, 2017. ECF 1. Crow Tribe filed an amended complaint on September 8, 2017. ECF 22. While the parties have made filings related to the service of the complaint, pro hac vice admissions, and other procedural issues, the parties have not filed any substantive motions or established a briefing schedule on the merits. The Federal Defendants filed an answer to the amended complaint on October 3, 2017. ECF 23. The Court granted the State of Wyoming's motion to intervene as a defendant. ECF 28.

## III. FACTUAL BACKGROUND

After a multi-year, extremely complex rulemaking, the Service removed the GYE grizzly population from the list of threatened species. Removing the Greater Yellowstone Ecosystem Population of Grizzly Bears From the Federal List of Endangered and Threatened Wildlife, 82 Fed. Reg. 30502 (June 30, 2017) (effective July 31, 2017) ("Delisting Rule"). Based on the "best available

scientific and commercial data," the Service made two relevant determinations about the GYE population of grizzly bears:

- the GYE grizzly bears are "a valid distinct population segment" ("DPS"); and

- the "DPS has recovered and no longer meets the definition of an endangered or threatened species under the Endangered Species Act" ("ESA").

*Id.* at 30502. More specifically, "[t]he Service has determined that the GYE grizzly bear population has increased in size and more than tripled its occupied range since being listed as threatened under the Act in 1975 and that threats to the population are sufficiently minimized." *Id.* In addition, the Service explained that post-delisting management would ensure continued recovery—"[t]he participating States of Idaho, Montana, and Wyoming and Federal agencies have adopted the necessary post-delisting plans and regulations, which adequately ensure that the GYE population of grizzly bears remains recovered." *Id.*

The Service fully addressed the whitebark pine issue that led to the reversal of the previous 2007 delisting. *Id.* at 30537-41 (citing numerous recent studies). Regarding all food sources, the Service concluded:

> [i]n summary, the best scientific and commercial data available regarding grizzly bear responses to food losses suggest this issue is not a threat to the GYE grizzly bear population and is not an impediment to long-term population persistence. Therefore, we

3

conclude that changes in food resources do not constitute a threat to the GYE grizzly bear DPS now, nor are such changes anticipated to constitute a threat in the foreseeable future.

*Id.* at 30540.

The Service addressed the impact of the delisting, which is primarily to return to the states and tribes the primary responsibility to manage the species. "However, actions within the DPS would still be managed by State, Tribal, and Federal laws, regulations, policies, and management plans ensuring enforcement of the 2016 Conservation Strategy. Delisting the GYE grizzly bear DPS is expected to have positive effects in terms of management flexibility to the States and local governments." *Id.* at 30628. The states and tribal authorities have adopted regulatory mechanisms for the grizzly bears, including well-regulated hunting, to occur when authorized and within established mortality limits. *Id.* at 30531-33.

## IV.  ARGUMENT

### A.  Safari Club/NRA Should Be Granted Intervention as of Right Under Federal Rule of Civil Procedure 24(a)

Based on the adverse impact on their and their members' interests from an negative ruling, Safari Club/NRA are entitled to intervene as a matter of right under the Federal Rules of Civil Procedure.

> On timely motion, the court must permit anyone to intervene who:
> ...
> (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action

4

> may as a practical matter impair or impede the movant's ability to
> protect its interest, unless existing parties adequately represent that
> interest.

Fed. R. Civ. P. 24(a)(2); *see also Scotts Valley Band of Pomo Indians v. United States*, 921 F.2d 924, 926 (9th Cir. 1990). The four requirements for intervention as of right are: "(1) the intervention is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Gonzales v. Arizona*, 485 F.3d 1041, 1051 (9th Cir. 2007) (quotations omitted).

When considering a motion to intervene, the Court should "construe Rule 24(a) liberally in favor of potential intervenors." *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 440 (9th Cir. 2006). In evaluating a Rule 24(a) motion to intervene, "Courts are to take all well-pleaded, nonconclusory allegations" made in support of intervention as true. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). Safari Club/NRA meet all criteria of Rule 24(a)(2), and the Court should grant them status as defendant-intervenors as of right.[1]

---

[1] Safari Club/NRA rely on the interests of their members to establish their entitlement to intervene (or intervene permissively). *See Californians for Safe & Competitive Dump Truck Transp. v. Mendonca,* 152 F.3d 1184, 1189–90 (9th Cir. 1998) (union permitted to intervene in suit challenging state prevailing wage laws because union members had a significant interest in receiving those wages); *Sw.*

## 1.    *The Motion to Intervene Is Timely*

Considering the early stages of this case and lack of any substantive proceedings, Safari Club/NRA's motion is timely. The Ninth Circuit considers three criteria to determine whether a motion to intervene is timely: (1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of any delay. *United States ex rel. McGough v. Covington Tech. Co.,* 967 F.2d 1391, 1394 (9th Cir. 1992). Prejudice to the other parties is given the greatest weight in the court's review of the timeliness of a motion to intervene. *United States v. Oregon,* 745 F.2d 550, 552 (9th Cir. 1984). "Timeliness is to be determined from all the circumstances. And is to be determined by the court in the exercise of its sound discretion[.]" *NAACP v. New York,* 413 U.S. 345, 366 (1973).

This case was filed only a few months ago and is still in its early stages. The existing parties have not filed any substantive motions, and the Court has not made any rulings on the merits or even set a briefing schedule. If granted intervenor status, Safari Club/NRA will abide by any case management order for the filing of briefs. As a result, Safari Club/NRA's participation as an intervenor will not result in prejudice to any of the parties. As Safari Club/NRA have not unduly delayed

---

*Ctr. for Biological Diversity,* 268 F.3d at 821–22 (organizational intervenor had "legal protectable interests" because they "sufficiently allege[d] that their members have projects that" could be adversely affected by the litigation).

filing this motion, the Court need not consider the reason for or length of any delay.  In consideration of all the circumstances of this case, Safari Club/NRA's motion to intervene is timely.

### 2. *Safari Club/NRA Have Significant Protectable Interests in the Subject Matter of this Litigation*

Safari Club/NRA and their members have significant, protectable interests in the subject matter of this litigation:  the future hunting of grizzly bears as authorized by the states and enhanced management flexibility by the states in managing grizzly bears and other species.  "An applicant has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." *United States v. City of Los Angeles,* 288 F.3d 391, 398 (9th Cir. 2002) (internal quotation marks omitted).  This is "not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established." *Id.* "[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (quoting *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967).

Both Safari Club and the NRA have members with strong interests in preserving the GYE grizzly bears delisting.  With the delisting, primary management authority returns to the three states—Idaho, Montana, and

Wyoming—which will allow the hunting of grizzly bears when authorized.[2] The

delisting will also allow the three states to exercise increased management

authority over grizzly bears, which will benefit the hunting of other game species.[3]

Thus, the interests of Safari Club/NRA members related to hunting grizzly bears

and other species discussed below are protected under state law and related to the

plaintiffs' claims. *City of Los Angeles,* 288 F.3d at 398.

---

[2] Delisting Rule, 82 Fed. Reg. at 30530 (listing authorities for each state and discussing designation of grizzly bears as a game species in three states following delisting and option of each state to "institute a carefully regulated hunt with ecosystem-wide coordinated total mortality limits."); *see also* Idaho Code Ann. § 36-409(a), (b) (discussing resident and nonresident game tags "to hunt and kill a moose, bighorn sheep, mountain goat, elk, deer, antelope, mountain lion, black bear, grizzly bear, wolf, sandhill crane or turkey in accordance with the laws of this state and rules promulgated by the commission; ...."); Mont. Code Ann. § 87-2-101 ("Game animals" means deer, elk, moose, antelope, caribou, mountain sheep, mountain goat, mountain lion, bear, and wild buffalo.); Mont. Code Ann. § 87-5-302(2) ("the commission shall establish hunting season quotas for grizzly bears that will prevent the population of grizzly bears from decreasing below sustainable levels and with the intent to meet population objectives for elk, deer, and antelope."); Wyo. Stat. Ann. § 23-1-101(a)(xii) ("Trophy game animal" include grizzly bears); Wyo. Stat. Ann. § 23-2-101(j)(xxviii-xxix) (discussing license fees for grizzly bears).

[3] *See* Delisting Rule, 82 Fed. Reg. at 30628 ("Delisting the GYE grizzly bear DPS is expected to have positive effects in terms of management flexibility to the States and local governments."); Idaho Code Ann. § 36-409(a), (b) (discussing resident and nonresident game tags to hunt "moose, bighorn sheep, mountain goat, elk, deer, antelope, ...."); Mont. Code Ann. § 87-2-101(4) ("Game animals" includes deer, elk, moose, antelope, caribou, mountain sheep, mountain goat, ... and wild buffalo); Wyo. Stat. Ann. § 23-1-101(a)(i) ("'Big game animal' means antelope, bighorn sheep, deer, elk, moose or mountain goat").

Safari Club/NRA members would like to hunt the bears in all three states, when it becomes legal. For example, Montana resident and Safari Club member, John Atcheson, would plan to hunt for an entire season if given the opportunity. Atcheson Decl., ¶ 7, Exh. 1. Safari Club and NRA member, Thomas Lavelle, owns a business in Montana and would like to hunt grizzlies in the GYE. Lavelle Decl., ¶ 9, Exh. 2. Edwin Johnson, a hunting outfitter in Montana and Safari Club member, would hunt grizzlies himself and take clients on bear hunts. Johnson Decl. ¶ 8, Exh. 3. William Hoese, a member of Safari Club and resident of Wyoming, would make plans to hunt grizzly bears in Wyoming. Hoese Decl., ¶ 8, Exh. 4. Anthony Hafla, Safari Club and NRA member and Idaho resident, would apply for a tag and pursue a bear hunt in Idaho. Hafla Decl., ¶ 9, Exh. 5.

For many hunters, the GYE grizzly bear delisting provides other benefits beyond the possible opportunity to hunt the bears. Mr. Atcheson concludes that having a grizzly bear hunt would increase social tolerance for the bears. Atcheson Decl., ¶ 9. He also has an interest in hunting other species that would be better managed in balance with the grizzly bears, when the bears are managed by the states. *Id.*, ¶¶ 8, 10. Mr. Lavelle has a similar interest in hunting other species that need to be managed in balance with the bears. Lavelle Decl., ¶ 12. Grizzly bear hunting would benefit Mr. Johnson's business. Johnson Decl., ¶¶ 8, 10. Mr. Johnson also worries that the bears are too aggressive now, and believes a fear of

humans resulting from bear hunting would be beneficial for public safety. *Id.*, ¶ 9.

Mr. Hoese currently chooses not to hunt other species in areas with grizzly bears due to safety concerns. He believes the bears have no fear of humans because they have never been hunted. Hoese Decl., ¶ 9. Mr. Hafla believes that bear hunts would lessen the amount of human-bear conflict that currently occurs in the GYE. Hafla Decl., ¶ 10. If the bears become more fearful of humans, "fewer bears will be killed out of self-defense or from culling of bears that have been involved in altercations with humans." *Id.*

Safari Club/NRA also each have their own interests in the delisting and the improved state management and conservation of the species. "SCI is a nonprofit corporation incorporated in the State of Arizona, operating under § 501(c)(4) of the Internal Revenue Code, with principal offices and place of business in Tucson, Arizona," and has a "membership [of] approximately 50,000 individuals from the United States and many of the countries around the world," including in Idaho, Montana, and Wyoming. Goodenow Decl., ¶¶ 3-4, Exh. 6. SCI's mission "is to protect the freedom to hunt and promote wildlife conservation worldwide." *Id.* ¶ 5. "SCI's purposes include:

- To advocate, preserve and protect the rights of all hunters.
- To promote safe, legal and ethical hunting and related activities.
- To engage in advocacy within the limits imposed by law and regulation, to monitor, support, educate or otherwise take positions on local, national and international legislative, executive, judicial or organizational endeavors that foster and support these purposes and objectives."

*Id.*

The NRA "is an Internal Revenue Code Section 501(c)(4) nonprofit membership organization, incorporated in the state of New York in 1871, with its principal place of business in Fairfax Virginia." Cox Decl., ¶ 4, Exh. 7. Today the NRA "has approximately 5,000,000 individual members, many of whom reside [and hunt] in and around the Greater Yellowstone Ecosystem in Idaho, Montana, and Wyoming." *Id.* ¶¶ 5, 12. The NRA's bylaws direct it "'to promote hunter safety, and to promote and defend hunting as a shooting sport and as a viable and necessary method of fostering the propagation, growth and conservation of our renewable wildlife resources.'" *Id.* ¶ 6. The NRA has many employees dedicated to carrying out that objective. *Id.* ¶¶ 8-10.

Safari Club/NRA seek to intervene in this litigation to protect the interests of their many members who desire to hunt grizzly bears in the GYE once authorized by the states. Those members also hunt other game species in the area. Having the states manage the grizzly bears will allow the states to better manage predators and prey in balance with each other. This will lead to improved conditions for the hunting of other species. Safari Club/NRA satisfy the interest requirement.

### 3. *Safari Club/NRA Are so Situated that Disposition of this Proceeding May, as a Practical Matter, Impair or Impede Their Ability to Protect Their Interests*

Success by Crow Tribe in this case will lead to the relisting of the GYE grizzly bears, which would, as a practical matter, impair or impede the interests of Safari Club/NRA and their members. The Ninth Circuit "follow[s] the guidance of Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (*quoting* Fed. R. Civ. P. 24 advisory committee's notes). Reversing the delisting would return the GYE grizzlies to the threatened species status and prevent the states from authorizing a bear hunt and taking other management actions in relation to grizzlies that benefit the hunting of other game species. *See, e.g.,* 16 U.S.C. § 1538(a)(1)(B) (prohibitions on "take" (e.g., kill or harm) of endangered species); 50 C.F.R. § 17.31(a) (with limited exceptions, applying § 1538 take prohibitions to threatened species).

As described above and in detail in their declarations, Safari Club/NRA members are so situated that the disposition of this case in plaintiffs' favor would impair their concrete interests in hunting grizzlies and other species. It will also impair Safari Club/NRA's interests in proper wildlife management and conservation of wildlife. *See* Delisting Rule, 82 Fed. Reg. at 30628 ("Delisting the

GYE grizzly bear DPS is expected to have positive effects in terms of management flexibility to the States and local governments."); Goodenow Decl., ¶¶ 5-7; Cox Decl., ¶¶ 6, 8-10.

### 4. The Existing Parties Do Not Adequately Represent the Interests of Safari Club/NRA

#### a. Standards for Determining Adequacy of Representation

Based on the standards for inadequate representation, Safari Club/NRA's interests cannot be adequately represented by the existing parties in this litigation. Ordinarily, a party's burden to show the inadequacies of the representation provided by existing parties is minimal. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (An applicant need only show "that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."). Three factors help determine whether an existing party will adequately represent an applicant's interests: (1) "whether [a present party] will undoubtedly make all of the intervenor's arguments"; (2) "whether [a present party] is capable of and willing to make such arguments"; and (3) "whether the intervenor offers a necessary element to the proceedings that would be neglected." *Prete v. Bradbury*, 438 F.3d 949, 956 (9th Cir. 2006) (quoting *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983).

The courts have explained that "[t]he 'most important factor' in assessing the adequacy of representation is 'how the interest compares with the interests of

existing parties.'" *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (citation omitted). "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises.... If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003), *as amended* (May 13, 2003). In addition, an assumption of adequacy also arises when the existing party with the shared interest is the government who is acting on behalf of a constituency that it represents. *Id.* "In the absence of a 'very compelling showing to the contrary,' it will be presumed that a state adequately represents its citizens when the applicant shares the same interest." *Id.*

> b. *The Relevant Factors Demonstrate that Existing Parties Do Not Represent Safari Club/NRA's Interests*

Safari Club/NRA's interests cannot be represented by the other parties in this case because Safari Club/NRA bring to this litigation a unique perspective— that of the hunters whose interests in hunting grizzly bears and other game would be directly affected by reversal of the delisting. The Federal Defendants and State of Wyoming are governmental entities who regulate the activities of the public. They do not have plans to hunt grizzly bears and other species in the GYE. In short, they are the regulators, while Safari Club/NRA and their members are a discrete part of the regulated public. The Service did not delist the GYE grizzlies

14

to benefit the interests of the hunting public—one of its constituents. Instead, they based their delisting decision on the available scientific information, regardless of the effect of the delisting on the hunting community. As explained further below, Safari Club/NRA do not have comparable or identical interests with the existing parties; the Federal Defendants were not acting on behalf of a constituency—the hunting community—that they represent; the presumptions do not apply; and, to the extent the presumptions apply, Safari Club/NRA overcome them.

For similar reasons, the existing defendants will not "undoubtedly make all of [Safari Club/NRA's] arguments" and is not "is capable of and willing to make such arguments." This case is extremely complicated. So far, different plaintiffs have brought six lawsuits challenging the delisting.[4] In the five lawsuits currently before this Court, the plaintiffs have asserted 28 claims. While the lawsuits share some similar claims, they also contain claims not shared by all the other plaintiffs. Assuming the Court consolidates the cases, the Federal Defendants and State of Wyoming will have to address all these claims in a single proceeding. While the Court and parties cannot know the exact contours of the litigation now, it is highly unlikely that the Federal Defendants and State of Wyoming will be able to make

_____

[4] Five lawsuits are currently pending in this Court, while an individual brought a sixth lawsuit in the District Court for the Northern District of Illinois. *Aland v. U.S. Dept. of the Interior et al.,* Case No. 17-6501. The Federal Defendants have moved to transfer that case to this Court. ECF 11-12 (filed Oct. 4, 2017). The Court has scheduled a status hearing on that motion for January 10, 2018. ECF 14 (filed Oct. 16, 2017).

all of the arguments that Safari Club/NRA will want to make, especially those arguments focused on hunting issues.[5]

Safari Club/NRA bring "a necessary element to the proceedings that would be neglected" because the existing parties do not represent a pro-hunting perspective. As explained above, the Federal Defendants and State of Wyoming are the regulators, not parties who would partake in the hunting of grizzly bears and other game. None of the plaintiffs support the hunting of grizzly bears. In fact, most are strongly anti-hunting. Safari Club/NRA are the direct foils of these plaintiffs.

---

[5] The courts have allowed Safari Club/NRA to be defendant intervenors in other ESA delisting and listing cases, including many times in this Circuit. In the following cases, Safari Club/NRA have argued issues not addressed or not fully addressed by the Federal Defendants and other defendants (usually the affected state(s)). *Greater Yellowstone Coal., Inc. v. Servheen*, 2008 WL 11348731 (D. Mont. Apr. 25, 2008) (Court granting Safari Club's motion to intervene in previous grizzly bear delisting litigation); *Defenders of Wildlife v. Hall*, 565 F. Supp. 2d 1160 (D. Mont. 2008) (Safari Club and NRA participated as defendant-intervenors in case challenging the Service's delisting of a wolf population); *Alliance for the Wild Rockies v. Salazar*, 672 F.3d 1170 (9th Cir. 2012) (Safari Club and NRA participated as defendant-intervenors in case challenging constitutionality of Act passed by Congress directing delisting of a wolf population); *Defenders of Wildlife v. Secretary, U.S. Dep't of the Interior*, 354 F. Supp. 2d 1156, n.1 (D. Or. 2005) (Safari Club participated as defendant-intervenor in case challenging downlisting of gray wolves from endangered to threatened); *Cary v. Hall*, 2006 WL 6198349 (N.D. Cal. Sept. 30, 2006) (Court granting Safari Club's motion to intervene in litigation challenging rule related to endangered listing of three antelope species); *In re Polar Bear Endangered Species Act Listing & 4(d) Rule Litig.*, 794 F. Supp. 2d 65, 78 n.20 (D.D.C. 2011) (noting that Safari Club was a Defendant–Intervenor; Safari Club was also a plaintiff), *aff'd sub nom. In re Polar Bear Endangered Species Act Listing & Section 4(d) Rule Litig.*, 709 F.3d 1 (D.C. Cir. 2013).

While Safari Club/NRA can take steps to avoid duplicating the arguments of the other defendants, if they are not made parties to this case, nothing ensures that the arguments they would make, especially those involving hunting, will be before the Court. All these factors support Safari Club/NRA's intervention in this case.

The primary intervention factors favor intervention here, but the Court must further consider whether any presumption applies by considering whether (1) Safari Club/NRA have the same "ultimate objectives" as the Federal Defendant, (2) Safari Club/NRA have a shared interest with the Federal Defendants, and (3) Federal Defendants are acting on behalf of a constituency that they represent (here, Safari Club/NRA). *See Citizens for Balanced Use*, 647 F.3d at 898. As explained above, Safari Club/NRA's "ultimate objective" is to preserve the delisting so that the three states can (1) authorize grizzly bear hunts when appropriate, and (2) take other management actions that benefit other game species who Safari Club/NRA members hunt. The Federal Defendants' interests and "ultimate objective" are broader and less focused. They seek to preserve a duly made administrative decision, which they believe the law and facts (e.g., scientific information) compel them to make.

In addition, the Federal Defendants have an obligation to represent a broad constituency (all citizens) of which Safari Club/NRA members represent a limited group with special interests. The Federal Defendants cannot adequately represent

17

Safari Club/NRA's interests while they represent the panoply of interests of its full constituency. "'Inadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public.'" *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) *abrogated on other grounds by Wilderness Soc. v. U.S. Forest Serv.,* 630 F.3d 1173 (9th Cir. 2011) (citations omitted) (timber industry intervenors had interests in the outcome of the litigation that were more extensive and yet more parochial than the interests of the general public that the Forest Service defendants represented ); *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca,* 152 F.3d 1184, 1190 (9th Cir. 1998) (Ninth Circuit upheld intervention for International Brotherhood of Teamsters, finding that the interests of the Teamsters' members were more narrow and parochial than those of the public at large).

For these reasons, the presumptions either do not apply at all, or are rebutted by the compelling need for Safari Club/NRA to represent the focused interests of those who seek to hunt grizzly bears (when allowed by the states) and who support increased management by the states over grizzly bears for the benefit of other game species.

Although Federal Defendants intend to defend the delisting, they have an obligation in doing so to represent both those who wish to hunt and those who

oppose hunting (and everyone else). In contrast, Safari Club/NRA must focus on

promoting and protecting its members' opportunities to hunt grizzlies and other

game in the GYE. Federal Defendants (and Wyoming), despite their shared

interest in the outcome of this case, cannot and will not defend the delisting with

the same focus and interest in hunting as Safari Club/NRA will apply.

## B. Safari Club/NRA Also Satisfy Rule 24(b) Permissive Intervention Criteria

In the alternative, Safari Club/NRA request permissive intervention under

Rule 24(b):

> (1) In General. On timely motion, the court may permit anyone to intervene who:
>> …
>> (B) has a claim or defense that shares with the main action a common question of law or fact.
>> …
> (3) Delay or Prejudice. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24(b).[6] Here, permissive intervention is appropriate even if the

Court denies the motion to intervene as of right. As discussed *supra* at Argument

sections IV.A.1 and IV.A.2, this motion is timely and Safari Club/NRA have

significant protectable interests in the subject matter of this action. Safari

---

[6] Permissive intervention is not a substitute for intervention as of right. If the party qualifies for Rule 24(a) intervention, the Court must grant that status. Fed. R. Civ. P. 24(a).

Club/NRA's intervention will not unfairly prejudice the parties (e.g., Safari Club/NRA will abide by all briefing schedules), and the severity of potential impacts upon Safari Club/NRA weighs strongly in favor of allowing their participation as a party.

Safari Club/NRA's defenses of Federal Defendants' actions have multiple questions of law and fact in common with the main action. Intervenors in the Ninth Circuit satisfy the commonality standard by "assert[ing] defenses of the [challenged agency action] directly responsive to the claims of injunction asserted by plaintiffs." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc.*, 630 F.3d 1173. As occurred when Safari Club defended the 2007 delisting, Safari Club/NRA intend to defend the legality of the delisting and assumption of primary management authority over the GYE grizzly bears by the three states. For example, in the litigation over the 2007 delisting, Safari Club defended against claims that the Service had not adequately considered the impact of the delisting on genetic diversity, among other arguments. *See Greater Yellowstone Coal., Inc. v. Servheen*, 672 F. Supp. 2d 1105, 1120-22 (D. Mont. 2009) (rejecting claim that delisting failed to address genetic issues), *order clarified*, No. CV 07-134-M-

DWM, 2009 WL 10677467 (D. Mont. Nov. 17, 2009), and *aff'd in part, rev'd in part on other grounds and remanded,* 665 F.3d 1015 (9th Cir. 2011).[7]

Accordingly, the Court should grant permissive intervention if it denies intervention of right.

## C.    Amici Status

If, for any reason, this Court chooses not to grant Safari Club/NRA intervenor status, Safari Club/NRA request that they be granted amici curiae status, with the ability to submit amici arguments at each stage of the litigation.

---

[7] In litigation over the delisting of the Western Great Lakes wolves, Safari Club/NRA intervened to defend the delisting. One of the main claims in that case involved the argument that the Service improperly created a distinct population segment ("DPS") and then immediately delisted the DPS. *Humane Soc'y of the United States v. Jewell,* 76 F. Supp. 3d 69, 110 (D.D.C. 2014), *aff'd sub nom. Humane Soc'y of United States v. Zinke,* 865 F.3d 585 (D.C. Cir. 2017). As in the wolf case, the creation of a DPS for delisting purposes is one of the main issues raised by the plaintiffs in the five cases (in fact, the plaintiffs here rely on the courts' rulings in the wolf case). If granted intervention, Safari Club/NRA will again present arguments to rebut these arguments.

## IV.  CONCLUSION

Safari Club/NRA meet all criteria for intervention as of right, and the Court should grant intervention as of right.  Safari Club/NRA also have demonstrated grounds for permissive intervention, and the Court should grant permissive intervention if it does not grant intervention as of right.  As a final alternative, this Court should grant Safari Club/NRA amici status.

DATED this ⎦6_th day of November, 2017.

Respectfully submitted,

_____
Robert T. Bell
Reep, Bell, Laird & Jasper
PO Box 16960
2955 Stockyard Road
Missoula, MT  59808
Facsimile: 406-541-4101
Telephone:  406-541-4100
bell@westernmontanalaw.com
*Attorney for Defendant-Intervenor-*
*Applicants Safari Club International*
*and National Rifle Association of America*

Douglas S. Burdin (D.C. Bar. No. 434107)*
Jeremy E. Clare (D.C. Bar No. 1015688)
501 Second Street NE
Washington, D.C.  20002
Facsimile: 202-543-1505
Telephone: 202-543-8733
Email:  dburdin@safariclub.org
            jclare@safariclub.org
*Attorneys for Defendant-Intervenor-*
*Applicant Safari Club International*

22

Michael T. Jean (MI Bar No. P76010)*
11250 Waples Mill Road
Fairfax, VA 22030
Facsimile: 703-267-1164
Telephone: 703-267-1158
Email: mjean@nrahq.org
*Attorney for Defendant-Intervenor-Applicant National Rifle Association of America*

* Pro Hac Vice to be submitted concurrently.

## CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION

The undersigned certifies that this brief contains 5,282 words, which is less than the 6,500-word limit. D. Mont. L.R. 7.1(d)(2)(A) (March 1, 2016). This word count excludes the caption, certificates of service and compliance, table of contents and authorities, and exhibit index. In making this word count, the undersigned attorney relied on the word count function of the word-processing system used to prepare the brief.

DATED this \_\_\_th day of November, 2017.

Respectfully submitted,

Robert T. Bell
Reep, Bell, Laird & Jasper
PO Box 16960
2955 Stockyard Road
Missoula, MT 59808
Facsimile:
Telephone: 406-541-4100
*Attorney for Defendant-Intervenor-*
*Applicants Safari Club International*
*and National Rifle Association of America*

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 16, 2017, the foregoing

document was served by email or first-class mail, postage prepaid, as agreed by

counsel, on the following attorneys:

Coby Howell
Office of the U.S. Attorney
1000 SW Third Ave
Suite 600
Portland, OR 97204-2024

Michael Richard Eitel
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife & Marine Resources Section
999 18th Street
South Terrace Suite 370
Denver, CO 80202

Adrian Ann Miller
SULLIVAN MILLER LAW PLLC
3860 Avenue B, Suite C East
Billings, MT 59102

Erik E. Petersen
Senior Assistant Attorney General
Wyoming Attorney General's Office
Water & Natural Resources Division
2320 Capitol Avenue
Cheyenne, WY 82002

Jeffrey S. Rasmussen
Katie D. Frayler
Michael W. Holditch
Peter J. Breuer
FREDERICKS PEEBLES & MORGAN LLP
1900 Plaza Drive
Louisville, CO 80027

_____

Robert T. Bell