COBY HOWELL, Senior Trial Attorney
MICHAEL R. EITEL, Senior Trial Attorney
DEVON L. FLANAGAN, Trial Attorney
U.S. Department of Justice
c/o U.S. Attorney's Office
1000 SW Third Avenue
Portland, Oregon 97204-2902
Tel: (503) 727-1023 | Fax: (503) 727-1117
Email: Coby.Howell@usdoj.gov
[Additional counsel listed on signature page]
**_Attorneys for Federal Defendants_**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| CROW INDIAN TRIBE, CROW CREEK SIOUX TRIBE, STANDING ROCK SIOUX TRIBE, PIIKANI NATION, THE CRAZY DOG SOCIETY, HOPI NATION BEAR CLAN, NORTHERN ARAPAHO ELDERS SOCIETY, DAVID BEARSHIELD, KENNY BOWEKATY, LLEVANDO FISHER, ELISE GROUND, ARVOL LOOKING HORSE, TRAVIS PLAITED HAIR, JIMMY ST. GODDARD, PETE STANDING ALONE, and NOLAN YELLOW KIDNEY, et. al., <br><br> Plaintiffs <br><br> v. <br><br> UNITED STATES OF AMERICA, RYAN ZINKE, Secretary, U.S. Department of the Interior, UNITED STATES DEPARTMENT OF THE | Case No. 9:17-cv-00089-DLC-JCL <br><br> **FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO STAY** |

INTERIOR, JIM KURTH, Acting
Director, U.S. Fish and Wildlife Service,
UNITED STATES FISH AND
WILDLIFE SERVICE, and HILARY
COOLEY, Grizzly Bear Recovery
Coordinator,

                    Federal Defendants.

## I.    INTRODUCTION

Fifty years ago, researchers estimated that grizzly bears were
reduced to less than two percent of their former range, with potentially
as few as 136 grizzlies populating the Greater Yellowstone Ecosystem.
The threats facing this species demanded action and the U.S. Fish and
Wildlife Service ("FWS") intervened.  In 1975, FWS listed the grizzly
bears in the lower 48 states as threatened, identified six recovery
ecosystems, and embarked on a strategy to recover these populations.
With the sustained involvement of many different stakeholders, grizzly
bears in the Greater Yellowstone Ecosystem did indeed recover.  Today
an estimated 718 grizzly bears inhabit some of the most secure habitat
in the country, and States, Tribes, and Federal agencies have laws,
regulations, and comprehensive management protections in place to
ensure that this population remains recovered into the foreseeable
future.

In recognition of these factors, FWS issued the 2017 Final Rule challenged in this case. *See* Final Rule, 82 Fed. Reg. 30,502 (June 30, 2017) ("Final Rule"). In that rule, the FWS designated grizzly bears in the Greater Yellowstone Ecosystem as a distinct population segment. FWS also determined, based on the best scientific data available, that the population is biologically recovered and threats to the population are sufficiently minimized such that this population no longer meets the definition of an "endangered species" or a "threatened species" under the Endangered Species Act ("ESA"). FWS therefore removed this population from the ESA list of threatened and endangered species.

Shortly after the Final Rule was published, the D.C. Circuit Court of Appeals issued a decision in *Humane Society v. Zinke*, 865 F.3d 585 (D.C. Cir. 2017). That opinion addressed similar circumstances to those presented here. While the Circuit agreed that FWS could identify and delist a distinct population segment, it reversed the agency for failing to explain certain aspects of its decision. In light of this opinion, FWS proactively initiated a regulatory review of the 2017 Final Rule at issue in these cases. On December 7, 2017, FWS issued a Federal Register Notice ("Notice") soliciting public comment on the possible effects of the

D.C. Circuit's opinion on the 2017 Final Rule. *See* Regulatory Review, Request for Comments, 82 Fed. Reg. 57,699 (Dec. 7, 2017). The Notice states that FWS will address the public comments and notify the public of its conclusions by March 31, 2018.[1]

This Notice and FWS' on-going administrative process warrants a stay in the five cases.[2] A stay of proceedings in this case would allow FWS to complete this administrative process, the outcome of which may affect some or all of the claims at issue in these five pending cases. A limited stay would preserve judicial economy and allow FWS staff to focus on evaluating the D.C. Circuit opinion and the public comments to facilitate a thorough and timely decision-making process. Given the early stage of proceedings in this case, a limited stay also will cause

---

[1] It is likely that the public will request an extension of time to provide public comments during this administrative process. If FWS grants that request, the completion of this regulatory review may be briefly delayed to account for that extension. In that event, and should the Court grant the request for a stay, Federal Defendants would promptly inform the Court as to a new completion date.

[2] Federal Defendants seek a stay in *Humane Society v. U.S. Fish and Wildlife Services*, CV 17-117-M-DLC; *N. Cheyenne Tribe v. Zinke*, CV 17-119-M-DLC; *Alliance for the Wild Rockies v. Zinke*, CV 17-123-M-DLC; *WildEarth Guardians v. Zinke*, CV 17-118-M-DLC. Federal Defendants will also be moving to stay proceedings in *Aland v. U.S. Department of Interior*, No. 1:17-cv-6501 (N.D. Ill.).

minimal disruption to the efficient and expeditious resolution of this case. Additionally, staying this litigation would not harm the grizzly bear population in the Greater Yellowstone Ecosystem or otherwise prejudice Plaintiffs as the population is robust and not at any risk during the duration of the stay. *See* Declaration of Dr. Hilary Cooley ("Cooley Decl."). Thus, as further explained below, the Court should stay the case and allow FWS to—in the first instance and with the aid of public comment—address the import and effects of a D.C. Circuit's opinion on the 2017 Final Rule.

Federal Defendants have conferred with the parties regarding this motion. Plaintiffs oppose the stay. Defendant-Intervenors, the State of Idaho and Safari Club International/National Rifle Association, do not oppose. The State of Wyoming takes no position on the motion until it has a chance to review the pleading.

## II.   BACKGROUND

### A.   <u>Statutory and Regulatory Background</u>

#### 1.   Endangered Species Act

Congress has identified several purposes for the ESA, including (1) "to provide a means whereby the ecosystems upon which endangered

species and threatened species depend may be conserved," and (2) "to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). The terms "conserve," "conserving," and "conservation" are defined as "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the ESA] are no longer necessary." 16 U.S.C. § 1532(3); 50 C.F.R. § 424.02. A "species" includes any subspecies of fish, wildlife, or plants, and any distinct population segment of any species of vertebrate fish or wildlife that interbreeds when mature. 16 U.S.C. § 1532(16). A species, subspecies, or distinct population segment is endangered if it is "in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6), (16). A threatened species is a species that is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20); 50 C.F.R. § 424.02.

The Secretary is charged with determining whether a species, subspecies, or distinct population segment should be listed as threatened or endangered based upon five statutorily prescribed factors.

*See* 16 U.S.C. § 1533(a)(1).  These factors are used to determine whether

threats to the species have been diminished or removed to the point

that delisting is appropriate.  Decisions about whether a species is

endangered or threatened must be made "solely on the basis of the best

scientific and commercial data available," and without reference to the

possible economic or other impacts of such a determination. 16 U.S.C. §

1533(b)(1)(A); 50 C.F.R. § 424.11(b).

### B.    Factual Background

In 2007, FWS identified the Greater Yellowstone Ecosystem

population of grizzlies as a distinct population segment, found that the

population segment was neither threatened nor endangered, and

accordingly removed it from the ESA list.  72 Fed. Reg. 14,866 (Mar. 29,

2007).  Three lawsuits were filed challenging the 2007 Final Rule and

this Court issued an unfavorable opinion.  *Greater Yellowstone Coal. v.*

*Servheen*, 672 F. Supp. 2d 1105 (D. Mont. 2009).  While this Court

found that FWS had properly considered genetic concerns and

reasonably interpreted the ambiguous statutory language "significant

portion of its range," it also found that FWS had improperly considered

the Conservation Strategy developed by state, tribal, and federal

agencies and had not adequately evaluated whitebark pine as a declining food source. *Id.* at 1126. The Court vacated and remanded the Final Rule back to FWS for further consideration on those two issues. *Id.* The United States appealed and the Ninth Circuit reversed in part and affirmed in part. *Greater Yellowstone Coal. v. Servheen*, 665 F.3d 1015 (9th Cir. 2011). The Ninth Circuit reversed by finding that FWS's consideration of "inadequate regulatory mechanisms"—in particular components of the Conservation Strategy—was reasonable, *id.* at 1031, but it affirmed on the issue of whitebark pine and this Court's remand of the Final Rule. *Id.* at 1030, 1032.

In accordance with this Court's remand order, as modified by the Ninth Circuit, a number of biologists began examining the effect of whitebark pine as a declining food source, among other factors affecting the population. *See, e.g.*, 82 Fed. Reg. at 30,536-40. This examination culminated in a proposed rule in 2016. 82 Fed. Reg. at 30,505. FWS, in conjunction with its partners, also continued work on an updated strategy to guide state and tribal grizzly management after delisting (the "2016 Conservation Strategy"), which led to execution of a three-state memorandum of agreement, among other measures. *Id.*

On June 30, 2017, FWS published its Final Rule completing this Court's remand. 82 Fed. Reg. 30,502. Based on the best available science and data, FWS found that the Greater Yellowstone Ecosystem population of grizzlies was a distinct population segment. *Id.* FWS then evaluated the conservation status of the population segment and found that it was not in danger of extinction throughout all or a significant portion of its range, nor likely to become so in the foreseeable future, and therefore was not endangered or threatened under the ESA. 82 Fed. Reg. at 30,625.

On July 31, 2017, the Final Rule became effective. This transferred some management responsibility of this population back to the States of Wyoming, Montana, and Idaho, as well as the Northern Arapaho and Eastern Shoshone Tribes. 82 Fed. Reg. at 30,628. The states have committed to managing this population in accordance with the 2016 Conservation Strategy. 82 Fed. Reg. at 30,525. And the bears that are located within the Wind River Reservation will be managed in accordance with the Northern Arapaho and Eastern Shoshone Management Plan (2009) developed by those tribes. *Id.*

After the Final Rule was published, the D.C. Circuit Court of Appeals issued a decision in *Humane Society v. Zinke*, 865 F.3d 585 (D.C. Cir. 2017). In that August 2017 opinion, the D.C. Circuit affirmed the district court's vacatur of a 2011 final rule determining that the gray wolf population in the Western Great Lakes region of the United States was a distinct population segment under the ESA and removing that distinct population segment from the List of Endangered and Threatened Wildlife. *Id.* at 614-15. The *Humane Society* decision identified two flaws with the Final Rule delisting the Western Great Lakes wolf population: (1) FWS did not evaluate the legal status of the remainder of the listed entity of wolves in light of the Western Great Lakes wolf delisting action; and (2) FWS failed to analyze the effect of lost historical range on the status of the Western Great Lakes wolf population and the remainder of the listed entity of wolves. *Id.* at 602-03, 606-07.[3]

---

[3] In *Humane Society*, the D.C. Circuit rejected several other challenges to the Western Great Lakes wolf delisting rule. Notably, it upheld FWS's interpretation of the term "range" and FWS's construction of the ESA as permitting the designation and subsequent delisting of a distinct population segment within a listed species. *Id.* at 597-600, 605.

On December 8, 2017, the Notice was published in the Federal Register, seeking public comments on the potential impact of the *Humane Society* case on the Final Rule challenged in this litigation. In the Notice, FWS recognizes that the *Humane Society* opinion could affect the Yellowstone grizzly bear Final Rule, "which also designated a portion of an already-listed entity as a [distinct population segment] and then revised the listed entity by removing the [distinct population segment] due to recovery." 82 Fed. Reg. at 57,698. Accordingly, FWS is evaluating the *Humane Society* opinion in the context of the Yellowstone grizzly bear Final Rule to consider what impact, if any, the D.C. Circuit ruling has on the Final Rule and "what further evaluation should be considered regarding the issues raised in *Humane Society*." *Id.* at 57,699.

The Notice invites public comment for a 30-day period regarding the manner in which the *Humane Society* decision affects the Final Rule, with a particular emphasis on the two grounds for vacatur identified by the D.C. Circuit: the effect of the delisting on the remnant population; and the importance of lost historical range in evaluating the distinct population segment's status. *Id.* FWS expects to receive public

comments from a wide variety of interested entities, including states, tribes, environmental organizations, government agencies, and interested members of the public. *See* Cooley Decl. ¶ 6. The Notice states that FWS will address the public comments and notify the public of its conclusions by March 31, 2018. 82 Fed. Reg. at 57,699.

## C.    **Procedural Background**

Five lawsuits have been filed in the District of Montana challenging the 2017 Final Rule and have been consolidated for procedural purposes with the above-captioned lead case. *See* Order Consolidating Cases, ECF No. 40. Additionally, a sixth complaint challenging the Final Rule was filed by a pro se plaintiff in the United States District Court for the Northern District of Illinois. *See Aland v. U.S. Dep't of the Interior*, No. 1:17-cv-6501 (N.D. Ill.). Federal Defendants have moved to transfer that case to this Court.

On November 29, 2017, the parties in the District of Montana cases submitted joint case management plans regarding the schedule in this case. The joint case management plans noted that FWS may publish a *Federal Register* notice that could affect the Final Rule and that Federal Defendants would likely move for a stay of proceedings

during the pendency of the administrative process related to that notice.

The Court issued a scheduling order, ECF No. 40, requiring Federal Defendants to file any motion to stay related to the Notice within 14 days of the Notice's publication. The Court also provided: (1) Federal Defendants shall produce the administrative record to Plaintiffs by January 5, 2018; (2) Plaintiffs shall notify Federal Defendants whether Plaintiffs believe the administrative record is complete or requires supplementation and whether Plaintiffs intend to seek discovery by March 5, 2018; (3) the Parties shall file a status report by March 23, 2018, notifying the Court whether administrative record disputes have been resolved; and (4) if the parties cannot resolve any record issues, Plaintiffs would file a motion by April 13, 2018. *Id.* at 4-5. Once the administrative record is finalized, the Court has indicated that it will convene a status conference to discuss future proceedings. *Id.* at 5.

## III. STANDARD OF REVIEW

The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681,

706-07 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). It may enter a stay "pending resolution of independent proceedings which bear upon the case . . . . whether the separate proceedings are judicial, administrative, or arbitral in character," and granting the stay "does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (citations omitted). Likewise, the Court has equitable discretion to set a reasonable schedule for the agencies' administrative process as a condition of the stay. *S. Yuba River Citizens League v. Nat'l Marine Fisheries Serv.*, No. 2:13-cv-42-MCE, 2013 WL 4094777, at *9-10 (E.D. Cal. Aug. 13, 2013). When considering whether to grant a stay of the proceedings, the Court weighs the following competing interests: "(1) judicial economy; (2) the moving party's hardship; and (3) potential prejudice to the non-moving party." *Single Chip Sys. Corp. v. Intermec IP Corp.* 495 F. Supp. 2d 1052, 1057 (S.D. Cal. 2007) (citation omitted); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (court weighs "possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the

orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law") (citation omitted).

## IV.  ARGUMENT

### A. Staying the Proceedings Would Promote Judicial Economy.

FWS intends to voluntarily consider and address issues material to the claims in this litigation.  By receiving and reviewing public comments and publishing the agency's conclusions, FWS may reduce or clarify the issues to be decided in these cases.  Thus, a limited stay would preserve the parties' and the Court's resources.

When determining if a stay is warranted, courts must consider the "orderly course of justice," which is measured in terms of "the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).  It is well-recognized that "[i]t would waste judicial resources and be burdensome upon the parties if the district court in a case . . . were mandated to . . . take evidence and determine the merits of a case at the same time as [a separate administrative proceeding] is going through a substantially parallel process." *Leyva*, 593 F.2d at 864.

All five sets of plaintiffs have raised claims that overlap with the two issues identified for agency consideration in the Notice. The Notice solicits public comments on whether the *Humane Society* decision affects the Yellowstone grizzly final rule and whether further evaluation is needed "regarding the remaining grizzly bear populations and lost historical range." 82 Fed. Reg. at 57,699. Both of these specific issues, which formed the basis for *Humane Society*'s vacatur of the Western Great Lakes wolf rule, are raised in the present litigation. First, all five complaints assert that FWS failed to consider the effects of designating and delisting the Yellowstone distinct population segment on the remaining grizzly bear population. *See* Crow Am. Complaint (ECF No. 22) ¶¶ 158-59, 167-74; Humane Society Complaint ¶¶ 93-94; WEG Complaint ¶¶ 85-88; N. Cheyenne Complaint ¶¶ 79-81; AWR Complaint ¶ 2. Additionally, at least two sets of plaintiffs allege that the Service should have considered the loss of historical range in its analysis. Crow Am. Complaint ¶ 186; WEG Complaint ¶ 139.

Under the circumstances, it would be wasteful to undertake these two parallel proceedings concerning several overlapping issues. Indeed, "the prospect of two tremendously complex proceedings simultaneously

assembling the same factual data" is a situation that "cries out" for a stay. *Chronicle Publ'g Co. v. Nat'l Broad. Co.*, 294 F.2d 744, 747-48 (9th Cir. 1961). Moreover, even if FWS's consideration of public comments does not moot the claims in this case, it would still likely clarify or narrow issues for the Court by providing the agencies' views on this non-controlling, but nonetheless important, Circuit precedent. *See Lockyer*, 398 F.3d at 1110; *see also Cal. Dep't of Water Res. v. Powerex Corp.*, 653 F. Supp. 2d 1057, 1065 (E.D. Cal. 2009) (staying litigation pending an administrative decision on similar claims because it could narrow or eliminate the issues for the Court to address). This Court has granted a stay in similar circumstances, where an agency sought a pause of the litigation to review the challenged action in light of subsequent developments. *See* Order (ECF No. 41), *All. for the Wild Rockies v. Marten*, No. CV 17-21-M-DLC (D. Mont. Nov. 29, 2017). Because the simultaneous agency decision-making process may "alter[] the analyses 'that are the focal point of this litigation,'" a stay is warranted in this case as well. *Id.* at 8 (citation omitted).

Additionally, a stay is appropriate where the delay is "not immoderate in extent and not oppressive in its consequences." *Landis*,

299 U.S. at 256.  Here, the requested stay is limited to a reasonable time-period, specifically, until after the conclusion of FWS's analysis of the *Humane Society* decision and the public comments.  *See Dependable Highway Exp. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("[S]tays should not be indefinite in nature.").  This limited stay would not have oppressive consequences on the litigation.  Pursuant to the Court's scheduling order, Federal Defendants still intend to produce the administrative record to Plaintiffs by January 5, 2018.[4]  The current schedule affords Plaintiffs two months to review the administrative record, a task that may continue regardless of whether the case is stayed.  Considering the majority of work during the proposed stay is not contingent on the requested relief, there are no oppressive consequences to Plaintiffs.

There are only a handful of case management deadlines that would be affected by the proposed stay.[5]  The first is the March 5, 2018

[4] Briefing on this Motion to Stay will still be ongoing at the time of the administrative record deadline.  *See* Local Rule 7.1(d).

[5] To be clear, it is possible that Federal Defendants will seek another stay or some other relief depending on the outcome of FWS's administrative process.  However, in this motion Federal Defendants anticipate this process being complete on March 31, 2018, or shortly

deadline for Plaintiffs to inform Federal Defendants whether Plaintiffs

believe that the administrative record is complete or whether they

intend to seek supplementation of the record or discovery.  ECF 40 at 4

(requiring Plaintiffs to notify Federal Defendants by March 5, 2018,

whether they believe the record is complete).  The second deadline is

March 23, 2018, requiring a status report on the parties' record

discussions.  *Id.* at 5 (status report deadline of March 23, 2018); *see also*

*id.* (deadline of  April 13, 2018, for filing a record motion).  Although the

proposed stay would postpone these deadlines for a brief period of time,

such a minor delay to resolve a record dispute is unlikely to

significantly affect the ultimate timeline for resolution of this case.

Indeed, the Court has not yet set a briefing schedule for dispositive

motions.  ECF No. 40 at 5.

---

thereafter if the public requests, and is granted, an extension for
submission of public comments.  Moreover, depending on the outcome of
the public comment process, it is possible that FWS will be required to
supplement or file a new administrative record in this case.  In that
circumstance, postponing a discussion over whether the administrative
record is complete would be far more efficient than charging ahead
when the universe of issues may be incomplete.

FWS's completion of its review of the *Humane Society* decision not only has the potential to reduce or clarify the issues for this Court to consider on the merits, but may also affect the parties' positions regarding the completeness of the administrative record. *See Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993) (granting a stay rather than "wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete"). The potential to streamline and potentially narrow issues in this litigation warrants a modest delay and certainly is not "oppressive in its consequences." *Landis*, 299 U.S. at 256.

## B. <u>FWS Would Face Significant Hardship if a Stay is Denied.</u>

FWS would face significant hardship if the Court denies the motion to stay. "[W]hen it is already clear that the outcome of the [administrative proceedings] will impact the final resolution of this case," courts recognize that "[f]orcing Defendants to proceed in the instant litigation . . . would be prejudicial." *J.M. Martinac Shipbuilding Corp. v. Washington*, No. C06-1544 JCC, 2007 WL 445438, at *4 (W.D. Wash. Feb. 6, 2007); *see also Sequoia Forestkeeper v. U.S. Forest Serv.*, No. CV F07-1690 LJO-DLB, 2008 WL 2131557, at *5 (E.D. Cal. May 21,

2008) (prejudicial to require agency "unreasonably to duplicate efforts, and to argue points that may be resolved by the administrative process").

Additionally, the same FWS staff that worked on the Final Rule will be involved in reviewing public comments, determining what effect the D.C. Circuit decision has on the Final Rule, developing a plan to address any identified effect, and publishing the notification of FWS's conclusions by March 31, 2018. As indicated by the large number of comments received on the Final Rule, a significant number of public comments can be expected in response to the Notice. *See* Cooley Decl. ¶ 6. A stay of the litigation would permit FWS to focus its staff and resources on reviewing and addressing public comments and determining whether the agency will take subsequent action regarding the Final Rule. Diverting the same resources towards litigation at the same time would be prejudicial.

## C. **Plaintiffs Would Not Be Prejudiced by a Stay.**

Plaintiffs are likely to argue that any postponement causes prejudice because certain provisions of the ESA no longer apply to this population of grizzlies and therefore their derivative interest in these

bears are allegedly harmed. [6]  Plaintiffs' concerns are misplaced.

Currently, this population of grizzlies is doing extremely well. Cooley Decl. ¶ 7.  Not only is the population recovered as thoroughly discussed in the Final Rule, *see e.g.* 82 Fed. Reg. at 30,625, but the Interagency Grizzly Bear Study Team recently sighted more females with cubs in 2017 than in 2016, resulting in a total population estimate of 718 bears (up from 695).[7]  Cooley Decl. ¶ 7.  As it has been for nearly a decade, the population is stable or slightly increasing and faces no immediate or long-term threat.  Cooley Decl. ¶ 15.

In the immediate future, grizzlies will be hibernating during most of this short stay and, even upon emergence, there will be limited contact with humans in part because motorized access is restricted and

---

[6] There is a common misunderstanding that the "ESA no longer applies" to this population of grizzlies after the distinct population segment was removed from the list of threatened species.  This is inaccurate.  It is true that some key provisions (like Section 7 and 9) that are specific to listed species are affected by the Final Rule.  *See e.g.* 16 U.S.C. § 1536(a)(2); § 1538(a).  Other provisions of the ESA, however, like the duty to monitor this population for a period of five years, *see* 16 U.S.C. § 1533(g)(1)&(2), still apply to this population of grizzlies. *See also* 16 U.S.C. § 1533(b)(7).

[7] This population estimate is derived from the Demographic Monitoring Area and most likely underestimates of the actual population abundance within the boundaries of the distinct population segment.

there is minimal interaction during late winter and early spring months. Cooley Decl. ¶ 15. FWS anticipates no significant mortality, if any at all, during the pendency of the stay because of this limited human interaction. To the extent Plaintiffs contend they would be prejudiced because bears face an increased risk of mortality during the pendency of the proposed stay, such concern is unfounded. The proposed stay poses no adverse, imminent risk to grizzlies and by extension does not prejudice Plaintiffs.

Similarly, even if the proposed stay briefly postpones resolution of Plaintiffs' legal claims, there does not appear to be any material change in grizzly management for the foreseeable future.[8] To FWS's knowledge, none of the states are planning to authorize any grizzly bear hunting this spring. Cooley Decl. ¶ 14. And even if hunting were to occur, the states have committed to managing this population in accordance with strict mortality limits in the 2016 Conservation Strategy that will maintain the recovered population. Cooley Decl. ¶ 13. In terms of management, nothing would change for these grizzlies

---

[8] None of the Plaintiffs have moved for emergency injunctive relief contesting the current status of grizzly management by the states.

during the pendency of the proposed stay.

Plaintiffs have also indicated that the proposed stay could prejudice their clients because, once this population was delisted, federal agencies are no longer required to consult under Section 7 of the ESA for any agency action that may affect this particular population of grizzlies. This concern does not seem to have any direct effect on the interests alleged in this case, but presumably could affect secondary litigation or Plaintiffs' broader organizational goals. While such tangential interests are not relevant to these proceedings, any concern of this nature is also misplaced.

Under the Conservation Strategy, grizzly habitat will be maintained at 1998 levels or better. Cooley Decl. ¶ 11. The objective for this habitat restriction or standard is to reduce access-related disturbances and human-caused mortalities by maintaining or improving habitat conditions, as they existed in 1998. *Id.* This restriction has been in place since 2007 ensuring that this population remains recovered. *Id.* To the extent Plaintiffs' concerns lie in preserving habitat – an issue that is not germane to their challenges to the Final Rule -- that concern too is unfounded.

This population of grizzlies is a remarkable success story. Over the last four decades, FWS, the U.S. Forest Service, National Park Service, U.S. Geological Survey, the States of Wyoming, Montana, and Idaho, as well as the Eastern Shoshone, Northern Arapaho, and Shoshone-Bannock Tribes, have worked diligently to recover the Yellowstone population. Since 1983, the population has grown in size, and for the last 10 years, there have been multiple indications that bear densities have reached carrying capacity in and around Yellowstone Park. This will not change under the 2016 Conservation Strategy. Accordingly, Federal Defendants' request for a brief stay of proceedings to consider the D.C. Circuit's recent opinion will not affect this population of grizzlies in any material manner, and therefore will not prejudice Plaintiffs.

## V. CONCLUSION

For the reasons discussed above, the Court should stay proceedings in these consolidated cases and order Federal Defendants to file a status report on or before April 13, 2018, updating the Court on FWS's administrative process and proposing a schedule for the remainder of the litigation.

DATED:  December 21, 2017.

Respectfully submitted,

JEFFREY H. WOOD
Acting Assistant Attorney General
U.S. Department of Justice
Environment & Natural Resources Division

SETH M. BARSKY, Chief
MEREDITH L. FLAX, Ass't Section Chief

*/s/ Coby Howell*
COBY HOWELL, Senior Trial Attorney
U.S. Department of Justice
c/o U.S. Attorney's Office
1000 SW Third Avenue
Portland, Oregon 97204-2902
Tel: (503) 727-1023 | Fax: (503) 727-1117
Email:  Coby.Howell@usdoj.gov

MICHAEL R. EITEL, Sr. Trial Attorney
DEVON L. FLANAGAN, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
999 18th Street, South Terrace, Suite 370
Denver, Colorado 80202
Tel: (303) 844-1479 | Fax: (303) 844-1350
Email: Michael.Eitel@usdoj.gov;
Devon.Flanagan@usdoj.gov

Of Counsel:
Tyson Powell
Office of the Solicitor
Department of the Interior

*Attorneys for Federal Defendants*

## **CERTIFICATE OF SERVICE & COMPLIANCE**

I hereby certify that on December 21, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the attorneys of record. I certify that this brief is less than 6500 words.

*/s/ Coby Howell*
COBY HOWELL
Senior Trial Attorney
U.S. Department of Justice