Timothy J. Preso
Joshua R. Purtle
Earthjustice
313 East Main Street
Bozeman, MT 59715
(406) 586-9699 | Phone
(406) 586-9695 | Fax
tpreso@earthjustice.org
jpurtle@earthjustice.org

*Counsel for Plaintiffs Sierra Club,
Center for Biological Diversity, and
National Parks Conservation
Association and Local Counsel for
Plaintiff Northern Cheyenne Tribe*

Joshua Osborne-Klein
Ziontz Chestnut
2101 Fourth Avenue, Suite 1230
Seattle, WA 98121
(206) 448-1230 | Phone
(206) 448-0962 | Fax
joshok@ziontzchestnut.com

*Counsel for Plaintiff Northern
Cheyenne Tribe*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| CROW INDIAN TRIBE, et al., | ) |
| | ) Case No. CV 17-89-M-DLC |
| Plaintiffs, | ) |
| | ) (consolidated with Case Nos. |
| v. | ) CV 17-117-M-DLC, |
| | ) CV 17-118-M-DLC, |
| UNITED STATES OF AMERICA, et al., | ) CV 17-119-M-DLC, and |
| | ) CV 17-123-M-DLC) |
| | ) |
| Federal Defendants, | ) **MEMORANDUM IN SUPPORT** |
| | ) **OF MOTION FOR PARTIAL** |
| and | ) **SUMMARY JUDGMENT** |
| | ) |
| STATE OF WYOMING, et al. | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ...........................................................................................1

BACKGROUND ............................................................................................3

I. THE GRIZZLY BEAR AND THE ESA ............................................3

II. THE SERVICE'S PRIOR GYE DELISTING ATTEMPT .............................7

III. THE CHALLENGED DECISION ..................................................9

IV. DEVELOPMENTS SINCE THE FINAL RULE ..........................................10

ARGUMENT ..............................................................................................12

I. STANDARD OF REVIEW ..........................................................13

II. SUMMARY JUDGMENT IS APPROPRIATE NOW ..................................13

III. THE SERVICE UNLAWFULLY FAILED TO CONSIDER THE STATUS OF THE REMNANT GRIZZLY BEAR POPULATION ............16

IV. THE COURT SHOULD VACATE THE FINAL RULE ...........................21

CONCLUSION ............................................................................................23

# TABLE OF AUTHORITIES

## FEDERAL CASES

Alsea Valley All. v. Dep't of Commerce,
    358 F.3d 1181 (9th Cir. 2004) .............................................................21

Animal Legal Def. Fund v. U.S. Dept. of Agric.,
    789 F.3d 1206 (11th Cir. 2015) ..........................................................14

California v. U.S. Bureau of Land Mgmt.,
    Nos. CV 17-03804-EDL, et al., 2017 WL 4416409 (N.D. Cal. Oct.
    4, 2017) .........................................................................................14, 15

Ctr. for Biological Diversity v. Zinke,
    868 F.3d 1054 (9th Cir. 2017) .............................................................13

Defs. of Wildlife v. Salazar,
    776 F. Supp. 2d 1178 (D. Mont. 2011).................................................22

Greater Yellowstone Coal. v. Servheen,
    665 F.3d 1015 (9th Cir. 2011) ..........................................................8, 12

Greater Yellowstone Coal. v. Servheen,
    672 F. Supp. 2d 1105 (D. Mont. 2009).................................................8

Humane Soc'y of the U.S. v. Jewell,
    76 F. Supp. 3d 69 (D.D.C. 2014).........................................................9

Humane Soc'y of the U.S. v. Kempthorne,
    579 F. Supp. 2d 7 (D.D.C. 2008).......................................................22

Humane Soc'y of the U.S. v. Zinke,
    865 F.3d 585 (D.C. Cir. 2017)....................................................*passim*

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,
    463 U.S. 29 (1983)...................................................................2, 13, 21

Nat. Res. Def. Council v. EPA,
    489 F.3d 1364 (D.C. Cir. 2007).........................................................19

Nat'l Ass'n of Home Builders v. Norton,
    340 F.3d 835 (9th Cir. 2003) .............................................................13

Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries
   Serv.,
   265 F.3d 1028 (9th Cir. 2001) ........................................................13

Paulsen v. Daniels,
   413 F.3d 999 (9th Cir. 2005) .........................................................23

People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of
   Agric.,
   194 F. Supp. 3d 404 (E.D.N.C. 2016), aff'd, 861 F.3d 502 (4th Cir.
   2017) ...............................................................................................14

Save Our Cabinets v. U.S. Dep't of Agric.,
   254 F. Supp. 3d 1241 (D. Mont. 2017)...........................................14

Tenn. Valley Auth. v. Hill,
   437 U.S. 153 (1978)...................................................................4, 22

United States v. 14.02 Acres of Land,
   547 F.3d 943 (9th Cir. 2008) .........................................................15

Whitman v. Am. Trucking Ass'ns,
   531 U.S. 457, 121 S.Ct. 903, 149 L.Ed.2d. 1 (2001).......................19

### STATUTES AND LEGISLATIVE MATERIALS

119 Cong. Rec. 42,913 (1973) ...............................................................4

5 U.S.C. § 706.......................................................................13, 14, 21

16 U.S.C. § 1531 ....................................................................................4
        § 1532(6) ..........................................................................5
        § 1532(16) ...............................................................5, 6, 20
        § 1532(19) ..........................................................................5
        § 1532(20) ..........................................................................5
        § 1533(a)(1)............................................................4, 5, 18
        § 1533(b)(1)(A).................................................................17
        § 1533(c)(1)......................................................................16
        § 1533(c)(2)(A) ...........................................................16, 17
        § 1533(c)(2)(B) ...........................................................16, 17

16 U.S.C. § 1536(a)(2)........................................................5

    § 1538(a) ................................................................5

    § 1540(g) ...............................................................13

Endangered Species Act of 1973,
    Pub. L. No. 93-205, 87 Stat. 884 ..................................6

Endangered Species Act Amendments of 1978,
    Pub. L. No. 95-632, 92 Stat. 3,751 ................................6

## REGULATIONS AND ADMINISTRATIVE MATERIALS

50 C.F.R. § 424.11(d) ......................................................18

61 Fed. Reg. 4,722 (Feb. 7, 1996) ...........................6, 18, 20

82 Fed. Reg. 30,502 (June 30, 2017) (to be codified at 50 C.F.R. pt.
    17) ..............................................................*passim*

82 Fed. Reg. 57,698 (Dec. 7, 2017) ............................*passim*

## RULES

Fed. R. Civ. P. 56(b) ......................................................14

# INTRODUCTION

Plaintiffs in this case challenge the U.S. Fish and Wildlife Service's ("Service") decision to designate the grizzly bears occupying the Greater Yellowstone Ecosystem ("GYE") a "distinct population segment" and remove that population from the list of threatened species under the Endangered Species Act ("ESA"). <u>See</u> Final Rule, Removing the Greater Yellowstone Ecosystem Population of Grizzly Bears From the Federal List of Endangered and Threatened Wildlife, 82 Fed. Reg. 30,502 (June 30, 2017) (to be codified at 50 C.F.R. pt. 17) ("Final Rule"). By this motion, Plaintiffs seek summary judgment on Count II of their Complaint, which asserts that, in carving out and delisting the Yellowstone-area grizzly population, the Service violated the ESA by failing to consider the impact of its action on the previously listed grizzly bear entity—the lower-48 grizzly bear population—including by evaluating whether the remnant of that entity left behind by the GYE delisting is protectable under the ESA.

In support of this claim, Plaintiffs rely on the ESA's statutory text and design as recently interpreted and applied by the U.S. Court of Appeals for the D.C. Circuit in <u>Humane Society of the United States v. Zinke</u>, 865 F.3d 585 (D.C. Cir. 2017). Although not controlling authority for this Court, the <u>Humane Society</u> ruling provides compelling persuasive authority that this Court should follow because the D.C. Circuit in that case correctly interpreted the ESA.

Plaintiffs file this motion now because the Service, through recent action, has effectively admitted that it failed to consider this issue in the Final Rule.  On December 7, 2017, the Service published in the Federal Register a notice seeking public comment regarding "the potential implications for the GYE final rule in light of the <u>Humane Society</u> ruling."  Request for Comments, Possible Effects of Court Decision on Grizzly Bear Recovery in the Conterminous United States, 82 Fed. Reg. 57,698 (Dec. 7, 2017) ("Request for Comments").  Subsequently, the Service has asked this Court to stay this litigation during the pendency of this new, post-decisional comment process.  <u>See</u> Federal Defs.' Mot. to Stay (ECF No. 61). As Plaintiffs will explain in opposing the Federal Defendants' stay motion, this Service action amounts to an inappropriate attempt to call a time-out from this litigation for the purpose of concocting an impermissible post-hoc rationalization for the Final Rule.  But it also amounts to an admission that the Service "entirely failed to consider an important aspect of the problem" in the Final Rule itself, which explicitly dismissed any consideration of the implications of the GYE delisting for the conservation of any other components of the lower-48 grizzly bear population.  <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983); <u>see</u> Final Rule, 82 Fed. Reg. at 30,546 (Service stating that "consideration and analyses of grizzly bear populations elsewhere in the lower 48 States is outside the scope of this rulemaking"); <u>accord</u> <u>id.</u> at 30,552, 30,624.

This Court should not countenance such agency conduct. Rather than facilitating the Service's stratagem to belatedly patch over a fatal gap in the agency's delisting analysis, this Court should enter summary judgment for Plaintiffs on Count II of Plaintiffs' Complaint. In this regard, Plaintiffs recognize that this case presents numerous issues and no administrative record has yet been lodged. However, the Final Rule is arbitrary and unlawful based on the purely legal issue presented by Count II alone and this Court's record examination need extend no further than the Final Rule and the Service's new public comment notice to make that determination. Accordingly, this Court's adjudication of this case should begin and end with its determination of the issue presented by this motion. For the reasons set forth below, the Court should enter summary judgment for Plaintiffs on Count II, vacate and remand the Final Rule, and reinstate the GYE grizzly listing under the ESA.

## BACKGROUND

## I.      THE GRIZZLY BEAR AND THE ESA

The grizzly bear, Ursus arctos horribilis, once roamed western North America from Mexico to Canada and numbered roughly 50,000 individuals in the western United States alone. Final Rule, 82 Fed. Reg. at 30,508. With European-American settlement, however, grizzlies were "shot, poisoned, and trapped

wherever they were found," eliminating them from 98 percent of their range by the 1930s.  Id.  Likewise, this persecution reduced grizzly numbers by 98 percent.  Id.

In 1973, spurred in part by the grizzly's plight, Congress enacted the Endangered Species Act for the purpose of protecting and recovering threatened and endangered species and the ecosystems upon which they depend.  See 16 U.S.C. § 1531; see also Tenn. Valley Auth. v. Hill, 437 U.S. 153, 183-84 (1978) (noting Congress's determination that "'the continental population of grizzly bears … [wa]s surely threatened'" and "'[o]nce [the ESA] bill [wa]s enacted, the appropriate Secretary … w[ould] have to take action to see that this situation is not permitted to worsen, and that these bears are not driven to extinction'") (quoting 119 Cong. Rec. 42,913 (1973)) (emphasis omitted).  Two years after this enactment, the Service listed grizzly bears in the lower-48 United States as a threatened species under the ESA.  See Final Rule, 82 Fed. Reg. at 30,508.

The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation."  Tenn. Valley Auth., 437 U.S. at 180.  To achieve the ESA's goals, Section 4 of the Act requires the Service to determine whether a species is threatened or endangered and therefore should be shielded by the statute.  See 16 U.S.C. § 1533(a)(1).  Listed species enjoy strong protections.  Federal agencies must "insure that any action authorized, funded, or carried out by such agency … is not likely to jeopardize the continued existence

of" any listed species.  Id. § 1536(a)(2).  Further, the "take" of any member of a listed species—defined as harassing, harming, pursuing, hunting, shooting, wounding, killing, trapping, capturing, or collecting, or attempting to engage in any such conduct, id. § 1532(19)—is generally prohibited, with strictly limited exceptions.  Id. § 1538(a).

Under the Act, a species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range," 16 U.S.C. § 1532(6), and it is "threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range," id. § 1532(20).  The Service must determine whether a species is endangered or threatened based on:

(A)   the present or threatened destruction, modification, or curtailment of its habitat or range;

(B)   overutilization for commercial, recreational, scientific, or educational purposes;

(C)   disease or predation;

(D)   the inadequacy of existing regulatory mechanisms; or

(E)   other natural or manmade factors affecting its continued existence.

Id. § 1533(a)(1).

A "species" for purposes of the Act "includes any subspecies of fish or wildlife or plants."  Id. § 1532(16).  Pursuant to a 1978 amendment to the ESA, a "species" also includes "any distinct population segment of any species of

vertebrate fish or wildlife which interbreeds when mature." Id.; see Endangered Species Act Amendments of 1978, Pub. L. No. 95-632, 92 Stat. 3,751, 3,752.  The Service may list such a "distinct population segment" ("DPS") of a larger species upon finding that, in addition to being endangered or threatened, the population segment is discrete—that is, "markedly separated from other populations of the same taxon"—and significant.  See Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act, 61 Fed. Reg. 4,722, 4,725 (Feb. 7, 1996) ("Segment Policy").

The Service listed the entire lower-48 grizzly bear population as a single entity in 1975.  Final Rule, 82 Fed. Reg. at 30,508.  At that time, Congress had not yet enacted the ESA provision allowing the Service to list a DPS and the ESA instead provided for listing of species, subspecies, and "'any other group of fish or wildlife of the same species or smaller taxa in common spatial arrangement that interbreed when mature.'"  Humane Soc'y, 865 F.3d at 591 n.2 (quoting Endangered Species Act of 1973, § 3, Pub. L. No. 93-205, 87 Stat. 884, 886).

Following the listing, the Service identified six ecosystems that were believed to support grizzly bears in which the Service would seek to recover or reestablish healthy grizzly populations.  Final Rule, 82 Fed. Reg. at 30,508-09.  These included:  (1) the Greater Yellowstone Ecosystem in southwest Montana, northwest Wyoming, and eastern Idaho; (2) the Northern Continental Divide

Ecosystem of north-central Montana; (3) the Cabinet-Yaak area of northwest Montana and northern Idaho; (4) the Selkirk Mountains area of northern Idaho, northeast Washington, and southeast British Columbia; (5) the North Cascades area of north-central Washington; and (6) the Bitterroot Ecosystem in the Bitterroot Mountains of western Montana and central Idaho. Id. at 30,509. The first five of these listed ecosystems presently contain grizzly bear populations that cumulatively total approximately 1,800 bears, Request for Comments, 82 Fed. Reg. at 57,698—i.e., about 3.6 percent of historic population levels. However, within the North Cascades ecosystem there are no confirmed grizzly bears in the United States and only an estimated 6 grizzlies in adjacent portions of British Columbia. Id. at 57,699. Further, the sixth listed ecosystem—the Bitterroot Ecosystem—"is not known to contain a population of grizzly bears at this time." Final Rule, 82 Fed. Reg. at 30,509. In addition to these six ecosystems, the Service has identified the San Juan Mountains of Colorado "as an area of possible grizzly bear occurrence," id., but, as with the Bitterroot Ecosystem, "no grizzly bears exist" there today, Request for Comments, 82 Fed. Reg. at 57,698.

## II.     THE SERVICE'S PRIOR GYE DELISTING ATTEMPT

The Service first attempted to delist the Greater Yellowstone Ecosystem grizzly bear population from the larger lower-48 listed entity in 2007. Final Rule, 82 Fed. Reg. at 30,504-05. At that time, the Service published a rule designating

the GYE population as a DPS and removing it from the list of threatened species.
Id.

However, conservationists challenged that decision before this Court, which on September 21, 2009, issued a decision invalidating the delisting and returning the GYE grizzly bears to the ESA's threatened species list.  See Greater Yellowstone Coal. v. Servheen, 672 F. Supp. 2d 1105 (D. Mont. 2009).  The Court held, among other things, that the Service had arbitrarily determined that the GYE grizzly bear population was recovered despite recent observed and predicted catastrophic losses of one of the bears' most important food sources, the seeds of the whitebark pine tree, due to climate change and other factors.  Id. at 1118-20.

The Service appealed this Court's judgment to the U.S. Court of Appeals for the Ninth Circuit, which affirmed this Court's decision on the whitebark pine issue on November 22, 2011.  See Greater Yellowstone Coal. v. Servheen, 665 F.3d 1015 (9th Cir. 2011).  In particular, the Ninth Circuit faulted the Service for pressing forward with its 2007 GYE grizzly bear delisting decision without rationally addressing the emerging threat of whitebark pine loss, stating:

> Perhaps the Service's delisting process, based on two decades of grizzly population growth, was well underway before the whitebark pine loss problem appeared on the radar and could be studied.  But now that this threat has emerged, the Service cannot take a full-speed ahead, damn-the-torpedoes approach to delisting—especially given the ESA's "policy of institutionalized caution."

Id. at 1030 (citation omitted).

## III.  THE CHALLENGED DECISION

The Service resumed its effort to delist the GYE grizzly bear population on March 11, 2016, when the agency published a proposed rule to once again designate the GYE population as a distinct population segment and, at the same time, remove it from the list of threatened species.  See Final Rule, 82 Fed. Reg. at 30,505.  Even before publication of that proposed rule, on December 19, 2014, the U.S. District Court for the District of Columbia had issued a decision in Humane Society of the United States v. Jewell, 76 F. Supp. 3d 69 (D.D.C. 2014), invalidating a similar effort by the Service to designate the Western Great Lakes population of the gray wolf, Canis lupus, as a DPS and delist it from an already-listed entity, the lower-48 wolf population.  The D.C. court rejected the Service's attempt to carve out a DPS and contemporaneously delist it under the ESA for a variety of reasons, including that, in taking any such action, the Service must review the status of the listed entity from which the DPS was carved.  The court stated that "[a]ny reclassification or delisting of the species Canis lupus may only be undertaken after a review of the 'status' of Canis lupus, the 'species' that was listed on the List of Endangered and Threatened Wildlife," yet the Service failed to conduct any such review.  Id. at 124.  The Service appealed the Humane Society ruling, but—before any appellate decision had been rendered in the Humane

<u>Society</u> case—the agency published the Final Rule at issue in this case on June 30, 2017. <u>See</u> Final Rule, 82 Fed. Reg. at 30,502.

In the Final Rule, the Service again designated the GYE grizzly bear population as a DPS and removed it from the list of threatened species under the ESA. <u>Id.</u> at 30,503. In so doing, the Service recognized that the D.C. district court had disapproved an identical use of the ESA's DPS language in the <u>Humane</u> <u>Society</u> case, but stated that "[w]e respectfully disagree with the [D.C.] district court's interpretation of the DPS policy." <u>Id.</u> at 30,517. Further, the Service in the Final Rule explicitly—and repeatedly—declined to consider the status of the already listed grizzly bear entity, the lower-48 grizzly population, or the impact of its GYE delisting decision on the status or conservation of that entity, stating that "consideration and analyses of grizzly bear populations elsewhere in the lower 48 States is outside the scope of this rulemaking." <u>Id.</u> at 30,546; <u>accord</u> <u>id.</u> at 30,552, 30,624.

## IV.    DEVELOPMENTS SINCE THE FINAL RULE

Approximately one month after the Service issued the Final Rule, the D.C. Circuit issued its decision on the Service's appeal of the district court decision in the <u>Humane Society</u> case. <u>See</u> <u>Humane Soc'y v. Zinke</u>, 865 F.3d at 585. The D.C. Circuit held that, while the Service has authority under the ESA to identify and assign a different conservation status to a DPS carved out of an already-listed

species, it may not do so without considering the status of that listed species and "without determining whether the remnant itself remains a species so that its own status under the Act will continue as needed." Id. at 600. Accordingly, the D.C. Circuit affirmed the judgment of the D.C. district court and vacated the Service's identification and delisting of the Western Great Lakes gray wolf DPS. See id. at 615.

Plaintiffs filed this case on August 30, 2017, alleging in Count II of their Complaint that here—as in the Humane Society case—the Service violated the ESA by identifying and delisting a DPS of an already-listed species without considering the status of that species or the impact of its delisting decision on the remnant listed entity. See Complaint for Declaratory and Injunctive Relief, N. Cheyenne Tribe v. Zinke, No. CV 17-119-M-DLC, ¶¶ 78-81 (ECF No. 1).

Faced with this legal challenge, the Service on December 7, 2017, published in the Federal Register a notice that it is seeking public comment concerning "the potential implications for the GYE final rule in light of the Humane Society ruling." Request for Comments, 82 Fed. Reg. at 57,698. The Service acknowledged that the Humane Society ruling "may impact the GYE final rule, which also designated a portion of an already-listed entity as a DPS and then revised the listed entity by removing the DPS due to recovery." Id. The Service stated that it "will address public comments and notify the public of our

conclusions by March 31, 2018," but that the Final Rule "will remain in effect during this review process."  Id. at 57,699.

## ARGUMENT

This Court should enter summary judgment for Plaintiffs on Count II of their Complaint, vacate and remand the Final Rule, and reinstate the GYE grizzly bear listing under the ESA.  Notwithstanding the Ninth Circuit's admonition in Greater Yellowstone Coalition, the Service has once again taken "a full-speed ahead, damn-the-torpedoes approach to delisting," 665 F.3d at 1030—this time by dismissing the issue raised by the Humane Society litigation and proceeding to delist the GYE grizzly bear DPS without considering the status of the already-listed lower-48 grizzly population or the impact of the GYE delisting on the remnant lower-48 listed population.  The Service thus failed to consider critical questions regarding whether that remnant remains a listable entity under the ESA so that conservation and recovery actions for grizzlies within the remnant may continue as needed—or whether instead the remnant and its bears may become "an orphan to the law" such that needed protections could be lost.  Humane Soc'y, 865 F.3d at 603.

The Service's recent call for an unorthodox, post-decisional public comment period regarding the impact of the Humane Society ruling on the Final Rule essentially admits what is, in any event, obvious from the face of the Final Rule

itself—the Service entirely failed to consider this important aspect of the GYE grizzly bear delisting decision.  The Court need look no further to determine that this purely legal error renders the Final Rule unlawful.  Accordingly, summary judgment on Count II is warranted.

## I.     STANDARD OF REVIEW

Plaintiffs bring this case under the ESA's citizen-suit provision, 16 U.S.C. § 1540(g), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, which provides the standard of review.  See Nat'l Ass'n of Home Builders v. Norton, 340 F.3d 835, 840-41 (9th Cir. 2003).  Under this standard, ESA listing decisions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  Ctr. for Biological Diversity v. Zinke, 868 F.3d 1054, 1057 (9th Cir. 2017).  In particular, "agency action must be reversed when the agency has … entirely failed to consider an important aspect of the problem."  Id. (quoting Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv., 265 F.3d 1028, 1034 (9th Cir. 2001)); accord State Farm, 463 U.S. at 43.

## II.    SUMMARY JUDGMENT IS APPROPRIATE NOW

This Court may appropriately resolve the issue presented by Count II of Plaintiffs' Complaint through this motion for partial summary judgment at this stage of the case.  "Summary judgment is particularly applicable to cases involving

judicial review of final agency action." <u>Save Our Cabinets v. U.S. Dep't of Agric.</u>, 254 F. Supp. 3d 1241, 1249 (D. Mont. 2017). Further, "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b).

When applying the APA standard of review in a summary judgment proceeding, this Court is to "review the whole record <u>or those parts of it cited by a party</u>." 5 U.S.C. § 706 (emphasis added). Under this provision, this Court may issue summary judgment without awaiting filing of the full administrative record where the matters before the Court "are limited to legal issues that do not depend on the administrative record." <u>California v. U.S. Bureau of Land Mgmt.</u>, Nos. CV 17-03804-EDL, et al., 2017 WL 4416409, at *5 (N.D. Cal. Oct. 4, 2017) (vacating agency postponement of regulatory compliance dates based on purely legal issues and finding that "[t]he administrative record would not be helpful to decide these issues and is not required"); <u>see</u> <u>People for the Ethical Treatment of Animals, Inc. v. U.S. Dep't of Agric.</u>, 194 F. Supp. 3d 404, 409 (E.D.N.C. 2016) ("In APA cases, … a court need not wait for an administrative record to be compiled to decide a pure question of law."), <u>aff'd</u>, 861 F.3d 502 (4th Cir. 2017); <u>see also</u> <u>Animal Legal Def. Fund v. U.S. Dept. of Agric.</u>, 789 F.3d 1206, 1224 n.13 (11th Cir. 2015) (holding that district court had no need to examine the administrative record where "there is no factual dispute"). In such a case, the

Court's record review need extend no further than a "few key documents" that are dispositive of the legal questions and as to which the Court may take judicial notice. <u>California</u>, 2017 WL 4416409, at *5.

This case is appropriate for such treatment. Plaintiffs' Count II raises the purely legal issue of whether the ESA required the Service, in delisting the GYE grizzly bear population, to consider the status of the already-listed lower-48 grizzly population and the impact of its delisting action on the remnant listed entity. The Service has admitted that it did not do so in both the Final Rule and the agency's recent Request for Comments, both of which are subject to judicial notice. <u>See United States v. 14.02 Acres of Land</u>, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and reports of administrative bodies.") (quotation marks and citation omitted). Indeed, in the D.C. Circuit's recent <u>Humane Society</u> ruling, that Court decided this same legal question with reference only to the Service's Federal Register publication of the final rule challenged in that case and a handful of other similar agency publications, all of which would have been subject to judicial notice. <u>See</u> 865 F.3d at 600-03. Further, given that the Service in the Final Rule in this case expressly disavowed any consideration or analysis of the status of "grizzly bear populations elsewhere in the lower 48 States," 82 Fed. Reg. at 30,546, there can be no additional administrative record documents to shed

light on this aspect of the agency's decision-making process.  Accordingly,

summary judgment is appropriate now.

### III.  THE SERVICE UNLAWFULLY FAILED TO CONSIDER THE STATUS OF THE REMNANT GRIZZLY BEAR POPULATION

The Service in the Final Rule unlawfully failed to consider the status of the

threatened lower-48 grizzly bear population or the impact of its GYE delisting on

the remnant of that listed population that survived the GYE delisting, contrary to

the language and design of the ESA.  In this respect, this case is on all fours with

the D.C. Circuit's <u>Humane Society</u> ruling, which provides strong persuasive

authority in support of this motion.

As the <u>Humane Society</u> court observed, the ESA's "text requires the Service,

when reviewing and redetermining the status of a species, to look at the whole

picture of the listed species, not just a segment of it."  865 F.3d at 601.  In this

regard, ESA Section 4(c)(1) requires the Service to publish a list of endangered

and threatened species.  16 U.S.C. § 1533(c)(1).  Section 4(c)(2) then requires the

Service to conduct "a review of <u>all species included in a list</u> which is published

pursuant to [Section 4(c)(1)] and which is in effect at the time of such review" and,

based on this review, to determine "whether <u>any such species</u> should … be

removed from such list."  <u>Id.</u> § 1533(c)(2)(A), (B) (emphases added).  Further,

Section 4(c)(2)(B) provides that any such determination "shall be made in

accordance with the provisions of" Section 4(b)(1)(A), <u>id.</u> § 1533(c)(2)(B), which

independently requires the Service to "conduct[] a review of the status of the species," id. § 1533(b)(1)(A) (emphasis added).

> Thus, when a species is already listed, the Service cannot review a single segment with blinders on, ignoring the continuing status of the species' remnant. The statute requires a comprehensive review of the entire listed species and its continuing status. Having started the process, the Service cannot call it quits upon finding a single distinct population segment.

Humane Soc'y, 865 F.3d at 601.

Here, the Service failed to undertake the "comprehensive review of the entire listed species and its continuing status" required by the ESA. Id. When the Service published the Final Rule, the "species included in a list" for purposes of ESA Section 4(c)(2)(A) was the lower-48 grizzly bear population. 16 U.S.C. § 1533(c)(2)(A); see Final Rule, 82 Fed. Reg. at 30,508 (discussing lower-48 grizzly listing). Therefore, the Service was required to conduct a review of that listed species in undertaking any revision of the list and, in particular, to act only after conducting a review of the status of that species. 16 U.S.C. § 1533(b)(1)(A), (c)(2)(B). The Service did not do so. Instead, as discussed, the Service repeatedly deemed "consideration and analyses of grizzly bear populations elsewhere in the lower 48 States … outside the scope of" the Final Rule. Final Rule, 82 Fed. Reg. at 30,546; see also id. at 30,552 ("[T]he management and potential status of other grizzly bear populations is outside the scope of this final rule."); 30,624 ("[C]onsideration and analyses of grizzly bear populations elsewhere in the lower

48 States is outside the scope of this rulemaking.").  Accordingly, the Service violated the ESA.

As the D.C. Circuit recognized, the Service's unlawful approach threatens to undo the ESA's carefully designed framework for removing the Act's protections through delisting of a species.  To delist a species under the ESA, the Service must determine that the listed species is no longer threatened or endangered based on an evaluation of the same five factors the Service considers when listing a species. See 16 U.S.C. § 1533(a)(1); 50 C.F.R. § 424.11(d).  However, where the Service fails to consider the impact of designating and carving out a DPS from a larger listed entity, the agency's disregard of this issue could "divest the extant listing of legal force" by creating a remnant that is not itself a listable entity under the ESA because the remnant does not constitute a species, subspecies, or DPS under that statute.  Humane Soc'y, 865 F.3d at 601-02.  Were that to occur, the carefully circumscribed process that Congress established in the ESA for removing a species from the endangered and threatened list would be nullified.

As the D.C. Circuit aptly stated in the Humane Society case:

The segment-designation process is meant to be "sparing[ ]" in its use. Segment Policy, 61 Fed. Reg. at 4,724.  Yet the Service's disregard of the remnant's status would turn that sparing segment process into a backdoor route to the de facto delisting of already-listed species, in open defiance of the Endangered Species Act's specifically enumerated requirements for delisting.  See 16 U.S.C. § 1533(a)(1) (listing five mandatory criteria for altering a listing).  Accordingly, as a matter of plain statutory design, the act of designating a segment

18

cannot in one fell swoop make an already-listed species an unlisted and unlistable non-species, "sidestep[ping]" the process "Congress has plainly" prescribed for delisting. See Nat. Res. Def. Council v. EPA, 489 F.3d 1364, 1372 (D.C. Cir. 2007); see also Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 485, 121 S.Ct. 903, 149 L.Ed.2d. 1 (2001) ("[An agency] may not construe the statute in a way that completely nullifies textually applicable provisions meant to limit its discretion."). Instead, the Service must make it part and parcel of its segment analysis to ensure that the remnant, if still endangered or threatened, remains protectable under the Endangered Species Act.

Id. at 601-02.

This requirement serves not only to honor Congress's intention in designing the listing process, but also to avoid the severe practical threat to species survival that would arise from jettisoning protections for listed species in areas previously deemed critical for their survival and recovery in the absence of any rational determination by the Service that such protections are no longer needed. See id. at 602 (faulting Service for delisting Western Great Lakes wolf population while leaving "entirely unexplained how the remaining wolves' existing endangered status would continue" or "mak[ing] any finding that the remnant was no longer endangered").

Here, the Final Rule raises substantial questions concerning this threat that the Service has never considered. The Service's own recovery strategy for grizzly bears in the lower-48 United States focuses on conserving and restoring bear populations in specified ecosystems that extend well beyond the GYE. See Request for Comments, 82 Fed. Reg. at 57,698. Yet the Service has never

recognized "lower-48 grizzlies outside the Greater Yellowstone Ecosystem" as a listable species or subspecies under the ESA. Indeed, lower-48 grizzly bears, including GYE grizzlies, are all members of Ursus arctos horribilis, a brown bear subspecies that extends north through Canada and Alaska. Final Rule, 82 Fed. Reg. at 30,505. Nor has the Service ever considered whether the lower-48 grizzly bear population minus the GYE subpopulation would satisfy the ESA's and the Service's own requirements for listing as a DPS. See 16 U.S.C. § 1532(16) (DPS provision); Segment Policy, 61 Fed. Reg. at 4,725.

Moreover, although the Service has suggested that multiple lower-48 grizzly bear ecosystems might be designated and listed as separate DPSs under the ESA, this potential path also presents numerous issues that the agency has never examined. See Request for Comments, 82 Fed. Reg. at 57,698 (stating that "sufficient evidence exists to support multiple DPSs within the lower-48-State listing"). For instance, there are, at a minimum, substantial questions whether the listings of the North Cascades and Bitterroot grizzly bear ecosystems could be sustained on this basis at this time given that there are no known grizzlies in the U.S. portion of the North Cascades ecosystem and no known grizzlies at all in the entire Bitterroot ecosystem. See id. at 57,699. The Service has not wrestled with the question whether the North Cascades and Bitterroot ecosystems could be listed separately as distinct population segments without a grizzly population occupying

them.  It certainly did not do so in the Final Rule delisting the GYE population, which, as discussed, considered all such issues to be "outside the scope of this rulemaking."  Final Rule, 82 Fed. Reg. at 30,546.

Thus, here, as in Humane Society, the Service has carved out and delisted a DPS from a larger listed entity but "left entirely unexplained how the remaining [members of the species'] existing [listed] status would continue."  865 F.3d at 602.  Yet

> [t]he Service's power is to designate genuinely discrete population segments; it is not to delist an already-protected species by balkanization.  The Service cannot circumvent the Endangered Species Act's explicit delisting standards by riving an existing listing into a recovered sub-group and a leftover group that becomes an orphan to the law.

Id. at 603.  Because the Service failed entirely to consider this important issue, its Final Rule is arbitrary and capricious and violates the ESA.  State Farm, 463 U.S. at 43.

## IV.   THE COURT SHOULD VACATE THE FINAL RULE

This Court should remedy the Service's ESA violation by vacating and remanding the Final Rule and reinstating the listing of GYE grizzly bears as a threatened species under the ESA.  The APA provides that the "reviewing court shall … set aside agency action, findings, and conclusions found to be" unlawful.  5 U.S.C. § 706 (emphasis added).  Accordingly, vacatur of unlawful agency action "normally accompanies a remand."  Alsea Valley All. v. Dep't of Commerce, 358

F.3d 1181, 1185 (9th Cir. 2004); accord Humane Soc'y, 865 F.3d at 614-15 (vacating rule).

Vacatur is warranted because the Service's failure to address the effect on the remnant lower-48 grizzly bear listing of carving out and delisting the GYE distinct population segment reflects a "major shortcoming[] that go[es] to the heart of the Service's delisting decision." Humane Soc'y, 865 F.3d at 614. Moreover, "'Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities.'" Defs. of Wildlife v. Salazar, 776 F. Supp. 2d 1178, 1187 (D. Mont. 2011) (holding that policy underlying ESA counsels in favor of vacating agency action that violated statute) (quoting Tenn. Valley Auth., 437 U.S. at 194). Here the Service has disregarded key questions concerning whether and how essential ESA listing status and associated protections for lower-48 grizzly bears outside of the GYE may be maintained in the wake of the Final Rule. Accordingly, leaving the unlawful Final Rule in place despite the Service's ESA violation would "run roughshod over Congress' balancing of the equities regarding endangered species." Id.; see also Humane Soc'y of the U.S. v. Kempthorne, 579 F. Supp. 2d 7, 21 (D.D.C. 2008) (holding that "the ESA's preference for protecting endangered species counsels strongly in favor of vacating" agency action that violated ESA requirements). For these reasons, remand and vacatur should be ordered.

Further, because "[t]he effect of invalidating an agency rule is to reinstate the rule previously in force," <u>Paulsen v. Daniels</u>, 413 F.3d 999, 1008 (9th Cir. 2005), this Court should reinstate the pre-Final Rule listing of the GYE grizzly population as a threatened species under the ESA.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for partial summary judgment on Count II of their Complaint, remand and vacate the Final Rule, and reinstate the listing of the GYE grizzly bear population as a threatened species under the ESA.

Respectfully submitted this 8th day of January, 2018.

/s/ Timothy J. Preso
Timothy J. Preso
Joshua R. Purtle
Earthjustice
313 East Main Street
Bozeman, MT 59715
(406) 586-9699 | Phone
(406) 586-9695 | Fax
tpreso@earthjustice.org
jpurtle@earthjustice.org

*Counsel for Plaintiffs Sierra Club, and Center for Biological Diversity, and National Parks Conservation Association and Local Counsel for Plaintiff Northern Cheyenne Tribe*

Joshua Osborne-Klein
Ziontz Chestnut
2101 Fourth Avenue, Suite 1230
Seattle, WA 98121
(206) 448-1230 | Phone
(206) 448-0962 | Fax
joshok@ziontzchestnut.com

*Counsel for Plaintiff Northern Cheyenne Tribe*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I hereby certify that the foregoing brief contains 5,448 words, as determined by the word count function of Microsoft Word.

/s/ Timothy J. Preso
Timothy J. Preso

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was today served on all counsel of record via the Court's CM/ECF system.

/s/ Timothy J. Preso
Timothy J. Preso