Kristine M. Akland
Akland Law Firm, PLLC
317 E. Spruce St.
P.O. Box 7274
Missoula, MT 59807
aklandlawfirm@gmail.com
Telephone: (406) 544-9863

Nicholas M. Arrivo
The Humane Society of the United States
1255 23rd St. NW, Suite 450
Washington, DC 20037
narrivo@humanesociety.org
Telephone: (202) 676-2339
Admitted *pro hac vice*

Counsel for Plaintiffs in CV 17-117-M-DLC

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CROW INDIAN TRIBE, *et al.,* <br><br>       *Plaintiffs*, <br><br> v. <br><br><br> UNITED STATES OF AMERICA, *et al*., <br><br>       *Defendants*, <br><br>    and <br><br> STATE OF WYOMING; STATE OF IDAHO; SAFARI CLUB INTERNATIONAL; and NATIONAL RIFLE ASSOCIATION OF AMERICA, <br><br>       *Defendant-Intervenors*. | CV-17-00089-DLC-JCL <br><br> [Consolidated with: CV-17-117-M-DLC; CV-17-118-M-DLC; CV-17-119-M-DLC; CV-17-123-M-DLC] <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

**TABLE OF CONTENTS**

I) INTRODUCTION .................................................................................................1

II) BACKGROUND .................................................................................................3
   A) The Endangered Species Act .........................................................................3
   B) Grizzly Bear Protection Under the Endangered Species Act.......................5
   C) *Humane Society v. Zinke* and the Post-Decisional Request for Comments...............8

III) STANDARD OF REVIEW ...............................................................................10

IV) ARGUMENT.......................................................................................................11
   A) FWS Failed to Consider the Legal Status of the Remnant Grizzly Bear Listing, in
      Violation of the ESA........................................................................................11
   B) FWS Failed to Conduct an Analysis of the Final Rule on Threats to the Survival of the
      Remnant Grizzly Bear Listing, in Violation of the ESA ...........................14
   C) The Final Rule Should be Vacated ...............................................................15

V) CONCLUSION.....................................................................................................18

# TABLE OF AUTHORITIES

## Federal Cases

*Alsea Valley All. v. Dep't of Commerce*
  358 F.3d 1181 (9th Cir. 2004) ...............................................................16

*Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*
 515 U.S. 687 (1995)............................................................................ 3-4

*California v. U.S. Bureau of Land Mgmt.*
  2017 WL 4416409 (N.D. Cal. Oct. 4, 2017)......................................10, 11

*Ctr. for Biological Diversity v. Zinke*
  868 F.3d 1054 (9th Cir. 2017) .........................................................10, 16

*Defenders of Wildlife v. Babbitt*
  958 F.Supp. 670 (D.D.C. 1997) ...............................................................4

*Defenders of Wildlife v. Sec'y, U.S. Dept. of the Interior*
  354 F.Supp.2d 1156 (D. Or. 2005) .........................................................16

*Greater Yellowstone Coal. v. Servheen*
  665 F.3d 1015 (9th Cir. 2011) ........................................................ *passim*

*Greater Yellowstone Coal. v. Servheen*
  672 F.Supp.2d 1105 (D. Mont. 2009).................................................6, 16

*Humane Soc'y of the United States v. Jewell*
  76 F.Supp.3d 69 (D.D.C. 2014) ...............................................................2

*Humane Soc'y of the U.S. v. Kempthorne*
  579 F.Supp.2d 7 (D.D.C. 2008) .............................................................16

*Humane Soc'y of the United States v. Zinke*
  865 F.3d 585 (D.C. Cir. 2017) ........................................................ *passim*

*Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.*
  463 U.S. 29 (1983)..................................................................................10

*Nat'l Wildlife Fed'n v. Norton*
  386 F.Supp.2d 553 (D. Vermont 2005) ..................................................16

*Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*
  475 F.3d 1136 (9th Cir. 2007) ...............................................................10

*Pac. Coast Fed'n of Fishermen's Ass'n v. Nat'l Marine Fisheries Serv.*
    265 F.3d 1028 (9th Cir. 2001) ........................................................10, 16

*People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*
    194 F.Supp.3d 404 (E.D.N.C. 2016) ........................................................11

*Safari Club Int'l v. Jewell*
    960 F.Supp.2d 17 (D.D.C. 2013) ................................................ 11-12 n.3

*State of N.J., Dep't. of Environmental Protection v. E.P.A.*
    626 F.2d 1038 (D.C. Cir. 1980) ........................................................17

*Sw. Center for Biological Diversity v. Babbitt*
    215 F.3d 58 (D.C. Cir. 2000) ........................................................5

*Sw. Center for Biological Diversity v. U.S. Forest Serv.*
    100 F.3d 1443 (9th Cir. 1996) ................................................17

*TVA v. Hill*
    437 U.S. 153 (1978)........................................................4, 5, 16

## Federal Statutes and Regulations

Code of Federal Regulations
    50 C.F.R. § 17.21 ........................................................4
    50 C.F.R. § 17.31 ........................................................4
    50 C.F.R. § 17.40 ........................................................18
    50 C.F.R. § 424.11 ........................................................5

United States Code
    5 U.S.C. § 706........................................................10, 15
    16 U.S.C. § 1531 ........................................................3
    16 U.S.C. § 1532........................................................3, 4, 11, 14
    16 U.S.C. § 1533........................................................4, 5, 12, 14
    16 U.S.C. § 1540........................................................10

## Federal Register Entries

40 Fed. Reg. 31,734 (July 28, 1975)........................................................5, 6

61 Fed. Reg. 4,722, 4,725 (Feb. 7, 1996) ........................................................4

80 Fed. Reg. 34,500 (June 16, 2015) ........................................................14 n.3

81 Fed. Reg. 13,174 (Mar. 11, 2016)........................................................1, 2, 7, 9

82 Fed. Reg. 30,502 (June 30, 2017) ........................................................... *passim*

82 Fed. Reg. 57,698 (Dec. 7, 2017)) ...................................................3, 9

# I.    INTRODUCTION

Plaintiffs The Humane Society of the United States ("HSUS") and the Fund for Animals ("FFA") (collectively, "Plaintiffs") respectfully seek summary judgment on a purely legal question that can dispose of this entire case. As outlined in Plaintiffs' complaint, the U.S. Fish and Wildlife Service ("FWS") violated the Endangered Species Act ("ESA") and fundamental principles of administrative law when it issued its Final Rule, Removing the Greater Yellowstone Ecosystem Population of Grizzly Bears from the Federal List of Endangered and Threatened Wildlife ("Final Rule"). 82 Fed. Reg. 30,502, 30,517 (June 30, 2017). Relevant to this motion, FWS violated the ESA by designating the Greater Yellowstone Ecosystem ("GYE") population of grizzly bears as a "distinct population segment" and then focusing its delisting analysis only on that newly designated entity. The result is that FWS unlawfully failed to consider the impact of its delisting action on the entirety of the pre-existing ESA listing of grizzly bears, which was not limited to the GYE area; and unlawfully left a remnant population of grizzly bears on the Endangered and Threatened Species List that is not a legally cognizable entity under the ESA. For these reasons—and others raised in Plaintiffs' complaint but not the subject of this motion—FWS's action is plainly forbidden by the text, structure and purpose of the ESA as a matter of law.

FWS flagrantly ignored a directly applicable federal court ruling when, in March 2016, it first proposed the action that gave rise to this litigation: removing essential ESA protections from one region within grizzly bears' current range—newly designated as a "distinct population segment" ("DPS") of grizzly bears in the GYE. Proposed Rule, Removing the Greater Yellowstone Ecosystem Population of Grizzly Bears from the Federal List of Endangered and Threatened Wildlife, 81 Fed. Reg. 13,174 (Mar. 11, 2016) ("Proposed Rule"). The prior year, the

district court for the District of Columbia held that an analogous FWS rule that simultaneously designated and delisted a DPS of gray wolves in the Western Great Lakes region violated the text and structure of the ESA. *Humane Soc'y of the United States v. Jewell*, 76 F. Supp. 3d 69 (D.D.C. Dec. 19, 2014).

In spite of this ruling, FWS conducted an identical and equally unlawful maneuver when it delisted GYE grizzly bears. The Proposed Rule conceded that the district court's decision in *Humane Society v. Jewell* could prove fatal to the designation and delisting of the GYE grizzly bear DPS. Proposed Rule, 81 Fed. Reg. at 13,190 ("We recognize that our interpretation and use of the DPS policy to revise and delist distinct population segments has been challenged in [*Humane Society v. Jewell*]…Our rule was vacated by the District Court's decision. We respectfully disagree with the district court's interpretation of the DPS policy, and the United States has appealed that decision."). Yet, rather than wait for its appeal of that decision to conclude before taking final action, FWS published a final rule delisting the newly designated GYE grizzly bear DPS on June 30, 2017, again baldly stating that "the United States has appealed that decision." Final Rule, 82 Fed. Reg. at 30,517.

But FWS was not successful on appeal. One month after the publication of the grizzly bear Final Rule, the D.C. Circuit affirmed the district court's vacatur of FWS' gray wolf delisting rule, holding that "when a species is already listed, the Service cannot review a single segment with blinders on, ignoring the continuing status of the species' remnant. The statute requires a comprehensive review of the entire listed species and its continuing status." *Humane Society of the United States v. Zinke*, 865 F.3d 585, 601 (D.C. Cir. Aug. 1, 2017) ("*Humane Society*"). Now, rather than rescind the Final Rule for reconsideration in light of the "fatal" legal defects confirmed by the D.C. Circuit, *id.* at 603, FWS has instead audaciously asked this Court to stay

this litigation so it can conduct a review of public comments it unnecessarily solicited on the wholly legal issue of the impact of the *Humane Society* decision on the Final Rule – all while GYE grizzly bears remain illegally delisted and exposed to the perils accompanying the loss of federal protections. Request for Comments, Possible Effects of Court Decision on Grizzly Bear Recovery in the Coterminous United States, 82 Fed. Reg. 57,698 (Dec. 7, 2017) ("Request for Comments"); Federal Defendants' Memorandum in Support of Motion to Stay, Doc. No. 62 (Dec. 21, 2017).

A post-decisional public comment period cannot cure the fatal legal flaws apparent on the face of the Final Rule. Because FWS committed the exact same legal errors with grizzly bears as it did in the wolf delisting context, summary judgment on Count I of Plaintiffs' complaint (Doc. 1) is appropriate and this Court should vacate the Final Rule.

## II. BACKGROUND

### A. The Endangered Species Act

When Congress enacted the ESA, it found that "various species of fish, wildlife, and plants in the United States have been rendered extinct as a consequence of economic growth and development untempered by adequate concern and conservation" and sought "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(a)(1), (b); *id*. § 1532(3) (defining the term "conserve" to mean "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary"). The Supreme Court has recognized the ESA as the "'most comprehensive legislation for the preservation of endangered species ever enacted by any nation.'" *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 698 (1995) (quoting

*TVA v. Hill*, 437 U.S. 153, 180 (1978)). Central to its program of conservation is the principle that "preventive action to protect species be taken sooner rather than later." *Defenders of Wildlife v. Babbitt*, 958 F.Supp. 670, 680 (D.D.C. 1997).

The ESA provides a package of substantive protections designed to ensure the survival and recovery of endangered and threatened species. These include, *inter alia*, Section 4's direction to implement "recovery plans" to bring a species back from the brink of extinction, 16 U.S.C. § 1533(f); Section 7's restrictions on federal agency action that may adversely affect such species, *id.* § 1536; and Section 9's strict limits on the import, export, interstate sale, and "take" of such species, *id.* §§ 1533(d), 1538(a); 50 C.F.R. §§ 17.21, 17.31. The ESA defines "species" to include "any subspecies" of a species and, following a 1978 amendment to the ESA, "any distinct population segment of any species." 16 U.S.C. § 1532(16) (definition of "species"); Endangered Species Act Amendments of 1978, Pub. L. No. 95-632, 92 Stat. 3,751, 3,752 (Nov. 10, 1978) (amendment adding distinct population segment provision). FWS defines a "distinct population segment" as a segment of a larger population that is discrete - "markedly separated from other populations of the same taxon" - and significant. FWS, Policy Regarding the Recognition of Distinct Vertebrate Population Segments Under the Endangered Species Act, 61 Fed. Reg. 4,722, 4,725 (Feb. 7, 1996) ("DPS Policy"). These three entities—a species, subspecies, and a DPS—are the only entities that can be listed or delisted under the ESA, and all protections and prohibitions of the ESA are applied based on these listing designations.

When determining whether to add ("list") or remove ("delist") a species, subspecies or DPS from the list of threatened or endangered species, the ESA requires FWS to evaluate:

> (A)  the present or threatened destruction, modification, or curtailment of its habitat or range;

(B)    overutilization for commercial, recreational, scientific, or educational purposes;

(C)    disease or predation;

(D)    the inadequacy of existing regulatory mechanisms; or

(E)    other natural or manmade factors affecting its continued existence.

16 U.S.C. § 1533(a)(1). This is a disjunctive list and if the species is imperiled by any one factor, listing is justified and delisting is not. *See Sw. Center for Biological Diversity v. Babbitt*, 215 F.3d 58, 60 (D.C. Cir. 2000). "Delisting requires a determination that none of the above five factors threatens or endangers the species. Both listing and delisting determinations must be made 'solely on the basis of the best available scientific and commercial information regarding a species' status, without reference to possible economic or other impacts of such determination.'" *Greater Yellowstone Coal. v. Servheen*, 665 F.3d 1015, 1024 (9th Cir. 2011) (quoting 50 C.F.R. § 424.11(b)) ("*Greater Yellowstone Coal.*"). A delisting action necessarily requires a pre-existing listing pursuant to which all of these factors were applied to the entire listed entity.

## B. Grizzly Bear Protection Under the Endangered Species Act

Passage of the ESA was motivated in part by Congress' concern about the fate of grizzly bears (*Ursos arctos horribilis*) in the continental United States. *See TVA v. Hill*, 437 U.S. at 183-84 (1978) (citing ESA legislative finding that "the continental population of grizzly bears … is surely threatened" and "[o]nce [the ESA] is enacted, the appropriate Secretary … will have to take action to see that this situation is not permitted to worsen, and that these bears are not driven to extinction'") (quoting 119 Cong. Rec. 42,913 (1973)) (emphasis omitted). In 1975, in response to a petition submitted by Plaintiff FFA in 1974, FWS acted upon this well-founded concern and listed grizzly bears as threatened throughout the lower-48 states. Amendment Listing the Grizzly Bear of the 48 Coterminous States as a Threatened Species, 40 Fed. Reg.

31,734 (July 28, 1975); *see also* Final Rule, 82 Fed. Reg. at 30,508.[1] At that time, grizzly bears in the continental United States were reduced to under 2% of their formerly contiguous historic range and had suffered a population decline from 50,000 to under 1,000. *Greater Yellowstone Coal.*, 665 F.3d at 1020.

FWS has, since 1982, focused its grizzly bear recovery efforts on six ecosystems within the continental United States: (1) the GYE; (2) the Northern Continental Divide Ecosystem of north-central Montana; (3) the Cabinet-Yaak area of northwest Montana and northern Idaho; (4) the Selkirk Mountains area of northern Idaho, northeast Washington, and southeast British Columbia; (5) the North Cascades area of north-central Washington; and (6) the Bitterroot Ecosystem in the Bitterroot Mountains of western Montana and central Idaho. Final Rule, 82 Fed. Reg. at 30,508-09.

Of these six ecosystems – which are all included in the lower 48 listing entity – only the GYE has been proposed for delisting. In 2007, FWS published a final delisting rule that, like the current Final Rule, designated the GYE population as a DPS and removed it from the ESA's threatened species list. 72 Fed. Reg. 14,866 (Mar. 29, 2007). Conservation organizations successfully challenged that action in this Court, which vacated the delisting in 2009 in part because FWS had failed to account for the threat that the decline in whitebark pine seeds – a staple food source - posed to GYE grizzlies. *Greater Yellowstone Coal. v. Servheen,* 672 F. Supp. 2d 1105 (D. Mont. 2009). The Ninth Circuit affirmed this holding on appeal in 2011, in an

---

[1] At that time, Congress had not yet enacted the 1978 amendments to the ESA that, in relevant part, added the DPS provision to the ESA. Endangered Species Act Amendments of 1978, 92 Stat. at 3,752. The ESA then allowed listing of species, subspecies, and "any other group of fish or wildlife of the same species or smaller taxa in common spatial arrangement that interbreed when mature." Endangered Species Act of 1973, § 3(11), Pub. L. 93-205, 87 Stat. 884, 886 (Dec. 28, 1973); *see also Humane Society*, 865 F.3d at 591 n.2 (addressing pre-amendment listing of gray wolves in the lower-48 states).

opinion which chastised FWS for "tak[ing] a full-speed ahead, damn-the-torpedoes approach to delisting – especially given the ESA's policy of institutionalized caution" in light of the emergence of the whitebark pine issue. *Greater Yellowstone Coal.*, 665 F.3d at 1030 (internal citation omitted).

Following the Ninth Circuit's *Greater Yellowstone Coal.* decision, the delisting rule was vacated and GYE grizzly bears were returned to federally threatened status as part of the full lower-48 listing for grizzly bears. The delisting rule challenged in this case, proposed in March 2016 and finalized in June 2017, represents FWS' second attempt to designate and delist GYE grizzly bears as a DPS. Proposed Rule, 81 Fed. Reg. 13,174; Final Rule, 82 Fed. Reg. 30,502. The Final Rule addresses *only* the GYE grizzly bear population – explicitly stating that "consideration and analyses of grizzly bear populations elsewhere in the lower 48 States is outside the scope of this rulemaking." Final Rule, 82 Fed. Reg. at 30,546; *see also id.* at 30,552 ("[T]he management and potential status of other grizzly bear populations is outside the scope of this final rule."); *id.* at 30,624 ("This action is specific to the grizzly bear population in the GYE and, therefore, affects the legal status only of grizzly bears within the GYE…Therefore, consideration and analyses of grizzly bear populations elsewhere in the lower 48 States is outside the scope of this rulemaking.").

Plaintiffs filed the instant lawsuit on August 29, 2017. *See* Complaint for Declaratory and Injunctive Relief, *Humane Soc'y of the United States v. U.S. Fish and Wildlife Service*, CV 17-117-M-DLC (Doc. No. 1) ("Complaint"). Count I of Plaintiffs' Complaint alleged, *inter alia*, that "by failing to evaluate the recovery of all grizzly bears protected through the existing listing, and instead narrowing its inquiry to the recovery status of just one population within that existing listed entity, [FWS] has unlawfully ignored the impacts to the remainder of the listed subspecies

caused by delisting the GYE DPS." *Id.* ¶ 93. Further, Plaintiffs alleged that "FWS has failed to evaluate the resulting legal status of the remnant population of grizzlies, which no longer constitute a listable entity (i.e., a species, subspecies, or a DPS) under the ESA now that the GYE population has been excluded." *Id.* ¶ 94. These claims are based on the text, structure and purpose of the ESA, as confirmed by the D.C. Circuit in *Humane Society*, and are ripe for dispositive adjudication by this Court. 865 F.3d 585.

### C. *Humane Society v. Zinke* and The Post-Decisional Request for Comments

In *Humane Society*, the D.C. Circuit was presented with a delisting rule that sought to carve out an allegedly recovered "Western Great Lakes" ("WGL") population of gray wolves in Wisconsin, Minnesota, Michigan, and portions of North Dakota, South Dakota, Iowa, Illinois, Indiana, and Ohio from an existing lower-48 states listing. *Id.*, 865 F.3d at 594. In delisting wolves in the WGL region as a DPS, "the Service looked only at the characteristics of the Western Great Lakes segment in a vacuum, ignoring the second step of determining whether both the segment and the remainder of the already-listed wolves would have mutually independent statuses as species." *Id.*, 865 F.3d at 602. The D.C. Circuit held that carving out a DPS for delisting without addressing the ongoing legal status of the "remnant" of the originally listed entity subverted the text and purpose of both the ESA and FWS' own DPS Policy:

> The Endangered Species Act's text requires the Service, when reviewing and redetermining the status of a species, to look at the whole picture of the listed species, not just a segment of it…[W]hen a species is already listed, the Service cannot review a single segment with blinders on, ignoring the continuing status of the species' remnant. The statute requires a comprehensive review of the entire listed species and its continuing status. Having started the process, the Service cannot call it quits upon finding a single DPS.

*Id.* at 601.

The *Humane Society* opinion was issued on August 1, 2017 – after the Final Rule was published, but before the instant lawsuit was filed. FWS was clearly aware, however, of the impacts of *Humane Society v. Jewell* and the impending appellate decision on the GYE grizzly delisting rule: in both the Proposed Rule and the Final Rule, it stated that "[w]e recognize that our interpretation and use of the DPS policy to revise and delist distinct population segments has been challenged in [*Humane Society v. Jewell*]…Our rule was vacated by the District Court's decision. We respectfully disagree with the district court's interpretation of the DPS policy, and the United States has appealed that decision." Final Rule, 82 Fed. Reg. at 30,517; Proposed Rule, 81 Fed. Reg. at 13,190. Yet instead of heeding this sound federal court ruling or the precautionary principle mandated by the ESA, FWS again rushed forward to remove protections for this population of grizzly bears.

Although the D.C. Circuit affirmed the district court's vacatur of the delisting rule in *Humane Society* on August 1, FWS did not rescind the unlawful Final Rule delisting grizzly bears in the GYE, nor take any other steps to address the adverse ruling. Indeed, FWS took no action for four months. Then on December 7, 2017, it issued the Request for Comments, seeking public input on the legal question already before this Court of "whether the *Humane Society* opinion affects the GYE grizzly bear final rule and what, if any, further evaluation the Service should consider regarding the remaining grizzly bear populations and lost historical range in light of the Service's decision regarding the GYE grizzly bear." 82 Fed. Reg. at 57,699. The Request for Comments does not amend or rescind the Final Rule, which FWS expressly stated "will remain in effect during this review process." *Id*. Thus, this exploratory administrative action has no legal effect on the ripeness of the dispute before this Court.

### III.    STANDARD OF REVIEW

Review of delisting decisions brought pursuant to the ESA's citizen suit provision, 16 U.S.C. § 1540(g), is governed by the statutory mandates of the ESA and the standards for review of agency actions under the Administrative Procedure Act ("APA"), pursuant to which an agency action shall be set aside when arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706; *see also Greater Yellowstone Coal.*, 665 F.3d at 1023. "An agency action *must be reversed* when the agency has…entirely failed to consider an important aspect of the problem...." *Ctr. for Biological Diversity v. Zinke*, 868 F.3d 1054, 1057 (9th Cir. 2017) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*")) (emphasis added); *see also Pac. Coast Fed'n of Fishermen's Ass'n v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001). "The only question before [the Court] is whether the Service, in reaching its ultimate finding, 'considered the relevant factors and articulated a rational connection between the facts found and the choices made.'" *Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1145 (9th Cir. 2007) (quoting *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 841 (9th Cir. 2003)).

Summary judgment is "particularly applicable to cases involving judicial review of final agency action." *Save Our Cabinets v. U.S. Dep't of Agric.*, 254 F.Supp.3d 1241, 1249 (D. Mont. 2017). Although summary judgment in APA actions is ordinarily granted on the basis of an administrative record filed pursuant to 5 U.S.C. § 706, summary judgment motions may properly be granted before a record is certified on matters that "are limited to legal issues that do not depend on the administrative record." *California v. U.S. Bureau of Land Mgmt.*, 2017 WL 4416409, at *5 (N.D. Cal. Oct 4, 2017); *see also People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 194 F.Supp.3d 404, 409 (E.D.N.C. 2016) ("In APA cases… a court need

not wait for an administrative record to be compiled to decide a pure question of law."); *Animal Legal Defense Fund v. U.S. Dep't. of Agric.*, 789 F.3d 1206, 1224 n.13 (11th Cir. 2015) (summary judgment issued without administrative record where "there is no factual dispute").[2]

## IV.    ARGUMENT

### A.    FWS Failed to Consider the Legal Status of the Remnant Grizzly Bear Listing, in Violation of the ESA

The Final Rule must be set aside because, by FWS' own admission, it considers *only* the status of the GYE grizzly bear population – ignoring entirely the "remnant" grizzly bear population from which it has been carved (i.e., the remainder of grizzly bears in the lower 48 states). As a result, the Final Rule "entirely failed to consider" the status of grizzly bears outside the GYE and how the removal of ESA protections from the GYE population might further imperil the survival of other grizzly bears in the lower 48 who are threatened with extinction. *State Farm*, 463 U.S. at 43; Complaint, ¶¶ 93-94. Because these specific violations are conclusively demonstrated on the face of the Final Rule, summary judgment is appropriate now, as "[t]he [complete] administrative record would not be helpful to decide these issues and is not required." *California v. U.S. Bureau of Land Management*, 2017 WL 4416409 at *5.

The ESA only permits FWS to list "species" as threatened or endangered, with "species" defined as any species, subspecies, or DPS. 16 U.S.C. § 1532(16). Geographical or taxonomic groupings that do not fit this definition may not legally be listed under the ESA.[3] The D.C.

---

[2] Federal Defendants produced an initial Administrative Record on Jan. 5, 2018 that has not yet been made final. While Plaintiffs maintain that this record will show additional legal defects in the Final Rule as pled in their complaint, the issues of law raised in the instant motion may properly decided without the record, solely on the basis of the text of the Final Rule.

[3] *See, e.g.,* 80 Fed. Reg. 34,500 (June 16, 2015) (finding that the captive members of a species do not constitute a listable entity and memorializing FWS' policy that the DPS tool cannot lawfully be used to carve out arbitrary populations that have no biological basis); *Safari Club Int'l v.*

Circuit examined this issue in *Humane Society*, where FWS carved out a gray wolf DPS from an existing lower-48 states gray wolf listing. The court held that the ESA does not permit FWS to delist a DPS without consideration of the legal status of the remnant listing from which it is removed – regardless of whether or not the new DPS is, in a vacuum, recovered according to the ESA's listing factors. It explained that "[t]he Service cannot find that a population segment is distinct – in the Service's words, that it is severable because it is 'discrete' and 'significant' – without determining whether the remnant itself remains a species so that its own status under the Act will continue as needed." *Humane Society*, 865 F.3d at 600. Instead, Section 4 of the ESA directs the service to "make determinations…after conducting a review of the status of *the species*" as listed. 16 U.S.C. § 1533(b)(1)(A) (emphasis added); *see also id.* § 1533(c)(2)(A) (review must cover the "species included in a list"). As the D.C. Circuit correctly interpreted this provision, it "requires a comprehensive review of the entire listed species and its continuing status." *Humane Society*, 865 F.3d at 601. To do otherwise is to "delist an already-protected species by balkanization" and "circumvent the ESA's explicit delisting standards by riving an existing listing into a recovered sub-group and a leftover group that becomes an orphan to the law. Such a statutory dodge is the essence of arbitrary-and-capricious and ill-reasoned agency action." *Id*. at 603.

*Humane Society* is squarely applicable here. Like the gray wolf delisting rule, in issuing the Final Rule FWS failed to address the legal status of the remnant grizzly bear listing (the existing lower-48 listing minus the carved-out GYE DPS). There is no ambiguity on this point; the text of the Final Rule reiterates no fewer than three times that "consideration and analyses of

---

*Jewell*, 960 F.Supp.2d 17, 62 (D.D.C. 2013) (upholding FWS' policy of not using the DPS tool to differentially list captive members of a species from their wild counterparts).

grizzly bear populations elsewhere in the lower 48 States is outside the scope of this rulemaking." Final Rule, 82 Fed. Reg. at 30,546; see also *id*. at 30,552 ("[T]he management and potential status of other grizzly bear populations is outside the scope of this final rule."), 30,624 ("[C]onsideration and analyses of grizzly bear populations elsewhere in the lower 48 States is outside the scope of this rulemaking.").

Nothing elsewhere in the Final Rule contradicts these statements. Indeed, the only reference to the remnant grizzly population is the conclusory statement that "when this rulemaking takes effect, grizzly bears in the lower 48 States occurring outside of the boundary of the GYE DPS will remain listed as a threatened species under the Act," which FWS took to mean that "[t]herefore, consideration and analyses of grizzly bear populations elsewhere in the lower 48 States is outside the scope of this rulemaking." Final Rule, 82 Fed. Reg. at 30,624. But as the Court in *Humane Society* explained, the ESA requires exactly the opposite. Merely referring to the remnant's ongoing threatened status does not suffice; instead FWS must "make it part and parcel of its [DPS] analysis to ensure that the remnant, if still endangered or threatened, remains protectable under the Endangered Species Act." *Humane Society*, 865 F.3d at 601-02. This must include an analysis of "whether [the remnant] is either a subspecies or a segment" and a finding of either "how the [remnant]'s existing endangered status would continue" or "that the remnant [is] no longer endangered under the statutory listing criteria," otherwise the pre-existing legal protections for the remnant may be rendered meaningless. *Id*.

FWS thus cannot escape the conclusion that it "review[ed] a single segment" of the existing grizzly bear listing "with blinders on, ignoring the continuing status of the species' remnant." *Id.* at 601. In doing so, it impermissibly revised the ESA listing of the remnant by redefining it as "the lower-48 states minus the GYE DPS," turning it into an "orphan to the law,"

*id.*, that qualifies as neither a species, subspecies, nor DPS. 16 U.S.C. § 1532(16); *see also Humane Society*, 865 F.3d at 602 ("Certainly 'gray wolves outside the Western Great Lakes segment' have never been recognized as a taxonomic species."). As in *Humane Society*, the Final Rule – which delisted one DPS formerly included in the whole listed entity – "left the remnant of that already-statutorily-protected group in legal limbo." *Humane Society*, 865 F.3d at 602.

In short, the Final Rule admits on its face to circumventing the legal requirements of the ESA by baldly and incorrectly alleging that "consideration and analyses of grizzly bear populations elsewhere in the lower 48 States is outside the scope of this rulemaking." Final Rule, 82 Fed. Reg. at 30,546. These violations are identical to those found by the D.C. Circuit in *Humane Society*. Because the Final Rule "circumvent[s] the ESA's explicit delisting standards by riving an existing listing into a recovered sub-group and a leftover group that becomes an orphan to the law," it must be set aside as unlawful. *Humane Society*, 865 F.3d at 603.

### B. FWS Failed to Conduct an Analysis of the Final Rule on Threats to the Survival of the Remnant Grizzly Bear Listing, in Violation of the ESA

Further, FWS failed to consider the practical impact of the GYE DPS' delisting on the remnant, e.g. through application of the ESA's statutory listing factors. 16 U.S.C. § 1533(a)(1); HSUS Complaint ¶ 93. In addition to evaluating the legal status of the remnant post-delisting of the DPS, the ESA requires FWS "to look at the implications for both the segment and the remnant during the delisting… process" as part of its obligation "to look at the whole picture of the listed species, not just a segment of it." *Humane Society*, 865 F.3d at 601. Here, FWS expressly admits in the Final Rule that it conducted an analysis *only* of the GYE DPS in terms of the ESA's listing factors – the agency specifically chose *not to consider* how the removal of federal protections from that lower-48 listed entity would affect the application of those same factors to that remnant population. *See* Final Rule, 82 Fed. Reg. at 30,546, 30,552, 30,624. For

instance, the Final Rule acknowledges the benefits that the "movement of bears from other grizzly bear populations into the GYE grizzly bear population" would have "to [the GYE's] long-term persistence," 82 Fed. Reg. at 30518, but does not engage in the reciprocal analysis of the genetic value of bears dispersing *from* the GYE into outside grizzly bear populations, and how that genetic value may be reduced by the removal of federal protections for such bears.

Similarly, the Final Rule defends the "distinctness" of the GYE DPS in part on the grounds that it possesses "genetic or phenotypic divergence from the core population[], which may be central to the survival of the subspecies in the face of environmental changes," without accounting for the impact that delisting the GYE DPS would consequently have on the remnant population. Final Rule, 82 Fed. Reg. at 30,519 ("The extirpation of peripheral populations, such as the GYE grizzly bear population, is concerning because of the potential conservation value that peripheral populations can provide to the subspecies. Specifically, peripheral populations can possess slight genetic or phenotypic divergence from the core populations, which may be central to the survival of the subspecies in the face of environmental changes."). Because it failed to address the impact of delisting the GYE DPS on the genetic and other threats that face the remnant population, *see* Final Rule, 82 Fed. Reg. at 30,624. FWS has – as a matter of law – "entirely failed to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43.

### C.  The Final Rule Should be Vacated

The Final Rule should be vacated because here, as in *Humane Society*, "the failure to address the status of the remnant is fatal." *Humane Society*, 865 F.3d at 603. The APA, which governs judicial review of FWS' delisting decisions, *id.* at 595, provides by its plain text that a "reviewing court *shall…set aside* agency action, findings, and conclusions found to be" unlawful. 5 U.S.C. § 706(2) (emphases added). And the Ninth Circuit directs that "agency action

*must be reversed* when the agency has … entirely failed to consider an important aspect of the problem." *Ctr. for Biological Diversity v. Zinke*, 868 F.3d at 1057 (emphasis added); *see also Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.,* 265 F.3d 1028, 1034 (9th Cir. 2001); *Alsea Valley All. v. Dep't of Commerce*, 358 F.3d 1181, 1185 (9th Cir. 2004) (vacatur "normally accompanies a remand.").

In the ESA context, the ordinary remedy for an unlawful delisting decision is vacatur of the underlying rule. *See, e.g.*, *Greater Yellowstone Coal. v. Servheen*, 672 F.Supp.2d at 1126 ("Injunctive relief is the appropriate remedy for the violation of the ESA where the violation poses a threat of jeopardizing or eradicating a species.") (aff'd in relevant part by *Greater Yellowstone Coal.*, 665 F.3d 1015); *Defenders of Wildlife v. Sec'y, U.S. Dept. of the Interior*, 354 F.Supp.2d 1156, 1174 (D. Or. 2005); *Nat'l Wildlife Fed'n v. Norton*, 386 F.Supp.2d 553, 565 (D. Vermont 2005); *Humane Soc'y of the U.S. v. Kempthorne*, 579 F.Supp.2d 7, 9 (D.D.C. 2008). This comports with the Congress' intent that the ESA be implemented according to a policy of "institutionalized caution," as it is imperative that species on the brink of extinction are afforded necessary protection unless or until they are actually recovered as defined under the ESA. *TVA v. Hill*, 437 U.S. at 194 ("Congress has spoken in the plainest of words, making it abundantly clear that the balance has been struck in favor of affording endangered species the highest of priorities, thereby adopting a policy which it described as institutionalized caution.) (internal quotation omitted).

Defendants may argue that the pending Request for Comments somehow suffices to cure the legal defects identified in Count I of Plaintiffs' Complaint, and ask this Court to remand without vacatur – indeed, Defendants have already inappropriately sought a stay of the entire

litigation on such grounds (Doc. 61).[4] But granting FWS additional time to craft a post-hoc rationalization cannot alter the underlying legal infirmities of the Final Rule, because this Court's review is based on the administrative record underlying the final agency action published on June 30, 2017 and cannot be supplemented or otherwise affected by agency "considerations" that occur external to that rulemaking process. *See Sw. Center for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996) (judicial review of agency rulemaking confined to record at time decision was made); *see also State of N.J., Dep't. of Environmental Protection v. E.P.A.*, 626 F.2d 1038, 1050 (D.C. Cir. 1980) ("[P]ost hoc comment was not contemplated by the APA and is generally not consonant with it.").

Indeed, the *Humane Society* court considered exactly this question when it elected to vacate – and not merely remand – the WGL wolf delisting rule. Faced with identical legal errors to those that FWS has again committed here, the D.C. Circuit held that these flaws were "major shortcomings that go to the heart of the Service's delisting decision" which played a "serious and pervading role…in the agency's decision-making" such that "there [was] substantial doubt whether the Service chose correctly." *Humane Society*, 865 F.3d at 614-15. As a result, gray wolves in the WGL remain protected from take – including unsustainable trophy hunting – while FWS considers whether the remainder of wolves in that listed entity would be harmed by the removal of federal protections in that DPS. Grizzly bears deserve – and are legally entitled to – the same.

The *Humane Society* court also denied that vacatur would cause any disruptive consequences; its reasoning is applicable here. As with gray wolves, GYE grizzly bears have

---

[4] As detailed in Plaintiffs' opposition to Defendants' motion to stay (Doc. 84) it would not serve judicial economy to stay this litigation pending dilatory agency action – rather, Plaintiffs believe this motion for summary judgment should be ruled on expeditiously and ask that the Final Rule be vacated pending further agency action on this issue.

been listed under the ESA for decades, and have previously been the subject of a vacated delisting rule. There is no reason that "vacatur here would be any more disruptive than it was on the Service's last…failed occasion[]." *Humane Society*, 865 F.3d at 615. Similarly, "with respect to protecting domestic animals in the interim, federal regulations already permit depredation control" for grizzly bears. *Id.* Federal regulations already permit take of grizzly bears in self-defense and defense of others, and authorize federal, state, and tribal authorities to remove bears that threaten human safety, livestock, or crops. 50 C.F.R. § 17.40(b)(i). Vacating the rule would thus cause no undue disruptive consequences.

## V.    CONCLUSION

For the reasons stated above, Plaintiffs' request that this Court grant their Motion for Partial Summary Judgment, and set aside and vacate the Final Rule as contrary to the ESA and APA.

Date:   January 12, 2018

*/s/ Nicholas Arrivo*
Nicholas Arrivo
The Humane Society of the United States

Kristine Akland
Akland Law Firm, PLLC

Attorneys for Plaintiffs

CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief is 5,506 words, excluding the caption, table of authorities, table of contents, signature blocks and certificate of compliance. Under Local Rule 7.1(d), a table of contents and table of authorities are provided for this brief.

*/s/ Nicholas Arrivo*
Nicholas Arrivo
The Humane Society of the United States

Kristine Akland
Akland Law Firm, PLLC

Attorneys for Plaintiffs
