Timothy M. Bechtold
Bechtold Law Firm, PLLC
PO Box 7051
Missoula, MT 59807
406.721.1435
tim@bechtoldlaw.net

David A. Bell
Geiszler Steele, P.C.
619 SW Higgins Ave. Suite K
Missoula, MT 59803
406.541.4940
dbell@lawmissoula.com

Rebecca K. Smith
Public Interest Defense Center, P.C.
PO Box 7584
Missoula, MT 59807
406.531.8133
publicdefense@gmail.com

*Attorneys for Plaintiffs*
*in CV 17-123-M-DLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| CROW INDIAN TRIBE, et al., | ) |
| | ) Case No. CV 17-89-M-DLC |
| Plaintiffs, | ) |
| | ) (Consolidated with Case Nos. |
| v. | ) CV 17-117-M-DLC, |
| | ) CV 17-118-M-DLC, |
| UNITED STATES OF AMERICA, | ) CV 17-119-M-DLC, |
| et al., | ) CV 17-123-M-DLC, and |
| | ) CV 18-16-M-DLC) |
| Federal Defendants, | ) |
| | ) **PLAINTIFFS' BRIEF IN** |
| and | ) **SUPPORT OF MOTION FOR** |
| | ) **SUMMARY JUDGMENT** |
| STATE OF WYOMING, et al. | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |

# TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i–v

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-v

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

III. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

IV. STATUTORY FRAMEWORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3-4

V. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-22

   A. The Service's designation and delisting of a Greater Yellowstone Ecosystem
      Distinct Population Segment of grizzly bears is unlawful . . . . . . . . . . . . . . 4

   B. The Service's delisting determination and recovery conclusion are arbitrary
      and inconsistent with the best available science . . . . . . . . . . . . . . . . . . . . . .4

   C. The Service fails to conduct an adequate assessment of ESA delisting factors
      in violation of the APA and ESA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      1. The Service fails to review or consider lost historic range of the grizzly bear
         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4-8

      2. The Service fails to analyze historical range and the impacts of delisting on
         the remnant population in the Final Rule . . . . . . . . . . . . . . . . . . . . . . 8-10

      3. The Service ignores the extreme loss of the grizzly bear's historic range . .
         . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10-14

      4. The Service fails to consider the impacts of delisting Greater Yellowstone
         grizzly bears on the remnant population of grizzlies . . . . . . . . . . . . . 14-17

      5. The Service fails to consider the lack of existing regulatory mechanisms to
         protect connectivity poses an ongoing threat to grizzly bears . . .... . . 17-21

D. The Service fails to provide an opportunity for meaningful review of the final Conservation Strategy in violation of the ESA and APA . . . . . . . . . . . . . . . 21

VI. CONCLUSION AND REMEDY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITIES

## CASES

*Ctr. for Biological Diversity v. Jewell*,
248 F. Supp. 3d 946 (D. Ariz. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5-6

*Ctr. for Biological Diversity v. Zinke*,
868 F.3d 1054 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Defenders of Wildlife v. Jewell*,
176 F. Supp. 3d 975 (D. Mont. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Defenders of Wildlife v. Norton*,
258 F.3d 1136 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11, 12

*Defenders of Wildlife v. Norton*,
239 F. Supp. 2d 9 (D.D.C. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Defenders of Wildlife v. Norton*,
89 Fed. Appx. 273, 2004 WL 438590 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . . .12

*Defenders of Wildlife v. Salazar*,
729 F. Supp. 2d 1207 (D. Mont. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Envt'l. Def. Ctr., Inc. v. EPA*,
344 F.3d 832 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Humane Soc'y of the U.S. v. Zinke*,
865 F.3d 585 (D.C. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Mid Continent Nail Corp. v. U.S.*,
846 F.3d 1364 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto Ins. Co.*,
463 U.S. 29 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nat'l Ass'n of Home Builders v. Norton*,
340 F.3d 835 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.*,
265 F.3d 1028 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

*Tenn. Valley Auth. v. Hill*,
437 U.S. 153 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**STATUTES**

5 U.S.C. § 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21

5 U.S.C. § 706(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14, 17

16 U.S.C. § 1531(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 12

16 U.S.C. § 1532(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

16 U.S.C. § 1533(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

16 U.S.C. § 1533(a)(1)(A–E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16 U.S.C. § 1533(a), (c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16 U.S.C. § 1533(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

16 U.S.C. § 1533(c)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

16 U.S.C. § 1540(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

**REGULATIONS**

50 C.F.R. pt. 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

50 C.F.R. § 424.11(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

40 Fed. Reg. 31734 (July 28, 1975) (amending 50 C.F.R. pt. 17) . . . . . . . . . . .9, 11

79 Fed. Reg. 37578 (July 1, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 5-6, 13

81 Fed. Reg. 13174 (proposed Mar. 11, 2016) . . . . . . . . . . . . . .11, 17-18, 18, 20, 21

82 Fed. Reg. 30502 (June 30, 2017) (to be codified at 50 C.F.R. pt. 17) . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7 (n.1), 8-9, 11, 14, 16, 19, 21

83 Fed. Reg. 18737 (Apr. 30, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

**RULES**

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Local Rule 7.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Local Rule 56.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# I.  INTRODUCTION

Plaintiffs Alliance for the Wild Rockies ("AWR"), Native Ecosystems Council ("NEC"), Western Watersheds Project ("WWP") (collectively "Alliance"), with all other consolidated organizational Plaintiffs, challenge the U.S. Fish and Wildlife Service's ("Service") decision to designate the grizzly bears occupying the Greater Yellowstone Ecosystem ("GYE") a "distinct population segment" ("DPS") and remove that population from the list of threatened species under the Endangered Species Act ("ESA").  *See* Final Rule, Removing the Greater Yellowstone Ecosystem Population of Grizzly Bears from the Federal List of Endangered and Threatened Wildlife, 82 Fed. Reg. 30,502 (June 30, 2017) (to be codified at 50 C.F.R. pt. 17) (hereinafter "Final Rule").

Alliance hereby seeks summary judgment on all counts of their Complaint, because the designation and delisting of the Greater Yellowstone Distinct Population Segment violates the ESA: the Service may not designate a Distinct Population Segment solely for the purpose of delisting; the Service's delisting determination and recovery conclusion are arbitrary and inconsistent with the best available science; the Service failed to conduct an adequate assessment of ESA delisting factors in violation of the Administrative Procedure Act and ESA; and the Service failed to provide opportunity for meaningful public review of the Final Conservation Strategy.

## II.  STATEMENT OF FACTS

Pursuant to Local Rule 56.1, Plaintiffs' Joint Statement of Undisputed Facts is filed separately from this brief.

## III.  STANDARD OF REVIEW

Alliance brings this case under the ESA's citizen-suit provision, 16 U.S.C. §1540(g), and the judicial review provision of the Administrative Procedure Act ("APA"), 5 U.S.C. §706, which governs review of agency actions under the ESA. *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 840–41 (9th Cir. 2003). Under this standard, ESA listing decisions are set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Ctr. for Biological Diversity v. Zinke*, 868 F.3d 1054, 1057 (9th Cir. 2017).  In particular, "agency action must be reversed when the agency has . . . entirely failed to consider an important aspect of the problem." *Id.* (*quoting Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001)).

Summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Summary judgment is an appropriate mechanism to resolve challenges to the Service's determinations. *Defenders of Wildlife v. Jewell*, 176 F.Supp.3d 975, 997-98 (D. Mont. 2016).

# IV.   STATUTORY FRAMEWORK

The ESA is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978).  The law "[provides] a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. §1531(b). The Service must "use . . . all methods and procedures which are necessary to bring any [listed] species to the point at which the measures provided pursuant to this Act are no longer necessary." *Defenders of Wildlife v. Salazar*, 729 F.Supp.2d 1207, 1210 (D. Mont. 2010) (quoting 16 U.S.C. §1532(3)).

Decisions to list, reclassify, or delist a species under the ESA must be made by assessing the five categories of threats to a species set forth in Section 4(a)(1): (A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence. 16 U.S.C. §1533(a)(1). "Section 4(a)(1) of the Act provides the Secretary 'shall' consider the five statutory factors when determining whether a species is endangered, and Section 4(c) makes clear that a decision to delist 'shall be made in

accordance' with the same five factors." 16 U.S.C. §1533(a), (c). Thus, a species can only be delisted if, after examining threats to the species throughout its range, the Service reasonably concludes that the species has achieved recovery and is no longer threatened or endangered.

The Secretary and the Service must make determinations based "solely on the basis of the best scientific and commercial data available . . . after conducting a review of the status of the species and taking into account those efforts, if any, being made by any State or foreign nation . . . to protect such species." 16 U.S.C. §1533(b)(1)(A).

## V. ARGUMENT

### A. The Service's designation and delisting of a Greater Yellowstone Ecosystem Distinct Population Segment of grizzly bears is unlawful.

Alliance incorporates by reference arguments of the consolidated organizational Plaintiffs.

### B. The Service's delisting determination and recovery conclusion are arbitrary and inconsistent with the best available science.

Alliance incorporates by reference arguments of the consolidated organizational Plaintiffs.

### C. The Service failed to conduct an adequate assessment of ESA delisting factors in violation of the APA and ESA.

In addition to the arguments below, Alliance incorporates by reference arguments of the consolidated organizational Plaintiffs.

**1. The Service failed to review or consider lost historic range of the grizzly bear.**

The Service failed to consider the effects of loss of historical range as part of its threats analysis in the Greater Yellowstone Ecosystem grizzly bear Final Rule. The Service's five factor delisting analysis is properly completed by examining each of the ESA's Section 4(a)(1) threats against the fact that the grizzly bear remains extirpated across most of its historic range. 16 U.S.C. §1533(a)(1)(A–E). The Service failed to lawfully apply the statute in this case, and failed to properly review or consider lost historical range of the grizzly bear. Therefore, the agency "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983).

> Just because the Endangered Species Act does not compel the Service to interpret "range" to mean historical range, that does not mean that the Service can brush off a substantial loss of historical range as irrelevant to the species' endangered or threatened status. So—says the Service itself: The Service's Range Policy is explicit that a species may be "endangered or threatened throughout all or a significant portion of its current range *because* [a] loss of historical range is so substantial that it undermines the viability of the species as it exists today." Range Policy, 79 Fed. Reg. at 37,584 (emphasis added).

*Humane Soc'y of the U.S. v. Zinke*, 865 F.3d 585, 605 (D.C. Cir. 2017) (holding the Service's analysis of the status of the Western Great Lakes wolf wrongly omitted all

consideration of lost historical range). It should be noted here that the Service's Significant Portion of Range policy has been struck down by courts for rendering its use superfluous to the statute. *See, e.g., Ctr. for Biological Diversity v. Jewell*, 248 F.Supp.3d 946, 959 (D. Ariz. 2017) (vacating and remanding the Service's Final Policy on Interpretation of the Phrase 'Significant Portion of Its Range' in the Endangered Species Act's Definitions of 'Endangered Species' and 'Threatened Species,' 79 Fed. Reg. 37,578 (July 1, 2014)).

The Service has a statutory duty to consider the "present or threatened destruction, modification, or curtailment" of the grizzly bear's habitat or range in the 48 conterminous States. To avoid this statutory duty, the Service, in the Final Rule, carves up the conterminous range of the grizzly bear into smaller pieces under its flawed Distinct Population Segment strategy. The result of this action is that the Service's Final Rule creates significant gaps in the range of grizzly bears that share a common boundary in the 48 conterminous States. Another intended result by the Service is to reduce, improperly and illegally, the amount of the bear's range where the Service conducts its threats analysis. In so doing, the Service intentionally avoids the serious implications facing the grizzly bear range wide, including especially the threats to those bears attempting to disperse to and from the Greater Yellowstone Ecosystem to historic range in Montana, Idaho, and Wyoming.

The failure of the Service's Final Rule to properly evaluate historic range in this context prevents, and will prevent, grizzly bears from recovering their conterminous range. The removal of potentially recoverable range and suitable habitat between grizzly bear populations in the 48 conterminous States without evaluation undermines recovery of the bear.[1] The Service does not address the loss of conterminous range in the Final Rule. The Service is required to evaluate the significant gaps (major geographical areas) in relation to historic range that the original 1975 listing identified as a threat to the bear. It has not done so.

The Service knew that its delisting policies and determinations would impact the listed entity and the grizzly bear's historical range. In a 2014 briefing memorandum for the Director, the Service discussed revising the current listing for grizzly bears in the 48 States and their conterminous range and "how various geographic portions of the current listing might be impacted by such an action." AR FWS_Del Doc_52618. The Service's memorandum included an attached draft vision for grizzly bear recovery and a strategy intended to:

> (1) lay out a cohesive and coherent approach to addressing grizzly bear conservation needs, including protection and management, in accordance with the Act's statutory framework; (2) ensure that actions

---

[1] Only after forty years of federal protection are grizzly bears returning to lost historic range, with credible sightings in the Big Hole, the Elkhorn Mountains, and Mill Creek. 82 Fed. Reg. at 30,580 and 30,581. Despite evidence of bears dispersing, the Service considered dispersal capabilities only in the context of suitable habitat for grizzly bears in the Greater Yellowstone. *Id*. at 30,511. See also Geographic Scope of Recovery and Delisting Issues at 30,551.

taken for one grizzly bear population do not cause unintended consequences for other populations; and (3) be explicit about the role of historical range in the conservation of extant grizzly bear populations.

AR FWS_Del Doc_52626 at 9.

Knowing the "unintended consequences" and the "role of historical range" in recovering the bear did not stop the Service from proceeding to ignore the legal requirement it assumed when it listed the grizzly bear in the 48 conterminous States as threatened.

The Service failed to follow its statutory duty in the delisting process as reflected in the Final Rule. The Service failed to apply the statute lawfully in this case, and failed to properly review or consider lost historical range of the grizzly bear.

## 2. The Service fails to analyze historical range and the impacts of delisting on the remnant population in the Final Rule.

In designating the Greater Yellowstone grizzly bear Distinct Population Segment and deciding to delist that segment, the Service violates the ESA by failing to consider the loss of historic grizzly bear habitat and range within the lower 48 states and all historic range outside the Greater Yellowstone Distinct Population Segment. Instead, the Service relies on a much narrower analysis of the bears current distribution within the Greater Yellowstone Ecosystem.

The Service dismissed the required analysis:

Grizzly bear recovery in these portions of the species' historical range is unnecessary, because there is more than enough suitable habitat to support a viable and recovered grizzly bear population as set forth in the demographic recovery criteria. Therefore, additional recovery efforts in these areas are beyond what is required by the Act.

82 Fed. Reg. at 30,510–511.

This is contrary to the ESA and the reasoning of the original rule listing the grizzly bear. Upon listing the grizzly bear as threatened in 1975, the Service specifically found that the present or threatened destruction, modification, or curtailment of habitat or range was a major factor "affecting each of the remaining grizzly bear populations in each of the named ecosystems as well as in the remainder of the conterminous 48 States." Amendment Listing the Grizzly Bear of the 48 Conterminous States as a Threatened Species, 40 Fed. Reg. 31,734 (July 28, 1975) (amending 50 C.F.R. pt. 17). The Service must look at threats within the "range of the grizzly bear, which at one time was much of the western United States," and 40 years after listing, is still "confined to isolated regions in Montana, Idaho and Wyoming." *Id.* The Service cannot just set aside the evaluation of a major factor that threatens grizzly bears in the remainder of their range.

Recently, the D.C. Circuit Court vacated the Service's final rule removing ESA protections from gray wolves in the Western Great Lakes region because the Service failed to consider the severe loss of the gray wolves' historical range in its

delisting analysis and the impact of delisting Western Great Lakes wolves on the remnant population of gray wolves in the conterminous United States:

> In this case, the agency's analysis (i) wholly failed to address the effect on the remnant population of carving out the Western Great Lakes segment, and in doing so (ii) misapplied the Service's own discreteness and significance tests, and also (iii) turned its back on the implications of historical range loss. Those are major shortcomings that go to the heart of the Service's delisting decision.

*Humane Society*, 865 F.3d at 614.

In the grizzly bear Final Rule and delisting, the Service followed an historical range analysis identical to the failed gray wolf delisting analysis. It wholly failed to address historical range loss, misapplied its discreteness and significance test, and the effect of doing so on grizzly bears in the conterminous 48 States. Due to its flawed historical range analysis, the Service's final rule delisting the Greater Yellowstone Ecosystem grizzly bear Distinct Population Segment is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" because it suffers from these same "major shortcomings." 5 U.S.C. §706(2)(A); *Humane Society*, 865 F.3d at 614.

**3. The Service ignores the extreme loss of the grizzly bear's historic range.**

Under the Final Rule, the Service eliminates the grizzly bear's historic range from the Service's "significance" assessment in defiance of Ninth Circuit and D.C. Circuit court precedents. The Ninth Circuit has established that the "significant portion" of a species range analysis must include historic range, namely, "major

geographical areas in which [the species] is no longer viable but once was."
*Defenders of Wildlife v. Norton*, 258 F.3d 1136, 1145 (9th Cir. 2001). In the case of the grizzly bear, humans have eliminated grizzlies from more than 98 percent of their historic range in the lower 48 states (82 Fed. Reg. at 30,508) and the majority of the Greater Yellowstone Distinct Population Segment (*See* Range maps 81 Fed. Reg. 13,174 at 13,184 (proposed Mar. 11, 2016) and 82 Fed. Reg. at 30,504). The loss and impacts to historic range in the lower 48 was a major factor in the original ESA listing of the grizzly bear as threatened in 1975. *See* 40 Fed. Reg. at 31,734.

Here, the Service has long since forgotten the reasoning of its 1975 listing decision. In its Final Rule, the Service dismisses all analysis of the lower 48 historic range and grants only a dismissive and cursory review of historic range inside the lines drawn for the Greater Yellowstone Distinct Population Segment. (*See* 82 Fed. Reg. at 30,510, providing an example of the Service's circular approach to this question, repeated in numerous places within the Final Rule). The Service makes the error of analyzing historical range only to the extent that it can offer evidence whether a species in its current range inside the Greater Yellowstone Distinct Population Segment is likely to become endangered in the foreseeable future. *See* 82 Fed. Reg. at 30,624. The Service's analysis includes no consideration of the major geographical areas in which the grizzly bear was once viable—those areas described in the original grizzly bear listing and the impacts the decision will have

on the historic range. That searching inquiry is mandated by the ESA. *Defenders of Wildlife*, 258 F.3d at 1145.

The D.C. District Court has found the Service's approach here to be contrary to the ESA:

> Moreover, the Service's focus on only one region of the Lynx's population—the Northern Rockies/Cascades—to the exclusion of the remaining three-quarters of the Lynx's historical regions, is antithetical to the ESA's broad purpose to protect endangered and threatened species. 16 U.S.C. § 1531(b). Indeed, when Congress enacted the ESA in 1973, it expressly extended protection to a species endangered in only a "significant portion of its range."

*Defenders of Wildlife v. Norton*, 239 F.Supp.2d 9, 19 (D.D.C. 2002) (remedy vacated on other grounds in *Defenders of Wildlife v. Norton*, 89 Fed. Appx. 273, 2004 WL 438590 (D.C. Cir. 2004)).

The D.C. Circuit Court of Appeals has also held that the Service must consider the effect of a species' lost historical range on its status as an endangered or threatened species. *Humane Society*, 865 F.3d at 603 ("[B]ecause the Service categorically excluded the effects of loss of historical range from its analysis, we hold that the Service's conclusion about the ongoing threat to the Western Great Lakes segment within its current range was insufficiently reasoned, and therefore arbitrary and capricious"); *Id.* at 607 ("[B]ecause the indisputably vast loss of historical range is a salient factor in determining the endangered or threatened status of the Western Great Lakes segment and the remnant population within their current

ranges, the Service's wholesale failure to address that factor renders the Service's decision unreasoned, arbitrary, and capricious").

The Service cannot altogether ignore the scope of a listed species' lost historical range, or fail to consider the impacts of range contraction and limited range confinement on the species' overall survival and recovery. *Id*. at 606. Giving due consideration to a significant loss of historical range is "an important aspect of the problem" that the Service must undertake in making a delisting determination. *Id*. at 605. Fully considering the changes associated with a species' historic range is "critical" to conducting a "reliable assessment of sustainability" within a species' current range, which an ESA delisting determination demands. *Id*. at 606. In short, the Service must "contend with the implications of massive range loss for the species' endangered or threatened status within its current environment." *Id*.

As noted in *Humane Society*, and recognized in the Service's own Range Policy, range loss can:

> result in a species for which distribution and abundance is restricted, gene flow is inhibited, or population redundancy is reduced to such a level that the entity is now vulnerable to extinction or likely to become so within the foreseeable future throughout all or a significant portion of its range. Range Policy, 79 Fed. Reg. at 37,584.

*Humane Society*, 865 F.3d at 605–06.

The Service erred in the Final Rule delisting the Greater Yellowstone grizzly bear by failing to consider the significant loss of the grizzly bear's historic range.

The Service admits that grizzly bears have yet to return to nearly 98 percent of their historic range in the conterminous United States. 82 Fed. Reg. at 30,508. This represents an immense loss that the Service must duly consider. *Humane Society,* 865 F.3d at 606 (noting that disappearance of nearly 95 percent of the gray wolves' historic range is significant and deserving of due consideration). Yet, the Service fails to properly consider the impact of this severe loss of historic range on the survival and recovery of both the Greater Yellowstone grizzly bear and the remnant population of grizzly bears in the lower 48 States. The Service's failure to examine this critical aspect of the problem renders its decision "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### 4. The Service fails to consider the impacts of delisting Greater Yellowstone grizzly bears on the remnant population of grizzlies.

The Service determined that consideration of the impacts of delisting the Greater Yellowstone grizzly bear on the remnant population of grizzlies was not necessary for the Final Rule. "Consideration and analyses of grizzly bear populations elsewhere in the lower 48 States is outside the scope of this rulemaking." 82 Fed. Reg. at 30,546 (statement in accord at 30,624).

In *Humane Society*, the D.C. Circuit held that the Service must consider the impacts that delisting only a segment of a protected species will have on the overall remnant population:

The fundamental error in the Service's decision is that, in evaluating whether gray wolves in the Western Great Lakes region are a "distinct" population segment, the Service failed to address the impact that extraction of the segment would have on the legal status of the remaining wolves in the already-listed species.

*Humane Society*, 865 F.3d at 600. The D.C. Circuit noted that the Service must look at the "whole picture" when reviewing and reconsidering a listed species' protected status under the Act. *Id*. at 601 ("The [ESA's] text requires the Service, when reviewing and redetermining the status of a species, to look at the whole picture of the listed species, not just a segment of it."); *See also* 16 U.S.C. §1533(c)(2)(A) (requiring that the Act's mandatory five-year review cover the "species included in a list"). "[W]hen a species is already listed, the Service cannot review a single segment with blinders on, ignoring the continuing status of the species' remnant." *Humane Society*, 865 F.3d at 601. The Service cannot look only at the characteristics of a segment of a listed species "in a vacuum" when making a revised listing determination. *Id*. at 602 ("In designating the Western Great Lakes wolves as a distinct population segment, the Service looked only at the characteristics of the Western Great Lakes segment in a vacuum, ignoring the second step of determining whether both the segment and the remainder of the already-listed wolves would have mutually independent statuses as species"). Moreover, the Service cannot use the Distinct Population Segment tool "to circumvent the [ESA's] explicit delisting standards." *Id*. at 603 ("The Service cannot circumvent the [ESA's] explicit delisting

standards by riving an existing listing into a recovered sub-group and a leftover group that becomes an orphan to the law. Such a statutory dodge is the essence of arbitrary-and-capricious and ill-reasoned agency action." (citation omitted)). "The Service's power is to designate genuinely discrete population segments; it is not to delist an already-protected species by balkanization." *Id.* In short, the D.C. Circuit held that the Service's "failure to address the status of the remnant is fatal" to its final delisting rule. *Id.*

In the context of the Final Rule challenged here, the Service once again made this same fatal error. The Service looked only to the characteristics of the Greater Yellowstone Ecosystem grizzly bear Distinct Population Segment to arrive at the erroneous conclusion that the Greater Yellowstone grizzly bear could be delisted while ignoring analysis of the impact the decision would have on the recovery of the remnant population of grizzly bears in the conterminous United States. 82 Fed. Reg. at 30,546 ("This listing action is specific to the grizzly bear population in the Greater Yellowstone Ecosystem and, therefore, affects only the legal status of grizzly bears within the Greater Yellowstone Ecosystem … consideration and analyses of grizzly bear populations elsewhere in the lower 48 States is outside the scope of this rulemaking").

The Service examined the Greater Yellowstone Ecosystem grizzly bear Distinct Population Segment in a vacuum. "In the GYE DPS rulemaking action, the

Service designated a valid species, the GYE DPS, that is a segment of the 1975 listed entity, and then applied the five factors to the DPS." Review of 2017 Final Rule, Greater Yellowstone Ecosystem Grizzly Bears, 83 Fed. Reg. 18,737 at 18,738 (Apr. 30, 2018). The Service's entire analysis and threats assessment is focused solely on the Greater Yellowstone Distinct Population Segment and where the Service chose to draw the circle for the boundary of the segment.  The Service never looked at the big picture.  On the contrary, the Service erroneously applies the Distinct Population Segment tool to remove protections from only a segment of the listed population while failing to provide an analysis of the impact of that decision on the status of the grizzly bears outside of the Greater Yellowstone Ecosystem.  This error renders the final rule "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### 5. The Service fails to consider the lack of existing regulatory mechanisms to protect connectivity poses an ongoing threat to grizzly bears.

The best available science shows that "connectivity" — protections sufficient to ensure that migratory bears may disperse between the Greater Yellowstone Ecosystem grizzly bear population and other grizzly bear populations — is key to the long-term genetic health of grizzly bears. Throughout most of the delisting process, the Service openly agreed. The proposed rule noted that "[w]hile the current effective population size of approximately 469 animals is adequate to maintain genetic health in this population, 1 to 2 effective migrants from other grizzly bear

populations every 10 years would maintain or enhance this level of genetic diversity and therefore assure genetic health in the long term." 81 Fed. Reg. at 13,211. It accordingly stated a "regulatory commitment" that "Montana will manage discretionary mortality in the area between the GYE and the NCDE in order to retain the opportunity [for connectivity]" would "need to be in place prior to the issuance of a final rule." *Id.* at 13,204. But as it did with so many other reasoned state regulatory requirements laid out in the proposed rule, the Service abruptly and illegally abandons its position in the Final Rule.

The record evidence supporting the biological need for connectivity is overwhelming. Peer reviewers and public commenters point to a scientific consensus that "the long-term genetic health and viability of Yellowstone's grizzly bear population depends upon natural connectivity with grizzly bear populations farther north and west." AR FWS_Emails_008594–95 (Dr. David Mattson comments); *see also* AR FWS_Rel Docs_000200 (Dr. John S. Waller peer reviewer warning that "if 'managing for stability' means increasing allowable human caused mortality to the point where dispersal does not, or cannot, occur, then inter-ecosystem connectivity may not be attainable to the detriment of grizzly bear conservation."); AR FWS_LIT_009419 ("[G]ene flow from outside populations will be beneficial in avoiding inbreeding and the erosion of genetic diversity in the future."); AR FWS_LIT_010602 ("Grizzly bear range contraction in the

conterminous USA has left four fragmented populations, three of which remain along the Canada–USA border. A tenet of grizzly bear conservation is that the viability of these populations requires demographic linkage (i.e. inter-population movement of both sexes) to Canadian bears."); AR FWS_LIT_004928 ("[G]rizzly bear numbers in the GYE have increased since the mid 1980s…However, the population remains isolated and concerns for its genetic health continue."). The best available science indicates that corridors connecting the Greater Yellowstone population with the Northern Continental Divide population through Montana, and the Bitterroot ecosystem through Idaho's Centennial Range, are particularly crucial for the grizzly bear's recovery. AR FWS_LIT_004927–39; FWS_LIT_008964–81.

Rendering the Service's contrary policy decision all the more vexing, the record demonstrates that in the Final Rule, the Service agrees that connectivity is essential for the long-term health of the population. *See* 82 Fed. Reg. at 30,579 ("[C]onnectivity or lack thereof has the potential to impact this population's genetic fitness."); *see also* AR FWS_Emails_000917 (Interagency Grizzly Bear Study Team leader Frank van Manen commenting that Greater Yellowstone Ecosystem grizzly genetic health is "not very strong," that the population remains isolated, and that connectivity is desirable).

Instead of following the best available science, the Service proceeded to delist despite the absence of any "regulatory commitments," 81 Fed. Reg. at 13,204, to

protect connectivity in key corridors, or indeed *anywhere* within the Distinct Population Segment. Instead, the record indicates the Service bowed to political pressure to remove these requirements in the Final Rule. *See* AR FWS_Pub CMT 005498 (Idaho Fish & Game, Montana Fish, Wildlife & Parks, Wyoming Game & Fish Dept. "[I]t is *inappropriate* [emphasis added] for USFWS to impose additional requirements as to connectivity for delisting the GYE DPS."); AR FWS_Del Doc_019931 (Service: "What we requested of the states: Do not place discretionary hunting mortality in the linkage area between the NCDE and Yellowstone. What we got for an answer: Montana refused to commit to this."); Plaintiff's 20150925 1308_Email from Jeff Hagener, Director, Montana Fish, Wildlife & Parks to Matt Hogan, Deputy Regional Director, U.S. Fish & Wildlife Service, Virgil Moore, Director, Idaho Dept. of Fish & Game, and Scott Talbott, Director, Wyoming Game & Fish Dept., *GYE Grizzly Bear delisting - connectivity issue*, (Sept. 25, 2015): "As you all aware, this connectivity issue has come up several times over the past couple years discussion and MT has steadfastly said no to this concept…MT will retain complete authority to hunt grizzly bears within the designated DMA…and in those areas outside the DMA that also fall outside the limited discretionary mortality area."). But the ESA does not permit the Service to selectively disregard listing factors on a negotiated basis, or in response to pressure from other entities. The

Final Rule must be set aside because this determination was not made according to the best available science. 50 C.F.R. §424.11(d)(2).

Separately, the Service's shift in position on an issue of such fundamental importance *after* public comment had closed constitutes an independent APA violation. The APA forbids the adoption of Final Rules that contain such significant changes unless supplemental notice and opportunity to comment is provided. 5 U.S.C. §706. *See Envt'l Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 851 (9th Cir. 2003); *Mid Continent Nail Corp. v. U.S.*, 846 F.3d 1364, 1374 (Fed. Cir. 2017). No such opportunity for comment was made available here.

The Greater Yellowstone Ecosystem population of grizzly bears is a key generator of bears for dispersal to lost historic range. The Greater Yellowstone Ecosystem represents the southernmost reach of the taxon, and constitutes approximately half of the grizzly bears remaining in the entire 48 conterminous States. 81 Fed. Reg. at 13,192–193. There is recent evidence of bears dispersing to occupy that historical range in the Big Hole, the Elkhorn Mountains, and Mill Creek. 82 Fed. Reg. at 30,580, and 30,581. The record shows the Service rejected placing adequate regulatory mechanisms in its Final Rule to protect connectivity, thereby risking the genetic health of grizzly bears, and placing the recovery of grizzly bears in limbo.

**D. The Service fails to provide an opportunity for meaningful review of the final Conservation Strategy in violation of the ESA and APA.**

Alliance incorporates by reference arguments of the consolidated organizationl Plaintiffs.

## VI.    CONCLUSION AND REMEDY

The grizzly bear has made gains from the days of its original listing in 1975. However, the Service's current actions in delisting the Greater Yellowstone grizzly amount to balkanization of this critically important population of bears—and the Service fails to analyze the impacts of balkanization on recovery of the bears to their historic range.  For the foregoing reasons, and for the reasons incorporated from the Consolidated Plaintiff's briefs, Alliance requests that the Court declare the Service's decision to delist the Greater Yellowstone Ecosystem population of bears arbitrary, capricious, and/or contrary to law, and vacate and remand the decision to the Service.

Respectfully submitted this 13th day of June, 2018.

/s/ *David A. Bell*
David A. Bell
Geiszler Steele, P.C.

Timothy M. Bechtold
Bechtold Law Firm, PLLC

Rebecca K. Smith
Public Interest Defense Center, P.C.

Attorneys for Plaintiffs

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief is 5,291 words, in compliance with the 6,500 word limit set by Doc. 178, excluding the caption, signature blocks, table of contents, table of authorities, and certificate of compliance. Pursuant to Local Rule 7.1, a table of contents and table of authorities are included in this brief.

/s/ *David A. Bell*
David A. Bell
Geiszler Steele, P.C.

Timothy M. Bechtold
Bechtold Law Firm, PLLC

Rebecca K. Smith
Public Interest Defense Center, P.C.

Attorneys for Plaintiffs