Robert T. Bell
Reep, Bell, Laird & Jasper
PO Box 16960
2955 Stockyard Road
Missoula, MT 59808
Facsimile: 406-541-4101
Telephone: 406-541-4100
bell@westernmontanalaw.com
*Attorney for Defendant-Intervenors*
*Safari Club International and*
*National Rifle Association of America*
[Additional Counsel on Signature Page]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CROW INDIAN TRIBE; et al., | CV 17-89-M-DLC-JCL |
| Plaintiffs, | (Consolidated with Case Nos. |
| vs. | CV 17-117-M-DLC, |
| | CV 17-118-M-DLC, |
| UNITED STATES OF AMERICA; et al., | CV 17-119-M-DLC, |
| | CV 17-123-M-DLC), and |
| | CV 18-016-M-DLC |
| Federal-Defendants, | |
| and | **DEFENDANT-INTERVENORS'** |
| | **RESPONSE TO PLAINTIFFS'** |
| SAFARI CLUB INTERNATIONAL | **STATEMENT OF FACTS** |
| and NATIONAL RIFLE | |
| ASSOCIATION OF AMERICA, et al. | |
| Defendant-Intervenors. | |

In accordance with the Joint Motion to Set Briefing Schedule, ECF 176, in which Defendant-Intervenors agreed to file a joint response to Plaintiff's statement of undisputed facts, Defendant-Intervenors support and primarily rely on the Federal Defendants' (1) Statement of Undisputed Facts, ECF_204; and (2) Response to Plaintiffs' Statement of Facts in Support of Plaintiffs' Motions for Summary Judgment, ECF_205.[1]

In accordance with Local Rule 56.1(b), the individual Defendant-Intervenors further respond to Plaintiffs' Statement of Facts, ECF_187, as described below[2]:

***Threats facing grizzly bears in the Yellowstone region***

**Plaintiffs' Statement 57:** Grizzlies "are a conservation reliant species." FWS-LIT-005970; FWS-Del-Em-00087791. "A conservation reliant species is defined as: 'Species that can maintain a self-sustaining population in the wild only if ongoing management actions with proven effectiveness are implemented." FWS-Del-Em-00087791.

---

[1] Defendant-Intervenors are Safari Club International and the National Rifle Association of America ("SCI/NRA"); State of Montana, and Montana Department of Fish, Wildlife and Parks; State of Wyoming; State of Idaho; Sportsmen Alliance Foundation and Rocky Mountain Elk Foundation ("SAF/RMEF"); and Wyoming Farm Bureau Federation, Wyoming Stock Growers Association, Charles C. Price, and W&M Thoman Ranches LLC ("Ranchers").

[2] While all Defendant-Intervenors join the general concurrence with the Federal Defendants' Statement of Facts and Response, each Defendant-Intervenor joins in the specific responses only to the extent indicated below.

**Federal Response:** Undisputed.

**Idaho, Wyoming, and Ranchers' Further Response:** Partially disputed. Notably, the literature reference regarding "conservation reliant species" recommends against perpetual requirements and for "necessary management actions as long as necessary" (Scott et al. 2005, p. 384). FWS_LIT:011585. This same literature reference, as well as a more updated paper from the same author, posits that conservation reliant species are simply those requiring conservation management post-delisting (Scott et al. 2005, p. 384, Scott et al. 2010, p. 92). FWS_LIT:0115856; FWS_Pub CMT:005489.

### *Recreational trophy hunting*

**Plaintiffs' Statement 116:** Grizzly bears that travel inside or remain inside the Yellowstone grizzly segment boundary may now be subject to recreational hunting, as authorized by the states of Montana, Wyoming, and Idaho. 82 Fed. Reg. 30,528. Recreational hunting of grizzlies in the Yellowstone region will increase mortality levels above and beyond the already high "background" levels. 81 Fed. Reg. at 13,203 (calculating number of additional mortalities allowed for trophy hunters).

**Federal Defendants' Response:** Partially disputed. Private citizens may hunt grizzly bears in the Greater Yellowstone Ecosystem if the background

mortality rate is under the allowable limit, if any hunting quota has not been met, and if they have a hunting license issued by State or Tribal wildlife agencies, following guidance in the Tri-State Memorandum of Agreement. 82 Fed. Reg. at 30528.

**SCI/NRA, SAF/RMEF, Idaho, and Wyoming's Further Response:** The Chao2 estimator generates a low population estimate because it only factors in bears that are actually seen. 81 Fed. Reg. 13174, 13187 (Mar. 11, 2016); FWS_Rel Docs:005171; FWS_Rel Docs:004918. Therefore, any mortality limitations, including hunting, that are based on the Chao2 estimator will be correspondingly conservative. *Id.* Further, as FWS found, much of the hunting mortality will be compensatory rather than additive. "[W]e believe many of these [hunting] mortalities would replace management removals," i.e. a substantial portion of the bears that will be taken by the public engaged in regulated hunting are bears that are at risk for being destroyed following livestock depredation or other human conflict incidents. FWS_Rel Docs:001521. "Hunting can be used as a compensatory mortality source, targeting bears that would otherwise be removed by management action." FWS_Rel_Docs:001522. Hunting will be "carefully controlled and would be unlikely to affect population dynamics." *Id.*

**Plaintiffs' Statement 117:** The Service's June 30, 2017 final rule does not restrict where the states of Montana, Wyoming, and Idaho may allow recreational hunting of grizzly bears outside of National Parks. 82Fed. Reg. 30,531 and 30,533. Recreational hunting may be allowed on lands immediately adjacent to Yellowstone and Grand Teton National Parks. 82 Fed. Reg. 30,531 and 30,533. There will be no buffers to protect bears near the boundaries of Yellowstone National Park and the majority of Grand Teton National Park. The National Park Service raised concerns about hunting next to our National Parks. FWS-Pub-Cmt-004143. Historic data reveals the National Park Service's concerns were justified because hunting routinely occurred immediately adjacent to Yellowstone National Park, pre-listing. FWSDel-Em-87913; FWS-Del-Em- 87914 (explaining why the National Park Service is "so concerned" with attached map depicting grizzly mortalities from trophy hunting immediately adjacent to Yellowstone from 1959-1974).

**Federal Defendant's Response:** Disputed. Within the DMA, federal, state, and tribal entities "will manage total mortality to ensure all recovery criteria continue to be met." 82 Fed. Reg. at 30531.

**Idaho and Wyoming's Further Response:** Yellowstone National Park and Grand Teton National Park together encompass vast areas, larger than the states of Delaware and Rhode Island combined. Yellowstone National Park alone

encompasses 2,221,772 acres (3,472 square miles). FWS_LIT:017728; *see* Final

Rule, 82 Fed. Reg. 30,504. As noted by the final rule, the average home range for

female bears is approximately 81 square miles, and individual bear ranges may

overlap. Final Rule, 82 Fed. Reg. 30,505. The concerns stated in referenced Park

Service Comment did not relate to concerns with the recovered status of the

Yellowstone grizzly population; instead they referenced economic impacts and

other human social factors (citing the attraction and related regional economic

benefits of viewing grizzly bears in the parks in asking that harvest outside the

Parks be conducted "in a manner that: 1) respects the NPS mission; 2) protects

regional economic benefits and the enjoyment of bear watching; 3) reduces the

risks associated with wounded bears entering NPS units; and 4 ) limits the

likelihood that well-known or transboundary bears will be harvested."

FWS_PubCMT:004141.

### The 2016 Conservation Strategy & Tri-State Memorandum of Agreement

**Plaintiffs' Statement 142:** The 2016 Conservation Strategy formally

incorporates a Memorandum of Understanding Detailing Agency Agreement to

Implement the Conservation Strategy ("Tri-State Memorandum of Agreement") as

signed by the federal and state agencies implementing the plan. FWS-LIT-016290–

91.

**Federal Defendants' Response:** Undisputed.

**Idaho's Further Response:** For clarification, the referenced Memorandum of Understanding is the Agreement to Implement the "regulatory mechanisms, interagency cooperation, population and habitat management and monitoring and other provisions of the Conservation Strategy…:" FWS_Rel Docs:002293-4. It is different than the Memorandum of Agreement referred to in various briefs as the "Tri-State Memorandum of Agreement" or "Tri-State Agreement," which is presented in Appendix O of the Conservation Strategy. FWS_Rel Docs:002125-37.

**Plaintiffs' Statement 151:** This issue relating to the final 2016 Conservation Strategy's lack of assurance for recalibration if a new population estimation method is adopted, was repeatedly raised as a concern by FWS, National Park Service, Peer Reviewers, and public commenters, as well as members of the IGBST. *See e.g.* FWS-Del-Doc-011341 (noting that the states' changes to the draft Conservation Strategy regarding recalibration "says no matter what method is used to estimate population size, [the states] will manage down to 600 or so bears. This is completely unacceptable and will not pass peer review or the red face test. Chris [Serveen, (former grizzly bear recovery coordinator)]."); FWS-Emails-016689 (noting Service's concerns with states' recalibration language and suggesting alternatives); FWS-Emails-019305 (IGBST suggesting language on

recalibration and noting that "[d]etermining the correlation or correction between the model-averaged Chao2 and any new estimation method is critical to maintain the population at the 2002-2014 average."); FWS-Emails-025504 (National Park Service official expressing concern with state's recalibration position: "We firmly believe that we would need to recalibrate the minimum population threshold if a new method results in a new higher population estimate."). The Service's Director even expressed his concern that the states refused to allow adequate recalibration language to be included in the final 2016 Conservation Strategy. *See* FWS-Emails-008546 (former Director Ashe stating: "It is much clearer, and frankly scientifically warranted, to just state clearly if the population estimator is changed we will recalibrate. Why the states are unwilling to make this commitment, frankly, is quite concerning."); *see also* FWS- Emails-019333 (State of Montana official noting the recalibration issue is "a very contentious issue between the states and [Service] that was resolved at upper levels by agreeing to wording referencing collaboration and adaptive management" and that an effort to "go back on this agreement" would "likely be detrimental to the [Conservation Strategy] and set us back a long ways.").

**Federal Defendant's Response:** Partially disputed. FWS_Emails_016689 addresses developed site standard, not population estimate.

**Idaho and Wyoming's Further Response:** Partially disputed. Although Idaho does not dispute that documents contain an individual federal employee's stated words, Idaho disputes their accuracy and contents. The record does not support the bald conjecture that the "states will manage down to 600"; to the contrary, the record is counter to this statement. *E.g,*. Final Rule, 82 Fed.Reg. 30,545 ("Because the signatory agencies to the 2016 Conservation Strategy are the same agencies that have been managing grizzly bear habitat, population, and monitoring of the last 40 years, the management transition would be minimal"). Other documents indicate this concern stemmed from public perception. In the words of a National Park representative, "the core of the issue is a public demand to know what will happen if the population estimate becomes much higher based on a new model." FWS_Emails:016317-18.

**Plaintiffs' Statement 153.** The Tri-State Memorandum of Agreement commits no funding to any grizzly bear management from any signatory State, and any State may withdraw entirely from the Tri-State Memorandum of Agreement with 180 days' written notice to the other States. FWS-Rel-Docs-001299.

**Federal Defendants' Response:** Partially disputed. The Memorandum of Agreement is not a vehicle for funding commitments as those are done by appropriations.

**Idaho and Wyoming's Further Response:** Partially disputed. As noted by Federal Defendants, funding of commitments is through appropriations. In addition, the federal and state agencies signed a Memorandum of Understanding Detailing Agency Agreement to Implement this Conservation Strategy, which includes the statement: "Funding of this MOU is subject to approval and appropriation by approved state and federal entities. All agencies will take appropriate steps to seek funding to implement [the 2016 Conservation Strategy]." FWS_Rel Docs:002293-4.

*Mortality Limits*

**Plaintiffs' Statement 166.** The final rule states that under the Conservation Strategy, "[a]ny mortality that exceeds allowable total mortality limits in any year will be subtracted from that age/sex class allowable total mortality limit for the following year." FWS-Rel- Docs-001465. But both Wyoming and Idaho's bear management plans state that only "*hunting* mortality that exceeds total mortality limits" will count against the following year's limit. FWSLIT-005472 (Idaho Proclamation governing grizzly bear management), FWS-LIT-016942 (Wyoming Grizzly Bear Management Regulation) (emphasis added). Thus, in Wyoming and Idaho, where the majority of grizzly bears live and human-bear conflicts occur,

conflict mortality may exceed the mortality limit without reducing the mortality available in the following year. *See* FWS-LIT-005472, 016942.

**Federal Defendants' Response:** Partially disputed. FWS recognizes the discrepancy between the Idaho Proclamation and Wyoming Grizzly Bear Management Regulation on the one hand and the Memorandum of Agreement between Wyoming, Montana and Idaho on the other hand. However, the Memorandum of Agreement plainly states that if "the population is less than 600, the Parties will not allow discretionary mortality unless necessary to address human safety issues." FWS_Rel_Docs_001296. The Memorandum of Agreement goes on to say that, "[a]t any population level greater than 600, if total allowable independent male or female mortality is exceeded, the number exceeding the total allowable mortality will be subtracted from the next year's discretionary mortality available for harvest for that gender." *Id.*

**Idaho's Further Response:** Partially disputed. Idaho would not characterize the difference in wording between Idaho's Proclamation and that in the Memorandum of Agreement between Wyoming, Montana, and Idaho as a "discrepancy." Idaho's Proclamation is the administrative vehicle that relates to setting seasons and related limits on the public take of fish and wildlife. *See* Idaho Code 36-105(3). As such, the Proclamation properly speaks to hunting mortality. The Federal Defendants properly identify the Tri-State Memorandum, as signed by

the Idaho Department of Fish and Game and the Idaho Fish and Game

Commission, as containing the commitment that [Idaho, Montana, and Wyoming]

"will not allow discretionary mortality unless necessary to address human safety

issues." ECF_205:140.

**Plaintiffs' Statement 169.** The Service expressed their concern with

including mortality limits that effectively allow for a declining population. FWS-

Del-Doc-011341 ("We have gone as far as we can go with almost nothing in return

from the states. We have allowed managed population decline and they have not

added one thing from the specific management responses table we sent them in the

framework. They want to hunt down to 600, be able to exceed mortality limits

without any response whatsoever unless the population is below 674, and manage

down to 600 or so no matter what method is used to count bears."); *See also* FWS-

Del-Em-00000122522–23.

**Federal Defendants' Response:** Partially disputed. FWS employee cited

expressed those concerns. However, FWS's consideration of the best available

science is reflected in the 2017 Rule.

**Idaho and Wyoming's Further Response:** Partially disputed. Although

Idaho does not dispute that documents contain an individual federal employee's

stated words, Idaho disputes their accuracy and contents. The record does not

support the bald conjecture that the "states will manage down to 600" or "hunt down to 100"; to the contrary, the record is counter to this statement. *E.g,.* Final Rule, 82 Fed.Reg. 30,545 ("Because the signatory agencies to the 2016 Conservation Strategy are the same agencies that have been managing grizzly bear habitat, population, and monitoring of the last 40 years, the management transition would be minimal").

### *Lacking Remnant Population Analysis*

**Plaintiffs' Statement 170:**  In the final rule, the Service designated the Yellowstone region grizzly bear population as a distinct population segment ("segment") and removed it from the list of threatened species under the ESA. FWS-Rel-Docs-001436. In so doing, the Service recognized that the U.S. Federal District Court for the District of Columbia had disapproved an identical use of the ESA's distinct population segment language in the case of *Humane Society of the United States v. Jewell*, 76 F. Supp. 3d 69 (D.D.C. 2014), but stated that "[w]e respectfully disagree with the [D.C.] district court's interpretation of the [distinct population segment] policy." FWS-Rel-Docs-001450.  Further, FWS in the final rule explicitly and repeatedly declined to consider the status of the already listed grizzly bear entity, the lower-48 grizzly population, or the impact of its Yellowstone grizzly segment delisting decision on the status or conservation of

that entity, stating that "consideration and analyses of grizzly bear populations elsewhere in the lower 48 States is outside the scope of this rulemaking." FWS-Rel-Docs-001479; *accord* FWS-Rel-Docs- 001485, 001557.

**Federal Defendants' Response:** Disputed. Plaintiffs imply that FWS cannot identify a distinct population segment in an already-listed species and then delist that distinct population segment and this is incorrect. The D.C. Circuit determined that the "Service permissibly concluded that the Endangered Species Act allows the identification of a distinct population segment within an already-listed species, and further allows the assignment of a different conservation status to that segment if the statutory criteria for uplisting, downlisting, or delisting are met." *Humane Soc'y of U.S. v. Zinke*, 865 F.3d 585, 600 (D.C. Cir. 2017).

**SCI/NRA, Wyoming, and Ranchers' Further Response:** Disputed. Plaintiffs assert that the Yellowstone grizzly Segment delisting is "an identical use of the ESA's distinct population segment language [as] in the case of *Humane Society of the United States v. Jewell*, 76 F. Supp. 3d 69 (D.D.C. 2014)." SCI/NRA dispute this assertion as there are legal and factual differences between the two delistings. Plaintiffs further assert that "FWS in the final rule explicitly and repeatedly declined to consider the status of the already listed grizzly bear entity, the lower-48 grizzly population, or the impact of its Yellowstone grizzly

segment delisting decision on the status or conservation of that entity." SCI/NRA dispute this assertion as the FWS considered the status of the other populations in numerous ways, including during the decades-long management of all these populations under the ESA. *See, e.g.,* 82 Fed. Reg. at 30503 col. 1; *id.* at 30546 col. 2; *id.* at 30623, col. 2; *id.* at 30623-24, col. 3 – col. 1; *id.* at 30558-59, col. 3 – col. 1; *id.* at 30551-52, col. 3 – col. 1; *id.* at 30508-09, col. 3 – col. 1; *id.* at 30517; FWS_Rel_Doc:1680; FWS_Rel_Doc:2425; FWS_Rel_Doc:5826; FWS_Del_Doc:9684; FWS_Del_Doc:9693; FWS_Del_Doc_52870; Federal Defendants' Response to Plaintiffs' Statement of Facts, ECF_205:¶¶ 25-45.


**Plaintiffs' Statement 171:** Approximately one month after the Service issued the final rule, the U.S. Circuit Court of Appeals for the District of Columbia affirmed the judgment of the D.C. district court in the *Humane Society* case. *Humane Soc'y of U.S. v. Zinke*, 865 F.3d 585 (D.C. Cir. 2017); *see also* 82 Fed. Reg. 57,698, 57,698 (Dec. 7, 2017).

**Federal Defendants' Response:** Undisputed.

**SCI/NRA, Wyoming, and Ranchers' Further Response:** Partially disputed. As Federal Defendants explained in their response to Paragraph 170 and elsewhere in their Response, the D.C. Circuit only affirmed the district court in part, and reversed the legal conclusion that the FWS lacked authority to designate a

Segment for purposes of delisting. As the Federal Defendants explained: "[t]he D.C. Circuit determined that the 'Service permissibly concluded that the Endangered Species Act allows the identification of a distinct population segment within an already-listed species, and further allows the assignment of a different conservation status to that segment if the statutory criteria for uplisting, downlisting, or delisting are met.' *Humane Soc'y of U.S. v. Zinke*, 865 F.3d 585, 600 (D.C. Cir. 2017)"; *see also* Federal Defendants' response to Plaintiff Aland's paragraph 19, ECF_205:159-160.

**Plaintiffs' Statement 173:** The Service ultimately concluded its post-hoc review of the final rule on April 30, 2018, when it published in the Federal Register a "determination" affirming the Yellowstone grizzly segment delisting notwithstanding the *Humane Society* ruling. 83 Fed. Reg. 18,737 (Apr. 30, 2018). However, nowhere in this post-hoc "determination" did FWS address important questions regarding the Yellowstone grizzly segment delisting that are highlighted by the *Humane Society* ruling, including whether the lower-48 grizzly population minus the Yellowstone grizzly segment remains a listable entity, or whether all remaining grizzly recovery areas in the lower-48 might be independently listable as distinct population segments. *See generally* 83 Fed. Reg. at 18,737–43.

**Federal Defendants' Response:** Disputed. This was not a post-hoc determination.

**SCI/NRA, Wyoming, and Ranchers' Further Response:** Disputed. The FWS's Regulatory Review analyzed the effect of delisting the Yellowstone grizzly Segment on the lower-48 entity (*i.e.,* the other populations). 83 Fed. Reg. 18737-43. In addition, the FWS extensively analyzed this issue as part of the delisting, as explained above in response to paragraph 170.

DATED this 25th day of July, 2018.

                     Respectfully submitted,

                     /s/Robert T. Bell
                     Robert T. Bell
                     Reep, Bell, Laird & Jasper
                     PO Box 16960
                     2955 Stockyard Road
                     Missoula, MT 59808
                     Facsimile: 406-541-4101
                     Telephone: 406-541-4100
                     bell@westernmontanalaw.com

                     *Attorney for Defendant-Intervenors Safari*
                     *Club International and National Rifle*
                     *Association of America*

                     /s/ Douglas S. Burdin
                     Douglas S. Burdin (D.C. Bar. No. 434107)*
                     501 Second Street NE
                     Washington, D.C. 20002
                     Facsimile: 202-543-1505
                     Telephone: 202-543-8733
                     Email: dburdin@safariclub.org

*Attorney for Defendant-Intervenor Safari Club International*

/s/ Michael T. Jean
Michael T. Jean (MI Bar No. P76010)*
11250 Waples Mill Road
Fairfax, VA 22030
Facsimile: 703-267-1164
Telephone: 703-267-1158
Email: mjean@nrahq.org
* Admitted Pro Hac Vice

*Attorney for Defendant-Intervenor National Rifle Association of America*

/s/ Erik Petersen (with permission)
Erik E. Petersen, WSB No. 7-5608
D. David DeWald, WSB No. 7-5538
Senior Assistant Attorneys General
Wyoming Attorney General's Office
2320 Capitol Avenue
Cheyenne, WY  82002
(307) 777-6946 (phone)
(307) 777-3542 (fax)
erik.petersen@wyo.gov
david.dewald@wyo.gov

*Attorneys for Defendant-Intervenor State of Wyoming*

/s/ James D. Johnson (with permission)
James D. Johnson
WILLIAMS LAW FIRM, P.C.

LAWRENCE G. WASDEN
ATTORNEY GENERAL
STATE OF IDAHO
Steven W. Strack
  *Specially Admitted*
Kathleen Trever

 *Specially Admitted*
Deputy Attorneys General
Natural Resources Division

*Attorneys for Defendant-Intervenor State of Idaho*

/s/ William A. Schenk (with permission)
William A. Schenk
Special Assistant Attorney General
Agency Legal Counsel
Montana Department of Fish, Wildlife and Parks
PO Box 200701
Helena, MT  59620-0701
Telephone: 406-444-3312
Email: bschenk@mt.gov

*Attorney for Defendant-Intervenors State of Montana and Montana Department of Fish, Wildlife and Parks*

/s/ James H. Lister (with permission)
James H. Lister*
Birch Horton Bittner and Cherot, P.C.
1100 Connecticut Ave., N.W., Suite 825
Washington, D.C.  20036
Telephone: (202) 659-5800
Facsimile:  (202) 659-1027
Email: jlister@dc.bhb.com
*Admitted Pro Hac Vice*

*Attorney for Sportsmen's Alliance Foundation and Rocky Mountain Elk Foundation*

/s/ Cody J. Wisniewski (with permission)
Cody J. Wisniewski* (CO Bar No. 50415)
MOUNTAIN STATES LEGAL
FOUNDATION

2596 South Lewis Way
Lakewood, CO 80227
Phone: (303) 292-2021
Fax: (303) 292-1980
cody@mountainstateslegal.com
*Admitted Pro Hac Vice*

*Attorney for Defendant-Intervenor Wyoming Farm Bureau Federation, Wyoming Stock Growers Association, Charles C. Price, and W&M Thoman Ranches LLC*

**CERTIFICATE OF SERVICE & COMPLIANCE**

I hereby certify that on July 25, 2018, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF System, which will send

notification of such filing to the attorneys of record.

/s/ Douglas S. Burdin
Douglas S. Burdin (D.C. Bar. No. 434107)*
501 Second Street NE
Washington, D.C.  20002
Facsimile: 202-543-1505
Telephone: 202-543-8733
Email:  dburdin@safariclub.org
*Attorney for Defendant-Intervenor Safari*
*Club International*

* Pro Hac Vice granted.