[Submitted by:]

Timothy J. Preso
Joshua R. Purtle
Earthjustice
313 East Main Street
Bozeman, MT 59715
(406) 586-9699 | Phone
(406) 586-9695 | Fax
tpreso@earthjustice.org
jpurtle@earthjustice.org

*Counsel for Plaintiffs Sierra Club, National Parks Conservation Association, and Center for Biological Diversity, and Local Counsel for Plaintiff Northern Cheyenne Tribe*

Beth Baldwin
Ziontz Chestnut
2101 Fourth Avenue, Suite 1230
Seattle, WA 98121
(206) 448-1230 | Phone
(206) 448-0962 | Fax
bbaldwin@ziontzchestnut.com

*Counsel for Plaintiff Northern Cheyenne Tribe*

(additional counsel listed on signature page)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CROW INDIAN TRIBE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, et al., <br><br> Federal Defendants, <br><br> and <br><br> STATE OF WYOMING, et al. <br><br> Defendant-Intervenors. | Case No. CV 17-89-M-DLC <br><br> (consolidated with Case Nos. CV 17-117-M-DLC, CV 17-118-M-DLC, CV 17-119-M-DLC, and CV 17-123-M-DLC) <br><br> **BRIEF IN SUPPORT OF ORGANIZATIONAL PLAINTIFFS' JOINT MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [EXPEDITED RULING REQUESTED]** |

Plaintiffs in Case Nos. 17-89 (Crow Indian Tribe, et al.), 17-117 (Humane Society of the United States, et al.), 17-118 (WildEarth Guardians), 17-119 (Northern Cheyenne Tribe, et al.), and 17-123 (Alliance for the Wild Rockies, et al.) ("Plaintiffs") respectfully request a temporary restraining order (TRO) and preliminary injunction to restrain all Defendants and Defendant-Intervenors from authorizing or implementing grizzly bear hunting on September 1. The requested TRO and injunction is required to prevent irreparable harm to Plaintiffs and their members, as well as to the Yellowstone grizzly population, before the Court has an opportunity to issue a decision on the merits.

I. STANDARD OF REVIEW

To obtain a TRO or preliminary injunction, Plaintiffs must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to them in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008). The Ninth Circuit has held that "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation omitted).

"When considering an injunction under the [Endangered Species Act ("ESA")], [the Court] presume[s] that remedies at law are inadequate, that the balance of interests weighs in favor of protecting endangered species, and that the public interest would not be disserved by an injunction." Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 886 F.3d 803, 817 (9th Cir. 2018). Plaintiffs thus meet the last two requirements for a TRO or preliminary injunction as a matter of law. As demonstrated below, Plaintiffs also meet the remaining requirements: Plaintiffs have shown, at a minimum, serious questions going to the merits, and they will suffer irreparable harm if an injunction does not issue.

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS

For the reasons stated in plaintiffs' briefing in support of their motions for summary judgment, plaintiffs respectfully submit that they have, at the very least, shown that there are serious questions going to the merits of this case. See ECF Nos. 190, 231 (Northern Cheyenne briefs); ECF Nos. 186, 224 (WildEarth Guardians briefs); ECF Nos. 194, 227 (Humane Society briefs); ECF No. 188 (Crow Tribe brief); ECF Nos. 192, 230 (Alliance for the Wild Rockies briefs). Plaintiffs' position is supported by, among other authorities, the D.C. Circuit's decision in Humane Society of the United States v. Zinke, 865 F.3d 585 (D.C. Cir. 2017), which rejected and invalidated the U.S. Fish and Wildlife Service's effort to segregate and delist a distinct population segment from a larger listed entity in

2

analogous circumstances. Accordingly, Plaintiffs satisfy the first requirement for the requested injunctive relief.

## III. THE IMMINENT GRIZZLY BEAR HUNT WILL CAUSE IRREPARABLE HARM

Injunctive relief is warranted in this case to prevent irreparable harm that is "likely in the absence of an injunction." Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 886 F.3d at 818 (quotation, citation, and emphasis omitted). Specifically, an injunction is essential to prevent the irretrievable loss of grizzly bears in the Yellowstone population, as many as 23 of which will be subject to state-sponsored hunting in Wyoming and Idaho beginning on September 1, 2018. The loss of these bears would cause irreparable harm to Plaintiffs and their members, who seek opportunities to view grizzlies in the wild and who, in some cases, have deep personal attachments to individual bears that are imperiled by the hunt. In addition, the killing of these bears would add to the already-record number of grizzly bears lost to human-caused mortality this year, yielding an unsustainable death toll that will expose the Yellowstone population as a whole to additional risks and make recovery efforts more difficult.

As this Court has recently concluded, "establishing a likelihood of irreparable harm 'should not be an onerous task for plaintiffs'" in ESA cases. All. for Wild Rockies v. Marten, 253 F. Supp. 3d 1108, 1111 (D. Mont. 2017) (quoting Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv., 789 F.3d 1075, 1091 (9th Cir.

2015)).  "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable.  If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment." Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 545 (1987), abrogated in part on other grounds by Winter, 555 U.S. 7.  In particular, in cases brought under the ESA, harm to individual members of a species "is irreparable because once a member of an endangered species has been injured, the task of preserving that species becomes all the more difficult."  Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 886 F.3d at 818 (quotation, citation, and alteration omitted); see Nat'l Wildlife Fed'n v. Burlington N. R.R., 23 F.3d 1508, 1512 n.8 (9th Cir. 1994) (clarifying that "a threat of extinction to the species" is not required "before an injunction may issue under the ESA" because that "would be contrary to the spirit of the statute"); see also Cascadia Wildlands v. Scott Timber Co., 715 F. App'x 621, 624 (9th Cir. 2017) ("In its approach to evaluating irreparable harm, the district court correctly required harm to Cascadia's interest in individual members of the marbled murrelet species as opposed to harm to the entire species itself.").

Here, the threat of irreparable environmental harm is direct and immediate because state-sponsored hunting will result in the deaths of grizzly bears in the Yellowstone population.  Indeed, that is the very purpose of the hunting seasons

4

planned by Wyoming and Idaho to commence on September 1, which together target 23 grizzly bears.[1] The loss of these bears would cause irreparable harm to the targeted bears and also to Plaintiffs' members who seek to observe and study grizzly bears in the wild. ECF No. 75-4 (Schmidt Declaration), ¶¶ 6, 10; ECF No. 75-5 (Sobey Declaration), ¶¶ 8, 14; ECF No. 75-3 (Peacock Declaration), ¶¶ 10-12; ECF No. 186-3 (Willcox Declaration), ¶¶ 6, 10–11, 21, 44, 46; ECF No. 186-6 (Parks Declaration), ¶¶ 10, 12, 19; ECF No. 194-1 (Keefover Declaration), ¶¶ 17-18, 20-23. For example, Center for Biological Diversity member John Schmidt frequently seeks out grizzly bears and signs of their presence in the Targhee National Forest in Idaho, where grizzly bears will be subject to state-sanctioned hunting. See ECF No. 75-4, ¶ 10. Likewise, Sierra Club member Doug Peacock has observed and studied bears in Wyoming's Two Ocean Plateau region, outside Yellowstone National Park, for thirty years, and plans to continue to study these bears. ECF No. 75-3, ¶ 14. The planned hunting season would harm Mr. Schmidt's and Mr. Peacock's ability to observe grizzly bears in these and other areas. See ECF No. 75-3, ¶ 13-15; ECF No. 75-4, ¶¶ 11-12. As this Court has

---

[1] Wyo. Game & Fish Dep't, Chapter 68: Grizzly Bear Hunting Seasons, at 68-6–68-7, https://wgfd.wyo.gov/WGFD/media/content/Final%20Regs/Emergency-Rule_CH-68.pdf (last visited August 28, 2018); Idaho Fish & Game Comm'n, Grizzly Bear 2018 Seasons & Rules, at 3, https://idfg.idaho.gov/sites/default/files/seasons-rules-grizzly-bear-2018.pdf (last visited August 28, 2018).

found, such loss of opportunities to view wildlife constitutes irreparable harm. Native Ecosystems Council v. Marten, No. CV 18-87-M-DLC, 2018 WL 3831339, at *5 (D. Mont. Aug. 13, 2018); see also Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv., 886 F.3d at 822 (holding that plaintiffs established "irreparable harm to their own interests stemming from the irreparable harm to the listed species").

Moreover, in this case the irreparable harm that inherently arises from the killing of wildlife that Plaintiffs seek to observe is compounded by the fact that many of Plaintiffs' members have developed deep attachments to specific, individual grizzly bears in the Yellowstone region that are imperiled by the planned hunts. For instance, professional photographer and Sierra Club member Thomas Mangelsen has been following and photographing grizzly bears in the Jackson Hole, Wyoming area for more than a decade, including the famous female bear known as 399, her offspring, and male grizzly bears with whom she consorts, including bears known as Brutus and Bruno. ECF No. 75-2 (Mangelsen Declaration), ¶¶ 2, 5, 12-14. He has had many memorable encounters with these bears over the years, id., ¶¶ 6-7, 9, 10, 12, and has testified that the loss of these individual bears would "be like losing a family member," id., ¶ 22. As Mr. Mangelsen testifies:

> It is a joy for me to see her [399] and her progeny every spring year after year. Maybe once in a lifetime an animal like this appears and her mere presence seems to galvanize everything. … These bears are ambassadors for the most popular wildland destination in the lower 48. They have learned to navigate the front country of one of our nation's busiest national parks with little conflict with humans and human activity, and they have taught their cubs that skill as well. It would be a great blow to me and my interest in grizzlies for someone to come in here and take a beloved asset, so synonymous with all of the good things Jackson Hole stands for, kill it, and cart it away like a stack of cordwood in the back of a pickup.

Id. Likewise, Sierra Club member Douglas Sobey enjoys viewing 399 and her offspring 610 and 793 in and around the Jackson area, including in locations "well outside the park boundaries," and he has testified that the loss of these bears "would be devastating to me." ECF 75-5, ¶¶ 8, 14. See also ECF 75-1 (Camenzind Declaration), ¶ 15; ECF No. 186-6 (Parks Declaration), ¶¶ 14–15, 23; ECF No. 194-1 (Keefover Declaration), ¶¶ 20, 25. Injunctive relief is necessary to prevent the irreparable harm that would flow from the loss of these individual bears, which will be subject to trophy hunting if the Court does not enjoin the state hunting seasons. See Fund for Animals v. Clark, 27 F. Supp. 2d 8, 14 (D.D.C. 1998) (finding irreparable harm from planned bison hunt where plaintiffs' evidence established that "seeing or even contemplating the type of treatment of the bison inherent in an organized hunt would cause them to suffer an aesthetic injury that is not compensable in money damages"); accord Fund for Animals v. Espy, 814 F. Supp. 142, 151 (D.D.C. 1993).

7

This threat to individual bears—and Plaintiffs' interest in those bears—is by itself sufficient to establish irreparable harm warranting an injunction. In addition, injunctive relief is warranted to prevent irreparable harm to the Yellowstone grizzly population. The killing of grizzlies in state-sponsored hunting seasons would be additive to a toll of grizzly mortality in the Yellowstone region that is already at a record level before state-sponsored hunting even begins. Bear mortalities in 2018 have occurred at a faster rate than in any of the previous three years, which themselves were marked by unprecedented grizzly mortality levels in the Yellowstone region. As detailed on the U.S. Geological Survey website and in the accompanying expert declaration of Dr. David Mattson, as of August 28, 2018, 30 bears have died.[2] Mattson Decl. at pp. 26-27. By comparison, 28 bears had died at this same point in 2015—a record year for mortality in which 61 bears died and, as a result, FWS's annual point estimate for the Yellowstone grizzly population fell into decline. Mattson Decl. at pp. 26-27; FWS_LIT_022909-13; FWS_LIT_022907 (2015 annual report); FWS_LIT_023468 (2014 estimate: 757 bears); FWS_LIT_022895 (2015 estimate: 717 bears); FWS_LIT_023598 (2016 estimate: 695 bears). This year's troubling grizzly mortality total, as compared to

---

[2] https://www.usgs.gov/data-tools/2018-known-and-probable-grizzly-bear-mortalities-greater-yellowstone-ecosystem.

recent high-mortality years, is depicted in this graph from the accompanying Mattson declaration:



Figure 10. Annual accumulation curves for known and probable grizzly bear deaths in the GYE during 2013-2018. Deaths are attributable to all causes both inside and out of the DMA. The accumulation curve for 2017 in includes four deaths that occurred late in 2017 but were not detected until spring 2018. State wildlife managers treat these deaths as having de facto occurred during 2018 and plan to account for them in calculations of allowable mortality for 2019, which merely puts off the day of reckoning for record-setting mortality during 2017-2018.

The planned hunting season would add as many as 23 grizzly mortalities this fall on top of the extraordinary mortality that has already occurred. As explained by Dr. Mattson and another expert declarant in support of this motion, Dr. Barrie Gilbert, this level of mortality is unsustainable and threatens the Yellowstone grizzly population with decline. Mattson Decl. at pp. 27-34; Gilbert Decl., ¶¶ 6-7.

The threatened hunting of female bears is particularly harmful because grizzly bears, "along with polar bears, have the lowest reproductive rate and

9

longest generation length of any terrestrial mammal in North America." Mattson Decl. at p. 6. For that reason, adult female mortality has a greater impact on the health of the grizzly bear population than mortality in any other bear demographic. FWS_Rel_Docs_001446. Notwithstanding this fact, Wyoming's twelve-bear quota for hunting outside the Yellowstone grizzly bear Demographic Monitoring Area imposes no separate limit on the killing of female bears.[3] Injunctive relief is thus also necessary to prevent threatened harm to the grizzly population. See Nat'l Wildlife Fed'n v. Burlington N. R.R., 23 F.3d at 1512 n.8 (irreparable harm occurs where there is "a definitive threat of future harm to protected species"); Marbled Murrelet v. Babbitt, 83 F.3d 1060, 1066 (9th Cir. 1996) ("A reasonably certain threat of imminent harm to a protected species is sufficient for issuance of an injunction ….").

---

[3] See Wyo. Game & Fish Dep't, Chapter 68: Grizzly Bear Hunting Seasons, at 68-7, https://wgfd.wyo.gov/WGFD/media/content/Final%20Regs/Emergency-Rule_CH-68.pdf (last visited August 28, 2018)

## CONCLUSION

For the reasons stated, Plaintiffs respectfully request that this Court issue a temporary restraining order and preliminary injunction to restrain all Defendants and Defendant-Intervenors from authorizing or implementing grizzly bear hunting on September 1.

Respectfully submitted this 30th day of August, 2018.

/s/ Timothy J. Preso
Timothy J. Preso
Joshua R. Purtle
Earthjustice
313 East Main Street
Bozeman, MT 59715
(406) 586-9699 | Phone
(406) 586-9695 | Fax
tpreso@earthjustice.org
jpurtle@earthjustice.org

*Counsel for Plaintiffs Sierra Club, Center for Biological Diversity, and National Parks Conservation Association and Local Counsel for Plaintiff Northern Cheyenne Tribe*

Beth Baldwin
Ziontz Chestnut
2101 Fourth Avenue, Suite 1230
Seattle, WA 98121
(206) 448-1230 | Phone
(206) 448-0962 | Fax
joshok@ziontzchestnut.com

*Counsel for Plaintiff Northern Cheyenne Tribe*

/s/ Jeffrey S. Rasmussen
Jeffrey S. Rasmussen
Peter J. Breuer
Katie D. Frayler
Michael W. Holditch
1900 Plaza Drive
Louisville, CO 80027
Telephone: (303) 673-9600
Facsimile: (303) 673-9155/9839
Email: pbreuer@ndnlaw.com
Email: jrasmussen@ndnlaw.com
Email: kfrayler@ndnlaw.com
Email: mholditch@ndnlaw.com

*Counsel for Plaintiffs Crow Indian Tribe, Crow Creek Sioux Tribe, Standing Rock Sioux Tribe, Piikani Nation, the Crazy Dog Society, Hopi Nation Bear Clan, Northern Arapaho Elders Society, David Bearshield, Kenny Bowekaty, Llevando Fisher, Elise Ground, Arvol Looking Horse, Travis Plaited Hair, Jimmy St. Goddard, Pete Standing Alone, and Nolan Yellow Kidney*


/s/ Matthew K. Bishop
Matthew K. Bishop
Western Environmental Law Center
103 Reeder's Alley
Helena, MT 59601
(406) 324-8011 (tel.)
(406) 443-6305 (fax)
bishop@westernlaw.org

*Counsel for Plaintiff WildEarth Guardians*

/s/ Nicholas M. Arrivo
Nicholas M. Arrivo
The Humane Society of the United States
1255 23rd St. NW
Washington, DC 20037
(202) 676-2339
narrivo@humanesociety.org

Kristine M. Akland
Akland Law Firm, PLLC
317 E. Spruce St.
P.O. Box 7274
Missoula, MT 59807
(406) 544-9863
aklandlawfirm@gmail.com

*Counsel for Plaintiffs The Humane Society of the United States and The Fund for Animals*

/s/ Timothy M. Bechtold
Bechtold Law Firm, PLLC
PO Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Rebecca K. Smith
Public Interest Defense Center, P.C.
P.O. Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

David A. Bell
1917 S. Higgins Ave
Missoula, MT 59801
(406) 531-0403
BellLawMT@gmail.com

*Counsel for Plaintiffs Alliance for the Wild Rockies, Native Ecosystems Council, and Western Watersheds Project*

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(d)(2), I hereby certify that the foregoing brief contains 2,268 words, as determined by the word count function of Microsoft Word.

/s/ Timothy J. Preso
Timothy J. Preso

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was today served via the Court's CM/ECF system on all counsel of record.

/s/ Timothy J. Preso
Timothy J. Preso
