Nos. 18-36030, 18-36038, 18-36042, 18-36050,
18-36077, 18-36078, 18-36079, and 18-36080

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

CROW INDIAN TRIBE, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES OF AMERICA, et al.,

Defendant-Appellant,

and

STATE OF WYOMING, et al.,

Intervenor-Defendants-Appellants.

---

On appeal from the United States District Court for the District of Montana
Case Nos. 17-0089, 17-0117, 17-0118, 17-0119, 17-0123, 18-0016
(Hon. Dana C. Christensen)

---

## PLAINTIFFS-APPELLEES
## ALLIANCE FOR THE WILD ROCKIES, ET AL.
## MOTION FOR FEES AND COSTS

---

REBECCA K. SMITH
Public Interest Defense Center
PO Box 7584
Missoula, MT 59807
(406) 531-8133
publicdefense@gmail.com

TIMOTHY M. BECHTOLD
Bechtold Law Firm, PLLC
P.O. Box 7051
Missoula, MT 59807
(406) 721-1435
tim@bechtoldlaw.net

Pursuant to Ninth Circuit Rule 39-1.6, Plaintiffs-Appellees Alliance for the Wild Rockies, et al. (Alliance) now move for attorneys' fees and non-taxable costs under the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(4), and the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  As discussed below, Alliance's request for attorneys' fees under the ESA and EAJA is reasonable because an award is appropriate under the ESA and/or EAJA.

On July 8, 2020, this Court issued an opinion affirming the district court's order in all respects (with the exception of requiring a "comprehensive review" of the remnant population). *Crow Indian Tribe v. United States*, 965 F.3d 662, 681 (9th Cir. 2020). The deadline for petition for rehearing has expired and mandate in this matter issued on August 31, 2020. Dkt#208. This motion seeks fees and non-taxable costs in both this Court and the district court. Plaintiffs-Appellees are filing a joint motion to transfer consideration of fees to the district court, and intend to stay briefing pending settlement negotiations with the government.

## I.  Alliance qualifies for an award of attorneys' fees under the ESA.

The ESA authorizes the "award [of] costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."  16 U.S.C. § 1540(g)(4).  The term "whenever . . . appropriate" requires "some degree of success on the merits," though it is a lesser

1

standard than "prevailing party." *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694

(1983) (addressing the same term "whenever . . . appropriate" in a different

statute).  As the Supreme Court explained in *Ruckelshaus*: "By using the term

"appropriate" instead of "prevailing party," the language "was meant to expand the

class of parties eligible for fee awards . . . ."  *Id*. at 688.

   In this case, fees are "appropriate" under the ESA because Alliance meets

the higher threshold of "prevailing party."  "Prevailing party" is a "legal term of

art."  *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human

Res.*, 532 U.S. 598, 603 (2001).  "[A] plaintiff [must] receive at least some relief

on the merits of [its] claim before [it] can be said to prevail . . . ."  *Id.*  The

Supreme Court holds that receipt of an "enforceable judgment[] on the merits" is

one of the ways that a plaintiff may qualify as a prevailing party.  *Id.* at 604.

   Thus, the Ninth Circuit holds that a "[p]laintiff is indisputably a 'prevailing

party'" if it "has secured an 'enforceable judgment[ ] on the merits.'" *Vogel v.

Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018)(*quoting

Buckhannon*, 532 U.S. at 603-04).  Here, Alliance prevailed in its challenge to the

decision to remove ESA protections for grizzly bears in the Yellowstone region.

The district court found for the Alliance on summary judgment and remanded the

matter to the agency. This Court affirmed in part and remanded in part the district

2

court's order, ruling, inter alia, that the government violated the ESA by
designating and delisting the Yellowstone grizzly population without considering
whether the remnant lower-48 grizzlies remain listable under the ESA and that the
government failed to apply the best available science regarding the genetic health
of the Yellowstone grizzlies. *Crow Indian Tribe*, 965 F.3d at 677- 680. This case
helped contribute to the conservation of Yellowstone grizzly bears and
substantially contributed to the goals of the ESA by ensuring that all listing
decisions apply the best available science. A fee award is appropriate in this case
because this litigation "served the public interest by assisting the interpretation or
implementation" of the ESA. *Carson-Truckee Water Conservancy District v. Sec'y
of the Interior*, 748 F.2d 523, 525 (9th Cir. 1984). *See also Alliance for the Wild
Rockies v. Savage*, 2019 WL 3293425, *2-3 (D. Mont. July 22, 2019) (discussing
standard for ESA fees in Ninth Circuit).

This Court issued an *en banc* opinion last year clarifying that even if a party
prevails on only one claim, it is nonetheless entitled to fees for work on all claims
that arose from the same course of conduct: "We do not require commonality of
both facts and law to conclude that claims are related. [].  Rather the focus is to be
on whether the unsuccessful and successful claims arose out of the same course of
conduct. . . . The fact that one claim or theory is eventually determined to be true

does not mean that the claims were unrelated to one another." *Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1174-76 (9th Cir. 2019)(en banc)(internal quotation marks omitted).

Accordingly, in this case, because all of Alliance's claims arose from the same course of conduct – the decision to delist the Yellowstone grizzlies – Alliance should be compensated for all of its claims even though some claims were based on different arguments. *See Ibrahim*, 912 F.3d at 1174-76. As the Ninth Circuit Appellate Commissioner recently held, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Greenpeace v. Stewart*, 2020 WL 2465321, at *8 (9th Cir. 2020)(*quoting Moore v. Jas. H. Matthews and Co.*, 682 F.2d 830, 839 (9th Cir. 1982)); *see also Pollinator Stewardship Council v. EPA*, 2017 WL 3096105, at *8 (9th Cir. 2017).

Because fees for all of Alliance's claims may be awarded under the ESA "whenever appropriate" standard in conjunction with the *Ibrahim* "common course of conduct" test, there is no need to conduct a further analysis under EAJA: "EAJA's fee provisions are subordinated to those of the ESA and only if a fee is not authorized under the ESA does the court determine whether the fee would be authorized pursuant to EAJA." *Oregon Nat. Desert Ass'n v. Vilsack*, 2013 WL

4

3348428, at *2 (D. Or. 2013); *see also Savage*, 2019 WL 3293425, at *5 (citation omitted) ("Generally, there is no need to conduct an independent EAJA analysis where, as here, fees are authorized under the ESA.") However, should the Court choose, fees are also appropriate under EAJA.

## II.    Alliance is entitled to an award of fees, costs, and other expenses under EAJA.

The Supreme Court holds: "the specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 163-65 (1990).  In *Jean*, the Supreme Court quoted the House and Senate Committee Reports at length:

> adjudication or civil action provides a concrete, adversarial test of Government regulation and thereby insures the legitimacy and fairness of the law. An adjudication, for example, may show that the policy or factual foundation underlying an agency rule is erroneous or inaccurate. . . . Where parties are serving a public purpose, it is unfair to ask them to finance through their tax dollars unreasonable Government action and also bear the costs of vindicating their right.

496 U.S. at 165 n.14 (*quoting* S.Rep. No. 96–253, p. 7 (1979) and H.R.Rep. No. 96–1418, p. 12 (1980)).(1991). Therefore, "removing disincentives to adjudication when the Government acts unreasonably both vindicates individual rights and curbs governmental excesses." *Id.*

Accordingly, EAJA must be read and applied in a manner that is consistent

with its purpose "to diminish the deterrent effect of seeking review of . . . governmental action[.]" *Sullivan v. Hudson*, 490 U.S. 877, 890 (1989).  In line with such a reading, this Court has "acknowledged that the policy goal of EAJA is to encourage litigants to vindicate their rights where any level of the adjudicating agency has made some error in law or fact and has thereby forced the litigant to seek relief from a federal court." *Li v. Keisler*, 505 F.3d 913, 918 (9th Cir.2007)

"The Government's general interest in protecting the federal fisc [] is subordinate to the specific statutory goals of encouraging private parties to vindicate their rights and [] curbing . . . the unreasonable exercise of Government authority." *Jean*, 496 U.S. at 163-65.  The Supreme Court has repeatedly reaffirmed these considerations:  "EAJA's purposes are clearly stated. . . . the high cost of legal assistance and the superior resources and expertise of the Federal Government precluded private parties from challenging or defending against unreasonable governmental action. []. Fee awards were intended to address this problem [.]" *Ardestani v. I.N.S.*, 502 U.S. 129, 142 (1991).

EAJA provides that a court "shall" award attorneys' fees to an eligible "prevailing party" in a civil action brought against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make the award unjust."   28 U.S.C.§ 2412(d)(1).  "Once a

6

party's eligibility has been proven, an award of fees under EAJA is *mandatory* unless the government's position is substantially justified or special circumstances exist that make an award unjust." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991)(emphasis added).  In other words, "EAJA creates a presumption that fees will be awarded unless the government's position was substantially justified." *Thomas v. Peterson*, 841 F.2d 332, 335 (9th Cir. 1988).

Here, Alliance is entitled to fees under EAJA because its a prevailing party in this litigation, EAJA's eligibility requirement is satisfied, and the position of the government was not substantially justified.

Eligible parties under EAJA include 501(c)(3) tax exempt organizations with fewer than 500 employees at the time the action was filed.  28 U.S.C. §2412 (d)(2)(B).  The Alliance for the Wild Rockies, Native Ecosystems Council, and Western Watersheds Project all meet this requirement and are therefore eligible parties.   Declaration of Michael Garrity ¶2 (September 1, 2020); Declaration of Erik Molvar ¶2 (August 26, 2020).

As discussed above, Alliance is a prevailing party because it prevailed in its challenge of the government's decision to delist Yellowstone grizzly bears at both the district court and Ninth Circuit. Under Supreme Court precedent, Plaintiffs are "indisputably [] prevailing part[ies], because [they] secured an enforceable

judgment on the merits." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018)(*quoting Buckhannon*, 532 U.S. at 603–04)(internal brackets and quotation marks omitted).

Accordingly, because Alliance is and eligible and prevailing party, "an award of fees under EAJA is mandatory unless the government's position is substantially justified or special circumstances exist that make an award unjust." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991). "For its action to be substantially justified, the government must make a 'strong showing' that its position was substantially justified." *Natural Resources Defense Council v. EPA*, 703 F.2d 700, 712 (3rd Cir. 1983))(citation omitted).

EAJA must therefore be read and applied with this purpose in mind, i.e., in a manner consistent with its purpose "to diminish the deterrent effect of seeking review of, or defending against, governmental action." *Sullivan v. Hudson*, 490 U.S. 877, 890 (1989) (quoting EAJA's legislative history). "The Government's general interest in protecting the federal fisc[ ] is subordinate to the specific statutory goals of encouraging private parties to vindicate their rights . . ." *Jean*, 496 U.S. at 164–65.

Under EAJA, a court shall award fees, costs, and other expenses to a "prevailing party" who is eligible for an EAJA fee award, unless the court finds

that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d). "Once a party's eligibility has been proven, an award of fees is mandatory under the EAJA unless the government's position is substantially justified or special circumstances exist that make an award of fees unjust." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991).

This Court has held that "it will be only a decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." *Thangaraja v. Gonzales*, 428 F.3d 870, 874-75 (9th Cir. 2005) (citation omitted).  It would be an abuse of discretion to find the government's position substantially justified if the government has been found in violation of law. *Meinhold v. U.S. Dep't of Defense*, 123 f.3d 1275, 1278 (9th Cir. 1997).

In this case, the government cannot demonstrate that its position was substantially justified. This Court ruled that the government's determination that genetic threats were no longer a concern for Yellowstone grizzlies was without any "scientific basis." *See Crow Indian Tribe*, 965 F.3d at 679. Moreover, this Court also ruled that the government's piecemeal approach without consideration of the remnant lower-48 grizzlies was unlawful. *Id.* at 678.

9

Finally, the agency bears the burden of proving any special circumstances that would make a fee award unjust. *Love,* 924 F.2d at 1495. Here, Alliance is unaware of any special circumstances that would make a fee award unjust. Instead, Alliance's request is in line with the purpose and intent of EAJA: "the specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Jean*, 496 U.S. at 163-64.

## III.   Alliance's requested rates are reasonable.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," which is also referred to as the "lodestar." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Similarly, "[t]here is no statutory cap on fees under the ESA. Instead, fees are calculated according to the lodestar." *S. Yuba River Citizens League v NMFS*, 2012 WL 1038131 at *2 (E.D. Cal. 2012).

Alliance has calculated this "lodestar" amount. *See City of Burlington v. Dague*, 505 U.S. 557, 559-60 (1992). There is a "strong presumption" that the "lodestar" amount represents a "reasonable fee." *Id.* at 561. This is especially true in cases involving the vindication of the public interest, such as this case. *City of Riverside v. Rivera*, 477 U.S. 561, 572 (1985).

10

To determine reasonable rates, "[t]he court must look to the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience and reputation; it may not refer to the rates actually charged to the prevailing party. . . . Rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Natural Resources Defense Council v. Babbitt*, 1994 WL 361811 *7-8 (N.D. Cal. 1994); *see also S. Yuba*, 2012 WL 1038131 at *6.

In 2019, the District of Montana issued two orders that determined reasonable rates for Alliance's counsel.  In the first order, the court first determined a reasonable rate for Mr. Bechtold:

> Mr. Bechtold is a highly skilled attorney who possess[es] considerable expertise in environmental litigation.
> . . .
> the Court recognizes a 2018 hourly rate of $340 as fair and consistent for an attorney of Mr. Bechtold's caliber.

*Native Ecosystems Council v. Krueger*, 2019 WL 1489839, at *4 (D. Mont. 2019).

Next, the district court determined a reasonable rate for Ms. Smith:

> The Court has already determined that an hourly rate of $340 for work performed by an experienced and highly capable environmental attorney in the handling of a complex matter is reasonable. Therefore, $340 is a fair rate for Ms. Smith assuming that she is an attorney of "comparable experience, skill and reputation."

11

*Id.* at *5.

Several months later, the same court issued a fee order in a different case

and held:

> A generalist could not have litigated this case with the same degree of
> success; and a gifted but inexperienced environmental lawyer would
> have spent significantly more time preparing this case. Smith and
> Bechtold have substantial experience in environmental litigation, and
> "knowledge [and] specialized skill" such as theirs is essential for
> complex, technical cases such as this.
> . . .
> Both Smith and Bechtold are excellent, experienced environmental
> litigators. . . . solidly in the prime of their careers and operating at the
> highest level of public interest environmental litigation in Montana.

*Savage*, 2019 WL 3293425, at *6-7.

Based upon this analysis, the court held that both Smith and Bechtold have a

reasonable market rate of $340/hour in district court in 2018, $350/hour in district

court in 2019, and a reasonable annual increase of $10/hour. *Id.* at *7. Therefore,

in this fee motion, Smith and Bechtold request these reasonable market rates with

an annual increase of $10/hour:  $330/hour for 2017 district court hours, $340/hour

for 2018 district court hours, $440/hour for 2018 circuit court hours, and $450/hour

for 2019 circuit court hours, and $460/hour for 2020 circuit court hours.

Declaration of Timothy Bechtold ¶¶11-12 (September 2, 2020); Declaration of

Rebecca K. Smith ¶¶9 (July 15, 2020).  Smith and Bechtold's distinctive skills

were "not [] available elsewhere at the statutory rate."  *Love*, 924 F.2d at 1495.

12

The high-quality legal representation was not otherwise available elsewhere to Alliance at statutory rates and could not have been provided by local general practitioners. Garrity Declaration ¶¶ 4-7.  The ultimate success in this case would not have happened without counsel's specialized knowledge, expertise, and skill in environmental law.  Garrity Declaration ¶¶ 4-7.

Additionally, the requested rates for Mr. Bell are also reasonable.  Mr. Bell requests $200/hour in 2017, and $210/hour in 2018.  Declaration of David Bell ¶¶6-7 (August 28, 2020).  The requested rates of $125/hour for certified paralegal Darrell Geist are also reasonable and in line with expected paralegal rates in the district. Bechtold Dec ¶16.

Finally, in light of the Ninth Circuit Appellate Commissioner's recent order, Alliance also requests market rates for work performed on this fee motion.  In May 2020, the Appellate Commissioner held that it is more reasonable and consistent with EAJA to award counsel's market rate for all tasks, rather than awarding different fee rates for different tasks:

> USFS contends that Greenpeace should be compensated at the EAJA statutory rate for preparing the fee pleadings, because the Greenpeace attorneys are not experts in attorneys' fees and EAJA litigation is not a recognized field for an enhanced rate. This contention lacks merit. . . .
> The approach of using different hourly rates for different portions of the litigation may be within the discretion of the court, as USFS's

> citations suggest, but this court has not adopted the approach as
> necessary or advisable.
>
> …
>
> Adhering to the "lodestar" method avoids determining whether the
> attorney working on a particular task is overqualified for the labor and
> should be compensated at varying hourly rates. .. . USFS's contention
> lacks merit and Greenpeace's attorneys *will be compensated at their*
> *market rates for reasonable hours expended during all stages of the*
> *proceedings, including the fee litigation.*

*Greenpeace*, 2020 WL 2465321, at *5-6 (emphasis added).  Accordingly, Alliance

requests compensation for counsel "at their market rates for reasonable hours

expended during all stages of the proceedings, including the fee litigation."  *Id.*

## IV.   Alliance's hours are reasonable

The Supreme Court holds: "absent unreasonably dilatory conduct by the

prevailing party in 'any portion' of the litigation, which would justify denying fees

for that portion, a fee award presumptively encompasses all aspects of the civil

action. . . . EAJA—like other fee-shifting statutes—favors treating a case as an

inclusive whole, rather than as atomized line-items."  *Jean*, 496 U.S. at 161-62.

The hours expended on this case were not incurred on unreasonably dilatory

conduct, but instead on reasonable and necessary tasks.  Smith Declaration ¶¶ 10-

12; Bechtold Declaration ¶¶ 13-15; Bell Declaration ¶¶ 8-9.  Regarding the number

of hours reasonably expended, "[b]y and large, the court should defer to the

winning lawyer's professional judgment as to how much time [s]he was required to

14

spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  Counsels' "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required."  *Perkins v. Mobile Housing Board*, 847 F.2d 735, 738 (11th Cir. 1988).

As the D.C. Circuit has explained, "[t]he key question is whether the work was reasonably done in pursuit of the ultimate result.  In other words, would a private attorney being paid by a client reasonably have engaged in similar time expenditures?"  *Goos v. National Ass'n of Realtors*, 68 F.3d 1380, 1385-1386 (D.C. Cir. 1995); *see also Woods v. Graphics Communications*, 925 F.2d 1195, 1207 (9th Cir. 1991).  As noted above, the Ninth Circuit Appellate Commissioner recently held: "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed."  *Greenpeace*, 2020 WL 2465321, at *8 (citation omitted).

Consistent with this standard, last year this Court held *en banc*: "We do not require commonality of *both* facts *and* law to conclude that claims are related. [] Rather 'the focus is to be on whether the unsuccessful and successful claims arose out of the same 'course of conduct.'" *Ibrahim*, 912 F.3d at 1174-77. Thus, "[t]he fact that one claim or theory is eventually determined to be true does not mean that

15

the claims were unrelated to one another." *Id.*  The Court explained that work on all related claims should be compensated because "[b]efore the litigation begins and while it is ongoing, the plaintiff and her lawyers cannot know for sure why someone else did something, but may, as here, have evidence suggesting various possibilities. So, as here, the plaintiff raises alternative claims and theories as to why something was done, some of which may be ultimately inconsistent, with regard to a single set of facts." *Id.*

In this case, all claims meet the *Ibrahim* test because all claims involved the same course of conduct, and were therefore related, because all claims challenged the delisting of the Yellowstone grizzlies.  *See Ibrahim*, 912 F.3d at 1171.

Accordingly, courts have emphasized that "[a]ttorneys are not required to bill on a claim by claim basis, nor is the Court required to parse through Plaintiffs' billing statements in an effort to determine how much time was spent on each claim." *Krueger*, 2014 WL 46498, at *4. Courts need not and should not be asked to engage in an "hour by hour analysis of the fee request." *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992).

In order to determine whether the number of hours expended is reasonable, plaintiff's counsel "should identify the general subject matter of [her] time expenditures." *Hensley*, 461 U.S. at 437 n.12.  In identifying the subject matter,

16

counsel "is not required to record in great detail how each minute of [her] time was expended." *Id*.  Rather, the test is whether the hours were "reasonable." *City of Riverside*, 477 U.S. at 570 n.4.  To deny compensation, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Id*.  "Normally [an award of attorneys fees] will encompass all hours reasonably expended on the litigation . . . ." *Hensley*, 461 U.S. at 435.  The award of fees includes time spent by prevailing parties on their fee petitions. *See Love v. Reilly*, 924 F.2d 1492, 1497 (9th Cir. 1991).

In successfully prosecuting this case, Alliance's attorneys expended reasonable hours engaged in normal and justified tasks associated with careful, conscientious prosecution of a lawsuit against an agency that vigorously defended its actions under an extensive administrative record.  In compiling these totals, Alliance's attorneys carefully reviewed their contemporaneous time entries to ensure that no hours were excessive, redundant, or otherwise unnecessary. *See Hensley*, 461 U.S. at 433-34; Smith Declaration ¶¶ 10-12; Bechtold Declaration ¶¶ 13-15; Bell Declaration ¶9.  Moreover, Alliance's attorneys do seek compensation for any of the hundreds of hours spent responding to the numerous arguments posited by Defendant-Intervenors and amici in support of the government.  Therefore, fees are warranted for all requested hours incurred in this case.

17

V.    **Alliance is entitled to recover non-taxable costs.**

Alliance seeks reimbursement for normal litigation costs/expenses incurred in this case, including printing and postage for the 60-day notices, as well as $1000 for expert consultation with Dr. David Mattson, a retired U.S. Fish & Wildlife Service grizzly bear biologist. Bechtold Declaration ¶17. Litigation expenses may be awarded when a statutory fee provision awards costs. *Grove v. Wells Fargo Financial,* 606 F.3d 577, 579-582 (9th Cir. 2010). Accordingly, Alliance seeks $1510.00 in non-taxable costs and other expenses.

**Conclusion**

In conclusion, Alliance respectfully requests the following:

|  | RATE | HOURS | TOTAL |
|---|---|---|---|
| **SMITH** |  |  |  |
| 2017 District Court | $330 | 2.9 | $957.00 |
| 2018 District Court | $340 | 4.3 | $1462.00 |
| 2019 Circuit Court | $450 | 35.1 | $15,795.00 |
| 2020 Circuit Court | $460 | 4.2 | $1932.00 |
|  |  | **TOTAL** | **$20,146.00** |
| **BECHTOLD** |  |  |  |
| 2017 District Court | $330 | 86.7 | $28,611.00 |
| 2018 District Court | $340 | 160.0 | $54,400.00 |
| 2018 Circuit Court | $440 | 1.2 | $528.00 |
| 2019 Circuit Court | $450 | 32.6 | $14,670.00 |

18

| 2020 Circuit Court | $460 | 18.3 | $8418.00 |
|---|---|---|---|
| | | **TOTAL** | **$106,627.00** |
| **BELL** | | | |
| 2017 District Court | $200 | 34.52 | $6904.00 |
| 2018 District Court | $210 | 128.59 | $27,003.00 |
| | | **TOTAL** | **$33,907.00** |
| **GEIST** | | | |
| 2017/2018 District Court | $125 | 153.0 | $19,125.00 |
| | | **TOTAL** | **$19,125.00** |
| **TOTAL FEES** | | | **$179,805.00** |
| **OTHER EXPENSES** | | | **$1510.00** |
| | | | |
| **TOTAL FEES & EXPENSES** | | | **$181,315.00** |

In *Ibrahim*, the Ninth Circuit held: "[a] full award of attorneys' fees here is consistent with the EAJA's goal of creating a level playing field in cases in which there is an imbalance of power and resources." 91 F.3d at 1179-80. The same is true in this case. For all of these reasons, Alliance respectfully requests that the Court grant this motion for **$181,315.00** in fees and costs/expenses.

Dated this 2nd day of September, 2020.

/s/Timothy M. Bechtold

Attorneys for Plainitffs-Appellees

19

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the length limitations of Fed.

R. App. P. 27(d)(2) and Circuit Rule 27-1(d) because it contains 4920 words.

/s/Timothy M. Bechtold

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of September, 2020, I electronically

filed the foregoing with the Clerk of the Court for the United States Court of

Appeals for the Ninth Circuit by using the appellate CM/ECF system, which will

serve all registered CM/ECF users.

I further certify that on this 2nd day of September, 2020 I served an identical

copy of the foregoing by email attachment to the following, unregistered case

participant:

Robert H. Aland
140 Old Green Bay Road
Winnetka, IL 60093-1512

/s/Timothy M. Bechtold