Matthew K. Bishop (Mont. Bar No. 9968)
Western Environmental Law Center
103 Reeder's Alley
Helena, Montana 59601
bishop@westernlaw.org

John R. Mellgren, *admitted PHV*
Western Environmental Law Center
120 Shelton McMurphey Blvd., Suite 340
Eugene, Oregon 97401
mellgren@westernlaw.org

Kelly E. Nokes (Mont. Bar No. 39465862)
Western Environmental Law Center
208 Paseo del Pueblo Sur, No. 602
Taos, New Mexico 87571
nokes@westernlaw.org

*Counsel for Plaintiff, WildEarth Guardians (No. 17-118)*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| CROW INDIAN TRIBE et al., | CV 17-89-M-DLC |
| Plaintiffs, | (Consolidated with Case Nos. CV 17-117-M-DLC, CV 17-118-M-DLC, CV 17-119-M-DLC, and CV 17-123-M-DLC) |
| vs. | |
| UNITED STATES OF AMERICA et al., | |
| Federal-Defendants. | MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS |
| and | |
| STATE OF WYOMING, et al., | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii

INTRODUCTION ................................................................................ 1

ARGUMENT ................................................................................... 1

A.   Guardians is entitled to an award of fees and other expenses under the ESA ........................................................................ 2

B.   Guardians is entitled to an award of fees, costs, and other expenses under EAJA ................................................................ 4

C.   Guardians' request for attorneys' fees is reasonable .................... 10

   1.   Reasonable rates ................................................................ 11

   2.   Reasonable hours ............................................................... 16

D.   Guardians is entitled to recover district court expenses .............. 22

CONCLUSION ................................................................................ 23

# TABLE OF AUTHORITIES

## CASES

*Alliance for the Wild Rockies v. Savage*,
    2019 WL 3293425 (D. Mont. 2019 .................................... 4, 13, 19, 20

*Ass'n of California Water Agencies v. Evans*,
    386 F.3d 879 (9th Cir. 2004) ......................................................... 2, 11

*Center for Biological Diversity v. Marina Point Dev. Co.*,
    566 F.3d 794 (9th Cir. 2009) ................................................................ 4

*Commissioner, INS v. Jean*,
    496 U.S. 154 (1990) ................................................................... 4, 5, 8

*Crow Indian Tribe v. United States*,
    343 F. Supp. 3d 999 (D. Mont. 2018) ................................................ 10

*Crow Indian Tribe v. United States*,
    965 F.3d 662 (9th Cir. 2020) ........................................................... 3, 9

*Defenders of Wildlife v. Gould*,
    Case No. CV-08-56-M-DWM (D. Mont. 2009) .................................... 18

*Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*,
    229 F. Supp. 2d 993 (N.D. Cal. 2002) .................................................. 4

*Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*,
    103 F. App'x 627 (9th Cir. 2004) ......................................................... 4

*Greenpeace, Inc. v. Stewart*,
    2020 WL 2465321 (9th Cir. May 12, 2020) ...................................... 21

*Gutierrez v. Barnhart*,
    274 F.3d 1255 (9th Cir. 2001) ............................................................. 9

*Hensley v. Eckerhart,*
   461 U.S. 424 (1983) ................................................................. 6, 10, 21

*Ibrahim v. U.S Dep't of Homeland Sec.,*
   912 F.3d 1147 (9th Cir. 2019) ............................................................ 20

*In re Application of Mgndichian,*
   312 F. Supp. 2d 1250 (C.D. Cal. 2003) .............................................. 22

*Int'l Woodworkers of America v. Donovan,*
   792 F.2d 762 (9th Cir. 1986) .............................................................. 22

*Kali v. Bowen,*
   854 F.2d 329 (9th Cir. 1988) ................................................................ 7

*Li v. Keisler,*
   505 F.3d 913 (9th Cir. 2007) ............................................................. 4, 5

*Love v. Reilly,*
   924 F.2d 1492 (9th Cir. 1991) ....................................... 5, 7, 10, 15, 16

*LSO, Ltd. v. Stroh,*
   205 F.3d 1146 (9th Cir. 2000) .............................................................. 2

*Meinhold v. U.S. Dep't of Defense,*
   123 f.3d 1275 (9th Cir. 1997) ............................................................... 8

*Moore v. Jas. H. Matthews & Co.,*
   682 F.2d 830 (9th Cir. 1982) .............................................................. 17

*Moreno v. City of Sacramento,*
   534 F.3d 1106 (9th Cir. 2008) ............................................................ 18

*Nat. Res. Def. Council v. Envt'l Prot. Agency,*
   703 F.2d 700 (3rd Cir. 1983) ............................................................... 7

*Native Ecosystems Council v. Weldon,*
   921 F.Supp. 2d 1069 (D. Mont. 2013) .............................................. 12

*Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*,
No. 12-cv-00431, 2014 WL 7331039 (D. Or. December 19, 2014)......13

*Or. Nat. Desert Ass'n v. Vilsack*,
No. 2:07-cv-1871-HA, 2013 WL 3348428 (D. Or. July 2, 2013) ...........1

*Or. Nat. Res. Council v. Marsh*,
52 F.3d 1485 (9th Cir. 1995)..........................................................7, 8

*Perdue v. Kenny A ex rel. Winn*,
559 U.S. 542 (2010).........................................................................11

*Ruckelshaus v. Sierra Club*,
463 U.S. 680 (1983)...........................................................................2

*Schwarz v. Sec'y of Health & Human Servs.*,
73 F.3d 895 (9th Cir. 1995).............................................................20

*Sullivan v. Hudson*,
490 U.S. 877 (1989)...........................................................................5

*Thangaraja v. Gonzales*,
428 F.3d 870 (9th Cir. 2005)............................................................8

*U.S. v. Marolf*,
277 F.3d 1156 (9th Cir. 2002)..........................................................8

*U.S. v. Real Property Known as 22249 Dolorosa St.*,
190 F.3d 977 (9th Cir. 1999)............................................................6

*Webb v. Sloan*,
330 F.3d 1158 (9th Cir. 2003)........................................................20

*Wilderness Soc'y v. Babbitt*,
5 F.3d 383 (9th Cir. 1993).................................................................8

## STATUTES

16 U.S.C. § 1540(g)(4)................................................................. 1, 2, 22

26 U.S.C. § 501(c)(3) ...................................................................... 6

28 U.S.C. § 1920 .......................................................................... 22

28 U.S.C. § 2412(a)(1) ................................................................... 22

28 U.S.C. § 2412(d)...................................................................... 1, 5

28 U.S.C. § 2412(d)(1)(A)......................................................... 6, 7, 22

28 U.S.C. § 2412(d)(2)(B)................................................................ 6

## LEGISLATIVE HISTORY

H.R. Rep. No. 1418, 96th Cong., 2nd Sess. 5, reprinted in 1980
U.S.C.C.A.N. 4984 ...................................................................... 10

# INTRODUCTION

Following the Ninth Circuit's transfer of consideration of Plaintiffs-Appellees' request for attorneys' fees and costs to this Court (Doc. 307) and this Court's subsequent order (Doc. 308), Plaintiff, WildEarth Guardians ("Guardians"), respectfully submits this memorandum in support of its motion for attorneys' fees and expenses in this matter pursuant to section 11(g)(4) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(4), and, in the alternative, the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Guardians' motion covers both appellate and district court fees and expenses incurred in this case.

# ARGUMENT

In cases involving attorneys' fees under both the ESA and EAJA, "the court looks first to the ESA and then to EAJA" when evaluating a fee request. *Or. Nat. Desert Ass'n v. Vilsack*, No. 2:07-cv-1871-HA, 2013 WL 3348428, at *2 (D. Or. July 2, 2013). "EAJA's fee provisions are subordinated to those of the ESA and only if a fee is not authorized under the ESA does the court determine whether the fee would be authorized pursuant to EAJA." *Id.*

1

### A. Guardians is entitled to an award of fees and other expenses under the ESA.

The ESA citizen suit provision provides that a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). Attorneys' fees are "appropriate" under the ESA when a party achieves "some degree of success on the merits," *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983), meaning that the party "succeed[ed] on any significant issue in litigation which achieves some of the benefit it sought in bringing suit." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1160 (9th Cir. 2000). The ESA's fee provision is "meant to expand the class of parties eligible for fee awards from prevailing parties to partially prevailing parties – parties achieving some success, even if not major success." *Ass'n of California Water Agencies v. Evans*, 386 F.3d 879, 884 (9th Cir. 2004).

Here, Guardians achieved a major success by prevailing (in all aspects) in its challenge to the Service's decision to remove ESA protections for grizzly bears in the Yellowstone region. Guardians argued, *inter alia*, that the Service's decision was arbitrary, not in accord with the best available science, and conflicted with the ESA.

2

Guardians focused, in particular, on the Service's finding that Yellowstone grizzlies were no longer threatened by genetic concerns and argued that such a finding was not supported by the best available science, including the published papers the agency itself relied on. This Court (as well as the Ninth Circuit) agreed, noting that the Service's conclusion "that genetic health no longer poses a threat to the Yellowstone grizzly is without scientific basis" and is "arbitrary and capricious." *Crow Indian Tribe v. United States*, 965 F.3d 662, 679 (9th Cir. 2020). This Court and the Ninth Circuit also rejected the Service's reliance on various, inadequate "regulatory mechanisms" to address the genetic threats. *See id.* at 679-680. This win and the resulting vacatur of the Service's delisting decision and remand to the agency helped contribute to the conservation of Yellowstone grizzly bears and substantially contributed to the goals of the ESA by ensuring that all listing decisions utilize the best available science.

In sum, because Guardians' claims arose under the ESA's citizen suit provision and because Guardians prevailed in this case and obtained the relief requested and – in so doing – furthered the goals of the ESA, an award of attorneys' fees, costs, and other expenses is

entirely "appropriate" under the citizen suit provision of the ESA. *See Alliance for the Wild Rockies v. Savage*, 2019 WL 3293425, *2-3 (D. Mont. 2019 (discussing standard for ESA fees in Ninth Circuit); *Center for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 805 (9th Cir. 2009) (noting that party must prevail to obtain ESA award); *Envtl. Prot. Info. Ctr., Inc. v. Pac. Lumber Co.*, 229 F. Supp. 2d 993, 998 (N.D. Cal. 2002), *aff'd sub nom. Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*, 103 F. App'x 627 (9th Cir. 2004) (noting that courts should award fees if party substantially contributes to goals of ESA).

## B.    Guardians is entitled to an award of fees, costs, and other expenses under EAJA.

As an alternative to awarding fees under the ESA's citizen suit provision, Guardians moves for an award pursuant to EAJA. EAJA's purpose is designed to eliminate the "financial disincentive" for the average person to challenge government actions. *Commissioner INS v. Jean*, 496 U.S. 154, 163 (1990). "Congress specifically intended EAJA to be a deterrent for unreasonable agency conduct." *Li v. Keisler*, 505 F.3d 913, 919 (9th Cir. 2007) (citation omitted). The policy and goal of EAJA is "to encourage litigants to vindicate their rights where any level of the adjudicating agency has made some error in law or fact and has thereby

4

forced the litigant to seek relief from a federal court." *Id.* (citation omitted).

EAJA must therefore be read and applied with this purpose in mind, i.e., in a manner consistent with its purpose "to diminish the deterrent effect of seeking review of, or defending against, governmental action." *Sullivan v. Hudson*, 490 U.S. 877, 890 (1989) (quoting EAJA's legislative history). "The Government's general interest in protecting the federal fisc[ ] is subordinate to the specific statutory goals of encouraging private parties to vindicate their rights . . ." *Jean*, 496 U.S. at 164–65.

Under EAJA, a court shall award fees, costs, and other expenses to a "prevailing party" who is eligible for an EAJA fee award, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d). "Once a party's eligibility has been proven, an award of fees is mandatory under the EAJA unless the government's position is substantially justified or special circumstances exist that make an award of fees unjust." *Love v. Reilly*, 924 F.2d 1492, 1495 (9th Cir. 1991)

Here, Guardians satisfies all of the criteria for an EAJA fee award in this case.

First, Guardians is eligible for an EAJA award. *See* Exhibit (Ex.) D at ¶ 3. A party is eligible for attorneys' fees, costs, and other expenses under EAJA if it is a non-profit organization as defined by section 501(c)(3) of the Internal Revenue Code of 1986, 26 U.S.C. § 501(c)(3), or it meets applicable size, net worth, or other criteria at the time the lawsuit is filed. 28 U.S.C. §§ 2412(d)(1)(A), (d)(2)(B). Guardians is a 501(c)(3) organization and satisfies the eligibility criteria because it has fewer than 500 employees and a net worth that does not exceed $7,000,000.00 (now or at the time of filing). Ex. D at ¶ 3.

Second, as previously discussed, Guardians is a "prevailing party." A party is a "prevailing party" under EAJA if it "succeed[s] on any significant issue in litigation which achieves some of the benefits [it] sought in bringing suit." *U.S. v. Real Property Known as 22249 Dolorosa St.*, 190 F.3d 977, 981 (9th Cir. 1999) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Guardians is a prevailing party in this case because it prevailed in its challenge to the Service's decision to delist Yellowstone grizzly bears (including on the genetic threat issue it

6

focused on) at both the district court and Ninth Circuit. Guardians

obtained precisely the relief it sought in this case and the relief

obtained far surpasses the requirement that it achieve some of the relief

that it sought in order to qualify as a "prevailing party."

Third, the Service's position in this case was not substantially

justified. "Once a party's eligibility has been proven, an award of fees is

mandatory pursuant to EAJA unless the government's position is

substantially justified or special circumstances exist that make an

award unjust." *Love*, 924 F.2d at 1495 (citing 28 U.S.C. § 2412(d)(1)(A)).

An agency bears the burden of proving that its position was

substantially justified. *Or. Nat. Res. Council v. Marsh*, 52 F.3d 1485,

1492 (9th Cir. 1995). The agency must make a "strong showing" in order

to meet this burden. *Nat. Res. Def. Council v. Envt'l Prot. Agency*, 703

F.2d 700, 712 (3rd Cir. 1983).

To determine if an agency's position was substantially justified,

the court considers the reasonableness of the underlying government

action and the position asserted by the agency in defending it. *Kali v.*

*Bowen*, 854 F.2d 329, 332 (9th Cir. 1988). The fact that the government

litigation position may be justified is not enough–the court must also

consider the underlying government conduct. *Wilderness Soc'y v. Babbitt,* 5 F.3d 383, 388 (9th Cir. 1993); *see also Jean*, 496 U.S. at 158 n.7 (noting that Congress intended to provide for fees when unjustifiable agency action forces litigation, even when agency tries to avoid liability by reasonable behavior during litigation). Even when some aspects of the agency's position were substantially justified, the court may still find that the agency's overall position was not. *U.S. v. Marolf*, 277 F.3d 1156, 1164 (9th Cir. 2002) (reversing denial of attorneys' fees because district court focused solely on agency's litigation position).

The Ninth Circuit noted that "it will be only a decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was reversed as lacking in reasonable, substantial and probative evidence in the record." *Thangaraja v. Gonzales*, 428 F.3d 870, 874-75 (9th Cir. 2005) (citation omitted); *see also Marsh*, 52 F.3d at 1492 (finding no substantial justification where agency prepared inadequate NEPA document). If the government's position violates the law any finding that it was "substantially justified

would be an abuse of discretion." *Meinhold v. U.S. Dep't of Defense*, 123 f.3d 1275, 1278 (9th Cir. 1997).

Indeed, even in cases presenting issues of first impression, federal agencies cannot establish substantial justification on that basis alone because that would mean "that whenever [an agency] violates its own regulations, or assumably any clear legal rule, for the first time, the private party who succeeds in forcing government compliance nonetheless must be deprived of fees because the government gets an automatic 'first impression' free pass." *Gutierrez v. Barnhart*, 274 F.3d 1255, 1262 (9th Cir. 2001). Such a positon would contravene the purposes of EAJA. *Id*.

Here, the Service's position was not substantially justified. This Court, for instance, deemed the Service's finding that genetic threats were no longer a concern for Yellowstone grizzly bears to be "arbitrary and capricious" because it was made without any "scientific basis." *See Crow Indian Tribe*, 965 F.3d at 679. The Service went so far as to misinterpret (intentionally or not) and mislead the public about the findings in two relevant scientific studies on genetic threats. As this Court aptly noted, in order to support its findings on genetic threats,

9

the Service "illogically cobbled together two studies [and] . . . in so doing . . . ignored the clear concerns expressed by the studies' authors about long-term viability of an isolated grizzly population." *Crow Indian Tribe v. United States*, 343 F. Supp. 3d 999, 1020 (D. Mont. 2018). In sum, this Court's and the Ninth Circuit's extensive discussions about the arbitrary and capricious nature of the Service's decision illustrates the lack of substantial justification.

Finally, no special circumstances exist that would make an award unjust in this case. The "special circumstances" exception to eligibility under EAJA is a "'safety valve' [that] … gives the court discretion to deny awards where equitable considerations dictate an award should not be made." H.R. Rep. No. 1418, 96th Cong., 2nd Sess. 5, 11, reprinted in 1980 U.S.C.C.A.N. 4984, 4990. "The burden of proving special circumstances . . . rests with the government." *Love*, 924 F.2d at 1495. Here, there are no special circumstances that make an award unjust.

## C.    Guardians' request for attorneys' fees is reasonable.

The "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended in litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S.

10

424, 433 (1983). This lodestar method for calculating reasonable fee awards is now the "guiding light" of fee-shifting jurisprudence. *Perdue v. Kenny A ex rel. Winn*, 559 U.S. 542, 551 (2010) (quotations and citation omitted).

Applying the lodestar method, Guardians' counsel respectfully requests an award of $493,110.50 in attorneys' fees. This request is based on the number of hours reasonably expended in this nearly four year case multiplied by reasonable hourly rates for each attorney.

### 1.    Reasonable rates.

To determine the properly hourly rates under the ESA, the court considers factors such as the "amount of experience of the lawyers, the average rate of lawyers in the area, and the complexity of the case." *Ass'n of California Water Agencies*, 386 F.3d at 888. Three Western Environmental Law Center ("WELC") attorneys (in order of experience) worked on this case: Matthew Bishop, John Mellgren, and Kelly Nokes.

Matthew Bishop obtained his undergraduate degree from Whitman College in 1993 and his law degree from Vermont Law School in 1998, where he enrolled in the school's environmental law program. While in law school, Mr. Bishop participated in environmental moot

11

court competitions, completed two independent research and writing projects on issues of environmental law, interned for three environmental law organizations, and graduated in the top 25% of his class. Ex. A at ¶ 3.

Mr. Bishop has practiced environmental and natural resource law exclusively for nearly 22 years. *Id.* at ¶ 7. During this time, he has litigated over 40 natural resource cases involving wildlife, threatened species, public land management, wild and scenic rivers, travel planning, and water (quantity and quality). *Id.* at ¶ 8 (listing cases). Mr. Bishop was the lead attorney in the vast majority of these cases. During this period, Mr. Bishop requested and obtained rates consistent with the rates requested here. *Id.* at ¶ 13; *see also Native Ecosystems Council v. Weldon*, 921 F.Supp. 2d 1069, 1078 (D. Mont. 2013) (recognizing Mr. Bishop as an "experienced practitioner of environmental law"). Based on his level of experience, Guardians seeks hourly rates for Mr. Bishop, ranging between $320 per hour and $460 per hour, depending on the year the work was undertaken and the forum the work was performed in (district court or Ninth Circuit). *See*

*Savage*, 2019 WL 3293425, *7 (awarding each attorney an additional $100 an hour for appellate work).

John Mellgren obtained his undergraduate degree from the University of Michigan in 2005 and his law degree from the University of Oregon in 2011. Ex. C at ¶ 2. While in law school, Mr. Mellgren focused his studies and extra-curricular activities on environmental and natural resources law, was selected to serve as a fellow in the Environmental & Natural Resources (ENR) Law Program, and served as a staff editor and articles editor for the Journal of Environmental Law and Litigation. *Id.* at ¶ 3. Mr. Mellgren joined WELC in 2011 and focuses his practice exclusively on environmental litigation. He has worked on over 25 environmental cases. In December 2014, Judge Haggerty of the District of Oregon awarded Mr. Mellgren enhanced rates pursuant to EAJA in an ESA and NEPA case. *Native Fish Soc'y v. Nat'l Marine Fisheries Serv.*, No. 12-cv-00431, 2014 WL 7331039 (D. Or. December 19, 2014) (awarding Mellgren enhanced rates for work performed in 2012, 2013, and 2014). Based his level of experience, Guardians seeks hourly rates for Mr. Mellgren, ranging between $250 per hour and $450 per hour, depending on the year the work was

13

undertaken and the forum the work was performed in (district court or Ninth Circuit).

Kelly Nokes obtained her undergraduate degree from Northern Michigan University in 2008 and her law degree, as well as a master's in environmental law and policy, from Vermont Law School in 2015. Ex. B at ¶ 7. While in law school Ms. Nokes focused her studies and practical applications exclusively on environmental and natural resources law. *Id.* She was a managing editor for the Vermont Journal of Environmental Law, a student clinician at Vermont Law's Environmental and Natural Resources Law Clinic, and served as a law clerk for three environmental organizations during her law school career. *Id.* Ms. Nokes graduated in the top 15 percent of her law school class. *Id.*

From 2015 until 2018, Ms. Nokes worked for Guardians as a litigating attorney, focusing primarily on grizzly bears and carnivore protection, as well as government accountability and transparency in environmental decision-making. *Id.* at ¶ 9. In 2018, Ms. Nokes joined WELC's southwest office, where she continues to work exclusively on wildlife, water protection, public lands, and government transparency

14

litigation. *Id*. Based her level of experience, Guardians seeks hourly rates for Ms. Nokes, ranging between $210 per hour and $330 per hour, depending on the year the work was undertaken and the forum the work was performed in (district court or Ninth Circuit).

In sum, the rates sought by Guardians' counsel in this case are reasonable, in line with market rates for attorneys of comparable skill and experience in Missoula, Montana and in line with attorney fee awards in environmental litigation arising in the District of Montana and resolved in the Ninth Circuit. These rates are also consistent with fee awards obtained by Guardians' attorneys in other matters.

Guardians' requested rates are also reasonable under EAJA. While EAJA establishes a rate of $125 an hour adjusted for cost of living increases (which translates into approximately $205 for 2019 and $206 for 2020), courts may award a higher rate based on when the attorneys' "possess distinctive knowledge and skills developed through a practice specialty" that were "needed in th[is] litigation" and were not "available elsewhere at the [EAJA] statutory rate." *Love*, 924 F.2d 1492, 1495 (9th Cir. 1991).

The Ninth Circuit recognizes environmental litigation is an identifiable practice specialty that requires distinctive knowledge, *id.* at 1496, and the three WELC attorneys who worked on this case – Mr. Bishop, Mr. Mellgren, and Ms. Nokes – all possess distinctive knowledge and specialized skills that were needed to prevail in this case. *See* Exs. A-C (describing experience of each attorney). Such knowledge and skills were not otherwise available elsewhere to Guardians at the EAJA rates and could not have been provided by local, general practitioners. Ex. D at ¶¶ 5, 6.

## 2. Reasonable hours.

The time Guardians' counsel spent on complex, four-year case is also reasonable. Work on this case began back in 2016 and did not end until May, 2020. During this four year period, Guardians' counsel spent time researching the various legal claims, the Yellowstone grizzly bear's listing history, and reviewing the relevant scientific studies (and meeting with experts regarding the same) in order to formulate the legal claims, prepare the notice of intent letter, draft the complaint, and then handle the litigation.

At the district court, time was incurred on coordinating with other parties, working on consolidation and a single case management plan, dealing with various motions (including a motion to stay and hearing on the same), carefully reviewing and organizing documents from an extremely large administrative record (and extensive back-and-forth regarding how to handle "deliberative" documents), summary judgment briefing (along with a separate, joint statement of facts and related standing declarations), preparing for and attending a hearing, filing a TRO/PI following the hearing (to stop an impending trophy hunting season), and then briefing and arguing the case on appeal at the Ninth Circuit. *See* Attached Timesheets to Exs. A-D (documenting all time).

The amount of attorney time required to successfully litigate this four-year case was significant – approximately 1,536 hours – but as this Court previously noted, prevailing attorneys should be compensated "for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). The hours billed in this case satisfy this test and "[b]y and large, the court should defer to the winning lawyer's

professional judgment as to how much time he was required to spend on the case." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Notably, in a challenge to the Service's decision to de-list the gray wolf, the District of Montana recognized that the attorneys "reasonably expended" 1,183 hours on the litigation even though the matter was resolved early at the district court, following an order on plaintiffs' motion for a preliminary injunction. *Defenders of Wildlife v. Gould*, Case No. CV-08-56-M-DWM (D. Mont. 2009) (Doc. 125 at 5). As explained by the Court, "While the case was resolved in a fairly short time, given the scientific and legal complexity of the case, the voluminous administrative record, and the large number of defendants and defendant-intervenors, the hours expended were not unreasonable." *Id.* at 4. Here, Guardians' counsel is seeking reimbursement for 1,536 hours, but this case involved two hearings at the district court, a voluminous administrative record, complex issues, a large number of defendants and intervenors and was resolved at the Ninth Circuit, following an appeal from the district court.

Further, in exercising sound billing judgment, Guardians' counsel carefully reviewed their time sheets and deleted (or omitted) approximately 330 hours of excessive, redundant, and otherwise unnecessary and duplicative time, including time spent on certain communications or meetings with clients and time spent on media. Guardians' counsel also omitted time on motions filed or issues raised by the Defendant-Intervenors and billed half time for travel. Mr. Bishop also exercised additional billing judgment by omitting time he spent the recalibration issue which he argued on appeal (but which the Service did not pursue on appeal).

Not all of the legal claims briefed by Guardians in this case were addressed by this Court or the district court but this should not result in a reduction of hours. Notably, Guardians did not lose (or prevail) on these related claims; they were simply never addressed by the district court or this Court. "Whether a party seeking fees is entitled to the lodestar for pursuing unsuccessful claims depends on the relationship between the successful and unsuccessful claims and the parties' overall success in the litigation." *Savage*, 2019 WL 3293425, *6 (D. Mont.

19

2019)(citing *Ibrahim v. U.S Dep't of Homeland Sec.*, 912 F.3d 1147 (9th Cir. 2019)).

In the Ninth Circuit, claims are only unrelated if the successful and unsuccessful claims are "'distinctly different' both legally and factually." *Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) (quoting *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 901–02 (9th Cir. 1995)). Claims are related if they "involve a common core of facts or are based on related legal theories." *Id.* at 1168. The "focus is to be on whether the unsuccessful and successful claims arose out of the same course of conduct." *Id.* at 1169 (internal quotes omitted).

Here, all of Guardians' claims (those it prevailed on and those that went unaddressed by the district court and Ninth Circuit) arose out of the same conduct, i.e., the Service's decision to delist grizzly bears in the Yellowstone region. As such, Guardians' claims are "sufficiently related to one another for a full award." *Savage*, 2019 WL 3293425 at *6. Ultimately, Guardians obtained the success and result it had hoped for in this case: an order declaring the Service's delisting decision arbitrary and a violation of the ESA and vacating the decision and

20

remanding it back to the agency (thereby restoring the Yellowstone grizzly bear's protective status). This was not a modest victory.

When evaluating a fee request, the "court should focus on the significance of the overall relief obtained . . . [w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435. A fee award should not be "reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit . . . The result is what matters." *Id.*; *see also Greenpeace, Inc. v. Stewart,* 2020 WL 2465321,*8 (9th Cir. May 12, 2020) (including hours spent on unsuccessful motions).

Indeed, the fact that the Ninth Circuit ruled against Guardians on a jurisdictional claim and never addressed additional claims does not alter the outcome and Guardians' ultimate success in ensuring grizzly bears in the Yellowstone region remain protected. No reduction in attorney time is therefore warranted. *Greenpeace, Inc.*, 2020 WL 2465321 at *8. A summary of Guardians' attorneys' fees sought in this case is provided below:

21

| Attorney | Time (hours) | Rates | Total |
|---|---|---|---|
| Matthew Bishop | 921.2 | $320 to $460 | $338,715.00 |
| John Mellgren | 249.9 | $250 to $430 | $67,986.00 |
| Kelly Nokes | 365.2 | $210 to $330 | $86,409.50 |
| **Totals fees** | | | $493,110.50 |

## D.   Guardians is entitled to recover district court expenses.

The ESA authorizes an "award [of the] costs of litigation (including reasonable attorney and expert witness fees)," without qualification. 16 U.S.C. § 1540(g)(4). EAJA authorizes an award of "costs," as enumerated at 28 U.S.C. § 1920, as well as "other expenses." 28 U.S.C. §§ 2412(a)(1), (d)(1)(A). The Ninth Circuit has interpreted "other expenses" under EAJA to include "expenses normally billed to a client," such as telephone calls, postage, and attorney travel expenses. *Int'l Woodworkers of America v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986); *see also In re Application of Mgndichian*, 312 F. Supp. 2d 1250, 1266 (C.D. Cal. 2003) (recoverable EAJA expenses include Westlaw research, photocopying, and delivery service).

Here, Guardians seeks $4,607.73 in recoverable expenses from the district court, including expert fees, filing fees, postage, travel expenses for the stay and summary judgment hearings, and other costs and expenses. These costs are enumerated in the expense sheet attached to Mr. Bishop's declaration (Ex. A) and Guardians' declaration (Ex. C).

## CONCLUSION

For the foregoing reasons, Guardians respectfully requests an award of $497,718.23 in attorneys' fees and other expenses.

Respectfully submitted this 11th day of September, 2020.

/s/ Matthew Bishop
Matthew Bishop
Western Environmental Law Center
103 Reeders' Alley
Helena, MT 59601
(406) 324-8011
bishop@westernlaw.org

*Counsel for WildEarth Guardians*